UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:19CR64 (VAB) |
| VS. | |
| ANTHONY WHYTE, et al | OCTOBER 8, 2021 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AMY SARCIA'S
RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

**INTRODUCTION**

Defendant, Amy Sarcia, respectfully submits this memorandum of law in support of her Motion for Judgment of Acquittal on Counts one and thirteen of the superseding indictment pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. The following memorandum renews the arguments set forth in Amy Sarcia's oral Motion for Judgment of Acquittal which is incorporated herein, and further supplements those arguments based on the evidence introduced during the defense case. As set forth in more detail below, the evidence at trial was insufficient for a reasonable person to conclude that Amy Sarcia is guilty beyond a reasonable doubt of the charges in the indictment. The government's failure of proof extends to all elements of the charged offenses in Counts I and 13 of the superseding indictment. Accordingly, the Court must set aside the jury's verdict and enter a judgment of acquittal on both Counts.

1

**PROCEDURAL BACKGROUND**

On February 21, 2019, law enforcement arrested Anthony Whyte, Amy Sarcia and several other individuals pursuant to criminal complaints. Doc 1.  As detailed in 141-page master affidavit, the charges stem from a multi-month wiretap investigation targeting a drug trafficking organization allegedly lead by Whyte. Doc. 179.

The grand jury subsequently returned an indictment [Doc. 442], and a second superseding indictment [Doc. 704], charging a total of twenty-six defendants as part of the narcotics conspiracy.  Whyte was charged with conspiracy to distribute and posses with intent to distribute 5 kilograms or more of cocaine, 100 grams of more of heroin, 40 grams or more of fentanyl (Count One); possession with the intent to distribute heroin (Counts Two, Three, and Four); possession with the intent to distribute 500 grams or more of cocaine and 40 grams or more of fentanyl (Count Eight); possession of a firearm in furtherance of a drug trafficking crime (Count Nine); and conspiracy to launder monetary instruments (Count Thirteen). Doc. 704. Amy Sarcia was charged with conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine and 100 grams or more of heroin (Count One); and conspiracy to launder monetary instruments (Count Thirteen.)  Jury selection in this matter started on September 8, 2021 and the trial itself commenced shortly thereafter.

**On September 28th the jury returned a verdict of guilty to all counts hereafter stated against both Mr. Whyte and Ms. Sarcia. However, after the close of the government's case in chief, counsel on behalf of Ms. Sarcia orally moved for dismissal under Rule 29; the Court took the same under consideration and reserved decision and the trial proceeded with the defense putting on certain witness in its defense; after the government rested a second time and the matter was set to go to the jury, counsel for Ms. Sarcia raised the Rule 29 motion again. The Court after due consideration reserved decision and ordered the matter to be considered by the jury; As indicated on Tuesday, September 28th, the jury returned its verdict of guilty to both Counts as against Ms. Sarcia.**

**I.   A JUDGMENT OF ACQUITTAL IS REQUIRED BASED ON THE EVIDENCE (OR LACK OF EVIDENCE) INTRODUCED AT TRIAL**

**<u>Applicable Law</u>**

**Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the Court "<u>must</u> enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." (Emphasis added.) Fed. R. Crim. P. 29. The Court may do so on a motion made after a jury renders a guilty verdict. Fed. R. Crim. P. 29(c). Where grounds for acquittal exist, the court may set aside the jury's verdict and enter an acquittal. Fed. R. Crim. P. 29(c). In ruling on a motion for judgment of acquittal, "the relevant question…is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lorenzo*, 534 F. 3d 153, 159 (2d Cir. 2008) (internal**

quotations omitted.) "While [the Court] defer[s] to a jury's assessments with respect to credibility, conflicting testimony, and the jury's choice of the competing inferences that can be drawn from the evidence, specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty." *Id.* (*quoting United States v. Lorenzo*, 534 F. 3d 153, 159 (2d Cir. 2008)).

The Rule 29 standard "does not mean that if there is any evidence that arguably could support a verdict, [the Court] must affirm." *United States v. Valle*, 807 F. 3d 508. 515 (2d Cir. 2015) (noting that "[i]n any criminal trial there is always some evidence of guilt, otherwise there could not have been a prosecution."). Rather, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt," and judgment of acquittal is required. *United States v. Cassese*, 428 F. 3d 92, 99 (2d Cir. 2005) (quoting *United States v. Glenn*, 312 F. 3d 58, 70 (2d Cir. 2002)). As the Second Circuit has recognized "few events in the life of an individual assume the importance of a criminal conviction…" *Id*. at 103. Because of that, Courts must "take the 'beyond a reasonable doubt' requirement with utmost seriousness." *Id*. The granting of a motion for judgment of acquittal is required where the government's evidence "fails to meet that threshold." Id.

4

**Amy Sarcia maintains that the evidence is insufficient as to all elements of the charged offenses, Count One and Thirteen of the superseding indictment.**

**In the instant matter it is the position of Ms. Sarcia that in evaluating all the evidence presented during the trial, given full play to the right of the jury to determine credibility, guilt beyond a reasonable doubt is lacking.  If there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, with all due respect, the Motion must be granted.  <u>United States v. Mariani</u>, 725 F.2d. 862, 865 (2d Cir. 1984).**

## **COUNT ONE**

**A serious issue facing Ms. Sarcia in this joint trial was the obvious, yet unfair, spill-over affect from evidence presented against Mr. Wyatt that had to overwhelm and confuse the jury, notwithstanding any Court institution to the jury.  For example, during the trial, much explosive evidence that would never be allowed in Ms. Sarcia's case if it were tried alone, was admitted in this case.  Perhaps some of the most highly prejudicial evidence was the admittance of ten guns, presented in evidence one by one.  Photos of each weapon, one after the other, could do nothing but stain and color the jury's perception of Ms. Sarcia.  These guns never would have been admitted in Ms. Sarcia's case if she were tried alone.  Knowing the tremendous prejudicial effect such items would have on the jury, counsel for the Government in their argument to the jury stacked all 10 gun boxes one on top of the other 3 feet tall for the jury to view while she argued her case.**

**Additionally, the government employed the same powerful tactic with all the drugs it introduced during the case. Pounds of cocaine, heroin and fentanyl (for which Ms. Sarcia was not even charged) were presented to the jury day after day with little or no connection with Ms. Sarcia. The evidence including many (if not most) drugs which were located far removed from 13 Washington Street; drugs found in other defendants' possession or control that had nothing to do with Ms. Sarcia, for which there was not even a scintilla of evidence connecting those drugs to Ms. Sarcia. Yet they were piled on the governments table while she argued to the jury, clearly to influence the jury.**

**Additionally, the government introduced at trial an international drug dealer, Orlayn Marquez, who testified that he was involved with importing high quantities of cocaine and other drugs into the United States and exporting high sums of drug money out of the United States; this testimony never would have been permitted if Ms. Sarcia were tried alone, as there was <u>no evidence</u> presented tying her into these events or that she knew this man even existed. Yet, the effect of his testimony was highly prejudicial in this case against my client. In showing how much drugs were a part of the Whyte organization, the spillover effects on Ms. Sarcia are impossible to ignore.**

**In Count One of the superseding indictment Ms. Sarcia was charged and convicted with violating Title 21 U.S.C., Section 841(b)(i)(B)(ii) by conspiracy to possess with intent to sell 500 grams or more of a mixture and substance containing a detectable amount of cocaine and/or 100 grams of heroin. The jury had to be mesmerized by the high amounts of drugs, guns and money (again,**

6

much found in locations far removed from 13 Washington Street) sitting there on the prosecutions' table for which there was no evidence that Ms. Sarcia knew or reasonably should have known existed in Mr. Whyte's world.  Compared to the tremendous quantities on display both during the trial and when the government argued to the jury, such sums as 500 grams or 100 grams seemed like a drop of water in the ocean.  Any jury could not help but <u>speculate</u> that surely Ms. Sarcia had to know about such a small amount (relatively speaking.) It was so easy for the jury to <u>guess</u> that some how she must be guilty, even if there was no specific evidence tying her into 500 grams of cocaine or 100 grams of heroin.  It is axiomatic that we do not convict defendants based upon hunches, guesses, surmise or speculation.

  Even the government realized the lack of evidence directly tying in Ms. Sarcia to any of Whyte's drug activities; this is the only reasonable interpretation as to why the government caused Stephanie Johnson, an admitted drug dealer, to be arrested <u>18</u> <u>months</u> later on State charges and have Agent Keith Warzecha "coincidentally" be at the New London Police Station on November 10, 2020 to interview and ultimately offer an admitted drug dealer, who is not facing a mandatory <u>five</u> <u>years</u> in prison, a sweetheart deal, if she testified against Ms. Sarcia.

  Examining her testimony, Ms. Johnson stated that Ms. Sarcia used cocaine (not heroin.)  In fact, she mentioned in very vague terms that at some point she saw Ms. Sarcia using some cocaine. However, she never mentioned any quantity that would amount to 500 grams of cocaine.  There was an email about Ms. Sarcia

looking for an "eight ball." However, an eight ball, according to the testimony of DEA agents is only 3 ½ grams; far removed from the 500 grams needed to satisfy a guilty finding.  This testimony came after Agent Warzecha testified that at the November 10th meeting with Ms. Johnson, that while Ms. Sarcia's name came up, <u>no mention was made on that date about Ms. Sarcia being involved with Mr. Whyte in any criminal enterprise</u>.  No other witness claimed Ms. Sarcia was associated with 500 grams of cocaine or 100 grams of heroin.

      Of course, the government could also attempt to prove their case to Count One if they could prove that Ms. Sarcia knew that Mr. Whyte sold 500 grams or more of cocaine or 100 grams of heroin or she could have reasonably foreseen such drug activity.  First, reviewing all the evidence, it became clear that Mr. Whyte exploited his relationship with Ms. Sarcia and it is submitted that it is clear that he manipulated that relationship for his own self-serving reasons.  There was no credible evidence that Ms. Sarcia profited from her activities with Mr. Whyte.  The government speculated that Mr. Whyte "gave" drugs to Ms. Sarcia to help him.  Of course, there was nothing to explain why this person who received a citizen-of-year award or who spent time raising money for the poor, the hungry or the homeless, who had no criminal record, would engage in conspiracy to possess with intent to sell cocaine or heroin.

      What the government attempted to do concerning the conspiracy to sell drugs count was to ask the jury to draw inferences from her conduct and that of Ms. Whyte, yet close examinations of the evidence presented failed to show sufficient evidence that Ms. Sarcia had actual knowledge as to the quantities of

drugs Ms. Whyte sold.  More than one DEA agent testified that drug dealers operate on a need-to-know basis.  In the instant matter all the drugs found in the apartment building connected to the restaurant, Two Wives, were locked up in safes.  Agent Warzecha conceded on the stand that not all safes contain drugs; one cannot infer that just because one has a safe (big or small) that it contains drugs.  In fact, Chad Bromby, a tenant that lived next to Apartment 10, who had no idea of drug activity next door, also owned a safe and two guns; there is no claim from these facts that Mr. Bromby was a drug dealer.

There was evidence and even videos that when Mr. Whyte was engaged in drug selling he did so outside of Two Wives; if he and Ms. Sarcia had an agreement, why would he risk being recorded by selling drugs out in the public domain instead of in the privacy of Two Wives at 10:00 in the morning.  The testimony by DEA agents in the surprise raid on Ms. Sarcia at both her home and business revealed that no drugs, no drug records and no unusual amount of cash was found anywhere; this is coupled by the fact that absolutely no unusual currency transactions occurred in any of her bank accounts according to testimony by Agent William Pratt.

It is accurate to state that on occasion there was some activity by Ms. Sarcia that she may have obtained some cocaine (never heroin) from Mr. Whyte; it does not mean Mr. Whyte had it in his apartment or anywhere on the premise; indeed, from her point of view, she may have reasonably assumed Mr. Whyte actually did not possess any drugs and needed to seek some cocaine from his friends or contacts. But even with an examination of all the evidence most

**favorably for the government there is total lack of any evidence that the amount of cocaine Ms. Sarcia knew about or reasonably could have inferred equaled or exceeded 500 grams of cocaine or 100 grams of heroin. Even when Ms. Sarcia visited Apartment 10, the testimony of the government witness was that all drugs (except a prescription bottle) were found in a <u>locked</u> safe hidden from the living room in the far end of a closet. There was no testimony that Ms. Sarcia knew the contents of the safe or its combination. <u>None</u>. Only through sheer <u>speculation</u> could a reasonable juror find that Ms. Sarcia, a person with no criminal history, actually knew the quantities of drugs sold by Mr. Whyte; for all she knew he was selling marijuana or Xanax or some other controlled pills.**

  **In sum, concerning Count One, the evidence presented at trial, even taken in a light most favorable to the government, was such that no rational trier or fact could have found the essential elements of the crime beyond a reasonable doubt, as is mandated by the Court. <u>United States v. Lorenzo</u>, <u>supra</u> at 159. The incredible and obvious spillover effect of guns, money and drugs unrelated to Ms. Sarcia presented to the jury, was simply too overwhelming for the jury to be put aside when considering Ms. Sarcia's (including the money laundering)  It overcame the true lack of evidence to demonstrate she actively knew or reasonably should have known about the extent of Mr. Whyte's drug activities; from the emails, a man she had to chase after to pay $300-$400 balances due on his rent.**

10

## MONEY LAUNDERING—COUNT 13

Concerning Count Thirteen, the money laundering Count, again, viewing the evidence in the light most favorable to the prosecution, there is insufficient evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  The government's basic theme was that Ms. Sarcia created a fictitious job for Mr. Whyte to allow him to launder $500 a week from November of 2017 until February, 2019, disguised as a salary (The sum in total was around $28,000); a pittance compared to thousands upon thousands of dollars the government claims Mr. Whyte spent in bringing drugs into Connecticut and the large sums of money found in safes associates with Mr. Whyte.

The undisputed facts are that Ms. Sarcia, a hard working woman who held four jobs at one time (managed two buildings, a restaurant and a grocery store) with no criminal history, who spent her spare time raising money for the poor, treating American servicemen to free food, <u>knowingly</u> engaged in transferring drug money into legitimate cash; in fact, not only did she give this dealer a pay check for $500 a week but she apparently took money out of her own pocket to pay state and federal taxes according to another government witness, Kathleen Haggen.  None of this makes any sense; nor is it reasonably logical.  While a motive is not required, human experience tells us people do not risk humiliation, disgrace, and incarceration to commit crimes without a motive.

The government recognizes their problems with their theory of the case, causing them to speculate with such motives as drugs or sex or whatever.  The problem is that other than a few text or one statement by Ms. Johnson, there is

11

nothing to support a claim that Ms. Sarcia scored $28,000 in drugs in exchange for drugs; nothing close to that.  The testimony by the agents was that grams of cocaine were selling for around $10-$20 a gram or $50 for 3 ½ grams, an eight ball; that would work out to Whyte having to give Ms. Sarcia about 560 eight balls over the year plus.  Really? Each week Ms. Sarcia would have to take about $40-$50 out of her own pocket to pay the state and federal taxes.  Nonsense and illogical.  There was ample evidence presented that Mr. Whyte helped promote Two Wives' business through numerous promotional nights, passing out flyers and encouraging people to frequent Two Wives, along with posting Two Wives on his own Facebook or Instagram Pages.  Was Mr. Whyte just a nice guy doing all this work for free?  Not to mention the text from Ms. Sarcia complaining to Whyte as to why he was absent at one of the promotional events.

     On the practical side, where was the money to support $28,000 plus in cost to carry out this illegal deed?  Agent Pratt failed to provide any evidence that Ms. Sarcia was depositing any unusual cash amounts to support the weekly $500 plus payments.  While it is true that Ms. Sarcia listed Mr. Whyte as a cook, according to the government's witness, Ms. Haggen, who handled Two Wives payroll, Ms. Sarcia quickly clarified Mr. Whyte's position as a promotor of her new bar business (the evidence also shows Mr. Whyte provided services of a promoter to other bars in the area and on his personal social websites.) Whether Ms. Sarcia overpaid or underpaid Mr. Whyte is interesting but not proof of illicit activity.

**The text admitted into evidence clearly demonstrated several occasions wherein Ms. Sarcia is seen chasing Mr. Whyte for rent money.  Clearly, if she was dealing with his secret cash, she had no need to chase him.  She could have deducted cash from the weekly paycheck and paid the rent with it.  It is also curious that if this accommodation existed, why from the testimony of agents, that while ledger documents of Mr. Whyte were found, neither Ms. Sarcia nor Mr. White was found with any ledge documents to keep track of the sums of cash being passed to Mr. Sarcia.  Nothing.  The government goes on to speculate that on occasion Ms. Sarcia wanted to meet with Mr. Whyte in her office to give him his paycheck; the government <u>speculates</u> (because there is no real proof offered) that on those occasions $500 cash passed hands.  The problem with that theory is that only about 17 texts over a year period of time were found.  Further, it is just as possible, if not more so, that Ms. Sarcia had a lot of trouble getting Mr. Whyte to meet with her to discuss what he was doing to promote the business.  Believing the $410 net pay checks were important to Mr. Whyte (not realizing Mr. Whyte had a zillion dollars in various secret locations) it was an obvious indictment to get him into her office to discuss exactly what was he doing to earn his paychecks (not to mention Ms. Sarcia, according to Ms. Haggen, could have used 1099's and saved herself money.)**

In sum, the evidence in this case is woefully lacking with the lack of any provable motive (nothing but speculation), the lack of any questionable bank activity, the lack of any ledger records, the lack of any unexplained cash at Ms. Sarcia's house or office or safe to support such a theory.  The disclosure to the payroll company that Mr. Whyte was hired to promote the business once the new bar was installed is also inconsistent with the government's case.  This is coupled with the lack of any criminal record, working four jobs, spending time with fund raising for New London poor families and the military.  In sum, there is insufficient evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt for Court Thirteen.

## CONCLUSION

For all of the aforementioned reasons, the defendant, Amy Sarcia moves this Court under Rule 29 to vacate the jury findings and dismiss Counts One and Thirteen of the superseding indictment against Amy Sarcia, for the lack of evidence most favorable to the government which would permit any rational trier of fact to find the essential elements of the crimes beyond a reasonable doubt.

                                                                  **RESPECTFULLY SUBMITTED,**
                                                                  **DEFENDANT, AMY SARCIA**

By /s/CT00009
Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar CT00009

## CERTIFICATION

I hereby certify that on this 8th day of October, 2021 , a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all Parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

   /s/CT00009
Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar Ct00009