1                UNITED STATES DISTRICT COURT

2                  DISTRICT OF CONNECTICUT

3   - - - - - - - - - - - - - -  x
                                  :
4   UNITED STATES OF AMERICA,    :  Case No.
                                  :  19CR64(VAB)
5            Government,          :
          vs.                     :
6                                 :
    ANTHONY WHYTE and AMY        :  915 Lafayette Blvd
7   SARCIA,                      :  Bridgeport, CT
                                  :  September 8, 2021
8            Defendant.          :
    - - - - - - - - - - - - - -  X
9

10              TRANSCRIPT OF JURY SELECTION
                        (VOLUME I)

11  BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.

12
    APPEARANCES:
13  FOR THE GOVERNMENT:       NATASHA FREISMUTH, ESQ.
                              ANGEL KRULL, ESQ.
14                            U.S. Attorney's Office-NH
                              157 Church St., 25th Floor
15                            New Haven, CT 06510

16  FOR THE DEFENDANT         JONATHAN J. EINHORN, ESQ.
    ANTHONY WHYTE:            Law Office of Jonathan J.
17                            Einhorn
                              129 Whitney Avenue
18                            New Haven, CT 06510

19  FOR THE DEFENDANT         RICHARD R. BROWN, ESQ.
    AMY SARCIA:               Brown,Paindiris and
20                            Scott,LLP
                              100 Pearl Street
21                            Hartford, CT 06103

22

23              Sharon Montini, RMR, FCRR
                  Official Court Reporter
24                 915 Lafayette Blvd
                  Bridgeport, CT 06604
25

1            THE COURT:  Good morning.  Please be

2    seated.  All right.  We're here in United States v.

3    Anthony Whyte and Amy Sarcia.  Will counsel please

4    state their appearances for the record.

5            MS. FREISMUTH:  Good morning, Your

6    Honor, Assistant United States Attorneys Natasha

7    Freismuth and Angel Krall for the government.  And

8    with us also is New London Police Sergeant Jeremy

9    Zelinski.

10           THE COURT:  All right.  Good morning to

11   all of you.

12           MR. EINHORN:  Good morning, Your Honor.

13   Jon Einhorn for the defendant Anthony Whyte, who is

14   next to me, of course.

15           THE COURT:  All right.  Good morning.

16           MR. BROWN:  Good morning, Your Honor.

17   Attorney Richard Brown, and with me at the defense

18   table is the defendant Amy Sarcia and also Lars

19   Lohman, who is my paralegal.

20           THE COURT:  You may want to fix his

21   chair so it's sort of more behind you rather than to

22   the side.

23           And, Mr. Whyte, I think you should fix

24   your thing so it covers your nose -- your mask -- to

25   cover your nose and mouth.

1          All right.  We're starting a little

2     later.  I do like to have counsel here at 8:30 to

3     remove any issues.  Are there any issues counsel

4     need to raise with the Court at this time?

5          MS. FREISMUTH:  Just one, Your Honor.

6     The government did notice an additional witness.

7     We're not sure if it made it on the docket, the

8     paperwork.

9          THE COURT:  Yes.  This is the -- I have

10    him on my supplemental.  We revised that.  All

11    right.  Thank you.

12          Anything, Mr. Einhorn?

13          MR. EINHORN:  Yes.  Just two quick

14    things.  With regard to the witnesses, we notice

15    that the government has an inordinate number of

16    officers and agents, and this probably isn't the

17    time to raise it, but we were wondering if there is

18    any way to streamline that.

19          THE COURT:  Obviously -- well, let me

20    say this.  Obviously, you know, the rules of

21    evidence can certainly preclude anything that's

22    cumulative.  So we'll take that up at the

23    appropriate time.  I know Ms. Freismuth has said

24    that they're streamlining, and I assume that that

25    list is everyone they may call and they may make

1   decisions to cut things.

2              Is that fair?

3              MS. FREISMUTH:  Your Honor, we are

4   limited to personal knowledge.  So we do have to

5   call the people who --

6              THE COURT:  I was under the impression

7   -- well, also I will note, except for this one

8   witness who now appears on the list, everything was

9   what we discussed at the final pretrial conference,

10   and as I recall, what Assistant U.S. Attorney

11   Freismuth said at that time was some of these

12   witnesses would be relatively brief.

13              Is that correct?

14              MS. FREISMUTH:  Yes, Your Honor.  And I

15   would say the additional witness would be the

16   briefest.

17              THE COURT:  All right.  Fair enough.

18              Thank you, Mr. Einhorn.  What was the

19   second thing?

20              MR. EINHORN:  The second thing has to do

21   with the peremptory challenges, Your Honor.  I know

22   it's a little early, yet we haven't discussed this,

23   but I assume -- something Ms. Freismuth and I would

24   like advice on Your Honor's procedure on is not to

25   exercise anything until the conclusion of the -- I

guess the final -- we have a final panel to choose

from.  I would hate to do it prematurely based upon

partial challenges, but even so, considering that

the rules allow for 10 and 6 and allows Your Honor

to grant us additional peremptories, I know it's

going to be hard enough to get a jury, but we would

like to request an additional peremptory challenge

considering that there are two defendants who are,

frankly, charged -- with the exception of a little

bit of overlap, my client's charges are

substantially different than Ms. Sarcia's.  We have

several charges for sales, we have the gun charge,

924(c) charge.  So we would ask for an additional

peremptory.

THE COURT:  One additional peremptory,

is that what you are asking for?

MR. EINHORN:  Yes, your Honor.

THE COURT:  Just a couple of things I

will note.  I think I went over at the final

pretrial, but I'm happy to reiterate it here because

it obviously is very significant.  You know, what

we're going to do today, and hopefully conclude by

tomorrow, is develop a panel of individuals who

have -- are ripe for the use of peremptory

challenges.

1            So, in essence, what we're going to do

2    today and tomorrow is try to eliminate any potential

3    jurors who we need to eliminate for cause.  Then we

4    need to get that down to some certain number so you

5    all can exercise your peremptory challenges.

6            Yes, obviously under the rules, as a

7    general matter for seating 12, the government would

8    be entitled to six and the defendant would be

9    entitled to ten.  Because, as I traditionally do

10   with criminal matters, I'm going to have four

11   alternates, my intention is to seat -- right now my

12   intention is to seat four alternates.  If I deviate

13   from that is a different question, but my intention

14   right now is to seat four alternates in addition to

15   the regular 12 jurors, which would then result in

16   there being two additional peremptory challenges

17   provided for each side, which would then sort of

18   bring us up to eight for the government and 12 for

19   the defense.

20           Are you asking now for a peremptory

21   challenge above and beyond the 12?

22           MR. EINHORN:  Yes, Your Honor.  And my

23   understanding is, unless Your Honor's procedure is

24   different, that the challenges for the alternates we

25   can only use against alternates.

                    THE COURT:  Exactly, only used against
alternates.  That's exactly right.
                    MR. EINHORN:  So I'm really only asking
for one additional peremptory for us because the
alternate situation is separate and apart.
                    THE COURT:  Understood.
                    Mr. Brown, do you have a view on this?
                    MR. BROWN:  Yes, Your Honor.  I join in
the request for the additional as it relates to the
12, Your Honor, as opposed to the alternates.
                    THE COURT:  So you want an additional on
the 12, not the alternates?
                    MR. BROWN:  Well, I mean I guess the
ideal is at any time -- I'm trying not to be too
greedy.
                    THE COURT:  So the long and short of it
is you want an additional -- so basically each of
the defense wishes to have an additional peremptory
challenge, correct?
                    MR. BROWN:  Yes.
                    MR. EINHORN:  Yes, your Honor.
                    THE COURT:  And the exercise of that
peremptory challenge -- and I know I have
flexibility with respect to the rules when there are
certainly multiple defendants, which is the case we

have here.  You are asking for an additional

peremptory challenge that relates to the 12 or an

additional peremptory challenge that just relates to

the alternates?

MR. EINHORN:  I'm only asking for an

additional peremptory with regard to the general

panel itself -- I mean the specific panel.  With

regards to the alternates, I think your Honor is

granting us the additional two.  So that's fair.

THE COURT:  So, in essence, while the

rule would normally say ten, with respect to the 12,

I think essentially what you all are asking for are

12.

MR. EINHORN:  Yes, one for each of us.

THE COURT:  Which would then mean I

would have to give the government two more as well.

MR. EINHORN:  Not necessarily.

THE COURT:  Not necessarily.  That's

true, not necessarily.  I have the authority to

allow it just simply for the defendants.

Does the government have any concerns or

issues in terms of their understanding of the rules?

MS. FREISMUTH:  Not in terms of

understanding the rules, Your Honor.  We would

object to the request.  We think the number already

1   allotted is sufficient.  However, additional --

2           THE COURT:  Here's what I'm going to do.

3   I'm going to take this under advisement.  Let me see

4   where we are in terms of our juror numbers and then

5   we can rediscuss that issue.

6           All right.  Anything else?

7           MR. BROWN:  Yes, your Honor.  I'm sure

8   we discussed this the other day, but obviously what

9   is of great concern to me is we don't want jurors on

10  here that are under incredible pressure because of

11  work or because of being out for a period of time.

12  So I think we really need to make it clear to the

13  prospective jurors from the get-go how long we

14  anticipate this trial.  As I understand it, counsel

15  for the government is suggesting at least three

16  weeks.  I don't know if that means three full weeks.

17          THE COURT:  Just, Mr. Brown, as I think

18  I said at the final pretrial conference, the summons

19  that was sent out was for jurors to understand that

20  their service may be required from today until

21  September 30th, I believe.

22          MR. BROWN:  Thank you, your Honor.

23          THE COURT:  So in my view that should be

24  sufficient time.  So I don't intend to separately

25  raise it other than the fact it was in the summons.

1    And, you know, trust me, jurors are not shy about --

2    it's been not my experience -- you all have been

3    around a little more than I have.  It's my

4    experience that I don't think we'll have anyone who

5    will be reluctant to raise some issue that they have

6    that would suggest they could not serve for the

7    length of time that we need them.  So we can take

8    that up.

9              All right.  Anything further?

10             MR. BROWN:  No, your Honor.

11             MR. EINHORN:  No, your Honor.

12             THE COURT:  Again, I would urge -- I

13   know the challenges in Connecticut are interesting

14   with traffic.  I do want to have people try to get

15   here at 8:30 so we can deal with any preliminary

16   issues.

17             All right.  Ms. Perez, I think we're

18   ready.

19             (Prospective jurors entered the

20   courtroom.)

21             THE COURT:  All right.  Thank you very

22   much, Ms. Conte.

23             Everyone please be seated.  Good

24   morning.  Welcome again to the United States

25   District Court for the District of Connecticut.

1    We're here today to pick a jury in a criminal
2    matter.  I thank you all for being here as I start.
3    Jury service, as I said, is often never convenient,
4    but it is vital to this country.  Trial by jury is a
5    critical feature of this country's system of
6    government, and you all being here and playing this
7    role is vital to that happening.
8              I do want to note a couple of things at
9    the outset before we begin.  As you notice, everyone
10   here is in mask, as you all are.  We are aware of
11   the concerns regarding the coronavirus and issues
12   regarding this Delta variant, and we will continue
13   to do everything we can to keep people safe.  We
14   have conducted several trials since the spring and
15   will always endeavor to be concerned about your
16   safety.
17             So throughout the course of the trial,
18   the lawyers will be masked.  I will be masked.  And
19   in terms of distancing, although obviously you all
20   -- there will be fewer in number than are in here,
21   rather than being in the jury box, jurors will
22   actually sit where you are there in the gallery
23   distanced from each other and masked.  Witnesses,
24   rather than being in a witness box, will be in that
25   jury box.

1        The lone exception to wearing masks in

2   the courtroom will be witnesses will be permitted to

3   wear a face shield, but -- they also will be wearing

4   a face shield, but be at a sufficient distance from

5   you that we don't believe it will pose any health

6   risk.  And I will note, the District of Connecticut

7   has -- since the onset of the coronavirus has worked

8   with an infectious disease expert, so all of the

9   practices and things we do in this courtroom are

10  done with the utmost consideration for public health

11  and safety.

12        With that, welcome again.  I will ask

13  you to stand because I'm going to ask Jazmin Perez,

14  Ms. Perez, our courtroom deputy, to swear you all

15  in.

16        (Oath administered)

17        THE COURT:  All right.  Please be seated

18  again.

19        Just in terms of what our process is

20  going to be this morning, I think you all were given

21  a general questionnaire.  What's going to happen is

22  you are going to come in order by juror number, come

23  up to the microphone there, and provide your answers

24  to the 11 questions that are identified in the

25  general questionnaire.

1          After we have gone through every one of

2   you all here, I will then have some additional

3   questions to ask you all, which I will ask you all

4   as a group.  If anyone has any response to a

5   question that they need to provide information

6   about, all I will ask you to do at this point is

7   simply raise your hand so we can record your juror

8   number as it relates to the particular question.

9          Then, once we've gone through all of the

10  supplemental questions, we'll excuse you all and

11  then bring back one by one those who had raised

12  their hand to a particular question.  We'll bring

13  you back to follow up to the extent that is

14  necessary.  So that will be our process.  And,

15  again, I appreciate you all being here.

16         All right.  So let us begin.  We'll

17  start with Juror No. 1.  Just come up to the

18  microphone.

19         Good morning.

20         PROSPECTIVE JUROR:  Good morning.

21         THE COURT:  Go ahead.

22         PROSPECTIVE JUROR:  My participant

23  number is 100 --

24         THE COURT:  Just Juror No. 1.  I think

25  she gave you a juror number.  You should be Juror

No. 1.  Correct?

           PROSPECTIVE JUROR:  Oh, yes, 1.  Sorry.
Sorry.

           THE COURT:  No, it's fine.  It's fine.

           PROSPECTIVE JUROR:  I am currently
employed with Synchrony Financial as the senior vice
president of internal audit.  Second question, yes,
I am married.  My husband works for himself.  He's
self-employed.  I have one child, eight years old,
so he's not employed right now.  He's employed as a
student.

           I have a master's degree and I am a
chartered accountant from India.  I have lawyers in
my extended family, but not anyone close.  Question
No. 7 is no.  8 is also no, I've not been a juror.
9 is also no.  10 is also no, and 11 is also no.

           THE COURT:  All right.  Thank you very
much.

           Juror No. 2.  Good morning.

           PROSPECTIVE JUROR:  Good morning.  I'm
Juror No. 2.  I'm currently employed at Sacred Heart
University, director of enrollment management.  I am
married.  My husband is a network engineer at Cisco.
I do not have any children.  I have a bachelor's
degree.

1          Same for me, only extended family and a

2     college roommate attended law school.  I have never

3     been a plaintiff, defendant, or witness in a trial.

4     I have served as a juror in a state trial, and we

5     did reach a verdict.  It was a civil case.  I do not

6     have any relative in any of those agencies.  I have

7     two close friends that are NYPD officers.  They're a

8     married couple.  There is no legal reason I cannot

9     serve, and I do not have any language issues.

10          THE COURT:  Okay.  On the -- when you

11     served as a juror in the civil case, do you remember

12     what the verdict was?  Was it a verdict for the

13     plaintiff or defendant?  Do you recall?

14          PROSPECTIVE JUROR:  I believe it was for

15     the plaintiff.

16          THE COURT:  Okay.  Thank you very much.

17          Juror No. 3.  Good morning, sir.

18          PROSPECTIVE JUROR:  Good morning.  So

19     I'm Juror No. 3.  Excuse me.  I'm currently employed

20     with C2E in Ridgefield as an education coordinator.

21     I am married.  My wife works for Southern

22     Connecticut State University as a career coach

23     advisor.  I have one daughter, 18 months.

24          My highest level of education is a

25     master's degree in education.  The answer to

question 6 is no.  Question 7, the answer is no.
The answer to question 8 is also no.  9 is also no.
10 is no.  And 11 is no as well.

THE COURT:  All right.  Thank you very
much, sir.

THE WITNESS:  Thank you.

THE COURT:  Juror No. 4.  Good morning.

PROSPECTIVE JUROR:  Good morning.  Juror
No. 4.  Presently employed with Grasso Company.
I've worked there for a year as the finance manager.
Not married.  No children.  Bachelor's degree.  The
answer to question 6 is no.  The answer to question
7 is yes.  Answer to question 8 is no.  Answer to
question 9 is no.  Question 10 is no.  And 11 is no.

THE COURT:  Okay.  And what kind of case
-- you served as a juror?  I'm sorry, so yes, you
had been a plaintiff, defendant, or witness.  What
type of lawsuit was it?

PROSPECTIVE JUROR:  It was a general
construction dispute.

THE COURT:  You were a witness or
plaintiff or defendant?

THE DEFENDANT:  Defendant.

THE COURT:  Okay.  Thank you, sir.

Juror No. 5.  Good morning.

1    PROSPECTIVE JUROR:  Good morning.  Juror

2  No. 5.  I am employed at Inspira Marketing, and I've

3  worked there for four years as group director.  I am

4  married.  My husband is in finance.  I have two

5  children.

6    I have never worked with anyone or close

7  with -- sorry.  Have you or anyone close to you

8  worked as a lawyer?  Nope.  6 is no, 7 is no, 8 is

9  no, 9 is no, 10 is no, and 11 is no.

10    THE COURT:  All right.  Just on your

11  children, are they just school age?

12    PROSPECTIVE JUROR:  Yeah, they're 12 and

13  8.

14    THE COURT:  Yep.  Perfect.  And then the

15  highest level of education?

16    PROSPECTIVE JUROR:  Oh, I'm sorry,

17  bachelor's.

18    THE COURT:  Bachelor's.  Thank you so

19  much.

20    Juror No. 6.  Good morning.

21    PROSPECTIVE JUROR:  I have to put my

22  reading glasses on.

23    THE COURT:  That's fine.  Take your

24  time.

25    PROSPECTIVE JUROR:  Juror No. 6.  I am

currently not employed.  I am married.  My husband

is employed in New York as an architect.  I have two

children that are in college.

My highest level of education is

master's degree.  Number 6 is no.  I have been a

plaintiff in a civil car accident dispute.  The

answer to 8 is no.  9, I do know a DEA agent, but it

is in New Jersey.  10, no.  And 11, no.

THE COURT:  All right.  Thank you so

much.

Juror No. 7.  Good morning.

PROSPECTIVE JUROR:  Good morning.  I'm

short.

THE COURT:  That's okay.

PROSPECTIVE JUROR:  I'm Juror No. 7.

I'm currently employed in a media company, AE

Networks.  I am a digital media coordinator.  I am

not married.  I do have one daughter.  She's

14 years old.

My highest level of education is a

bachelor's degree.  I do know a lawyer and I do have

a close friend who is also an interpreter at the

courthouse in Stamford.  I have been a defendant in

a family case for legal custody.  I have never been

a juror for a civil or criminal case.

1    I do have a very close friend also who

2    is a police officer in Norwalk, Connecticut.  There

3    is no legal reason that prevents me from serving on

4    a jury, and I do not have any language issues that

5    would prevent me from serving.

6          THE COURT:  All right.  Thank you very

7    much.

8          Juror number 8.  Good morning.

9          PROSPECTIVE JUROR:  Good morning.  Juror

10   No. 8.  I am currently employed.  I'm the director

11   of product marketing for a technology company called

12   Conductor.  I am not married.  I do not have any

13   children.  My highest level of education is a

14   bachelor's degree.  My cousin is a judge in

15   Washington D.C., although I'm not particularly sure

16   of the specifics of exactly what her line of work

17   entails.

18         I have never been in a -- answer to

19   question 7 is no.  Answer to question 8 is also no,

20   as is question 9.  Question 10, I don't believe this

21   is a legal reason, but I'm primarily a resident of

22   New York State, not Connecticut.  And then 11, no.

23         THE COURT:  All right.  Thank you.

24         Juror No. 9.  Good morning, sir.

25         PROSPECTIVE JUROR:  Good morning.  I'm

Juror 9.  I'm currently employed for the Town of

Bethel Senior Center.  I drive a bus.  I'm married.

I have got three kids.  My wife is not working;

she's on disability.  My three kids are employed.

Two of them are medical EMS and one of them is an

employee for Walgreen's.

Education is high school.  6 is no.  I

was a defendant in a motor vehicle accident.  7, I

was on a criminal case.  It went to trial and it was

a verdict.  I'm a retired police commissioner.  I

also know state police and local police, personal

friends of mine.  10 is no and 11 is no.

THE COURT:  All right.  Thank you very

much.  In the criminal case that went to verdict,

what was the verdict?  Do you remember what the

verdict was?

PROSPECTIVE JUROR:  It was for the

plaintiff.

THE COURT:  Okay.  Thank you.

Juror No. 10.

PROSPECTIVE JUROR:  I am Juror No. 10.

I am employed with Durham School Services as a bus

driver.  I am not married.  I have two children.

Highest level of education is twelfth grade.  Answer

to 6 is no, 7 is no, 8 is no, 9 is no, 10 is no, 11

1   is no.

2               THE COURT:  Okay.  Just on your

3   children, are they still school age?

4               PROSPECTIVE JUROR:  Yes.

5               THE COURT:  Thank you so much.

6               No. 11.  Good morning, sir.

7               PROSPECTIVE JUROR:  Good morning, Your

8   Honor.  Juror No. 11.  I'm currently employed at

9   JPMorgan Private Bank in Greenwich as a private

10  banker and investor for high net worth clients.  I

11  am married.  My wife is the director of the Westport

12  Farmers Market.  I have three kids.  They're all in

13  college or in grad school, so not really employed.

14  I have a juris doctorate.  I did work three and a

15  half painful years at Skadden Arps in Wilmington,

16  Delaware.

17              I was a plaintiff in a civil case.  I

18  owned a fitness club in Jackson, Wyoming that had

19  been damaged.  Never been a juror.  Oh, let's see my

20  mother-in-law served for over 30 years in the

21  federal court system in Roanoke, Virginia.  I'm a

22  lieutenant colonel in the Connecticut Army National

23  Guard, and as such I served in the joint force

24  headquarters in Hartford.  My boss is with the FBI

25  and one of my fellow officers is in the ATF, and my

1  former boss in Niantic was also in the Connecticut

2  State Police.  I think he was the head of the

3  Connecticut State Police.  Let's see.  No. 10 no and

4  No. 11 is no.

5          THE COURT:  Thank you very much, sir.  I

6  appreciate it.

7          Juror No. 12.

8          PROSPECTIVE JUROR:  Good morning, Your

9  Honor.

10          THE COURT:  Good morning, sir.

11          PROSPECTIVE JUROR:  I'm Juror No. 12.

12  I'm currently employed by Trader Joe's as a crew

13  member.  I am not married.  I have no children.  I

14  have a bachelor's degree.  No. 6 is a no.  No. 7 is

15  yes as a defendant in a criminal lawsuit.  8 is a

16  no, 9 is a no, and 10 and 11 is no.

17          THE COURT:  All right.  Thank you, sir.

18          Juror 13.  Good morning.

19          PROSPECTIVE JUROR:  Good morning.  I'm

20  Juror 13.  I'm currently employed with the Town of

21  Darien as an elementary school teacher for 19 years.

22  I am married.  My wife is also an elementary school

23  teacher.  We have two children who are both in high

24  school.

25          My highest level of education is a

master's degree in education.  My sister and my

brother-in-law are both lawyers.  The answer to No.

7 is no.  The answer to No. 8 is no.  No. 9, my

brother-in-law is a retired police officer in

Virginia and I also have very close friends who are

Connecticut and New York City cops.  No. 10 is no

and No. 11 is no.

THE COURT:  Thank you, sir.

Good morning.

PROSPECTIVE JUROR:  Good morning, Your

Honor.  I'm Juror No. 14.  I'm currently employed.

I've owned Wilton Dance Studio for 32 years with my

wife.  I also own a theatrical rental company, and I

work for Lowe's as an appliance specialist.  We have

two grown children.  We also care of two

granddaughters.

I have a high school education as well

as trade school and certificate trainings.  I was a

bailiff for the naval court, Great Lakes Naval

Training Center, for a time.  I'm currently a

defendant on a civil case.  I have never sat on a

jury prior.  Yes to No. 9.  I was master of arms for

the base police on the naval base.  I worked with

the Naval Investigative Service, NIS, for a few

years, and was a police officer for the town of

Wilton for several years.  I worked with numerous

CIA, FBI, law enforcement agents, currently and

previous.  Answer to No. 10 is no and answer to No.

11 is no.

           THE COURT:  Thank you very much.

           Juror No. 15.

           PROSPECTIVE JUROR:  Yeah, good morning.

I'm Juror No. 15.

           THE COURT:  Good morning.

           PROSPECTIVE JUROR:  I'm currently

employed with Conair Corporation.  I have been there

13 years as an art director.  I am married.  My wife

is a teacher, also in the state of Connecticut.  We

have two children ages 7 and 9.

           I have an associate's degree.  We have

close family friends who are lawyers.  We were

involved in an involuntary manslaughter case for No.

7 as a family.  I have never served as a juror.  We

have some close friends who are local police

officers.  And 10 and 11 are no.

           THE COURT:  All right.  Thank you, sir.

           Good morning.

           PROSPECTIVE JUROR:  Good morning.  Juror

No. 16.  Let's see, I'm currently employed.  I own

and operate an electrical contracting company for

the last 25 years.  I am married.  My wife is a

dental hygienist.  I've got two kids currently

enrolled in college.

Two years of college.  I have a nephew

who is an attorney and we have a family friend who

is a judge down in Greenwich.  The answer to 7 is

no.  The answer to 8 is no.  The answer to 9 is we

have a family friend who is a DEA agent.  We have a

nephew who is an FBI agent.  I am friends with

Connecticut State Police and local police in the

town.  And the answers to 10 and 11 are both no.

THE COURT:  All right.  Thank you very

much.

Juror No. 17.

PROSPECTIVE JUROR:  Good morning.  I'm

Juror No. 17.

THE COURT:  Good morning.

PROSPECTIVE JUROR:  Hi.  I am currently

employed.  I worked at United Methodist Home

Assisted Living in Shelton for the past 27 years in

food service.  My husband is a security guard at the

Fairfield Country Club.  I have two children, both

in their 30s, a daughter who is an office manager of

a company in Norwalk, and my son is a cross-country

truck driver.

1          My highest level of education was 12th

2    grade.  Question No. 6 is no.  Question No. 7 is

3    yes.  I was a plaintiff in a civil lawsuit five

4    years ago.  And questions 8 through 11, all the

5    answers are no.

6          THE COURT:  All right.  Thank you so

7    much.

8          Juror No. 18.

9          PROSPECTIVE JUROR:  Hello.  I'm Juror

10   No. 18.  I'm currently employed at the Connecticut

11   Golf Club in Easton.  I've worked there for about a

12   year and a half.  I am not married.  I do have one

13   child.  He is 18 months.  Highest level of education

14   would be high school.  No. 6 is no, No. 7 is no, No.

15   8 is no, No. 9 is no, 10 and 11 are no.

16         THE COURT:  All right.  Thank you so

17   much.

18         Juror No. 19.

19         THE COURT:  Good morning.

20         PROSPECTIVE JUROR:  Good morning.  I

21   apologize.  My juror number is 19.  I'm currently

22   employed by Danbury Hospital.  I have been working

23   over there for 13 years.  My position is a nursing

24   assistant.

25         THE COURT:  Ma'am, I just need you to

speak up.  I think the microphone is not in the best

position for you.  Do you want to pull it down just

a little bit and just speak a little louder.

PROSPECTIVE JUROR:  Should I stay with

it, the first question or --

THE COURT:  I'm sorry?

PROSPECTIVE JUROR:  Should I stay with

the first question?

THE COURT:  Yeah.  So you are No. 19.

You said you've been currently employed someplace

for 13 years.

PROSPECTIVE JUROR:  Danbury Hospital for

13 years.  I work as a nurse's assistant.  My

husband is working in a restaurant.  I have two

children's and one grandchildren.  One of them works

for IBM and the other one is in Los Angeles.  I

watch my granddaughter, she's 16 months, when I'm

off from work.

My highest level education is high

school.  No. 6 is not.  No. 7 is yes.  That was in a

car accident that I was involved when I got hurt.

That was in 2005.  No. 8 is no, 9 is no, 10 is no.

11, it will be yes.  I will have some issues with

following the language.

THE COURT:  All right.  Thank you so

1  much.

2                    Juror No. 20.

3                    PROSPECTIVE JUROR:  Hello.

4                    THE COURT:  Hi.

5                    PROSPECTIVE JUROR:  I'm Juror No. 20.  I

6  am currently employed at Western Connecticut State

7  University as an associate in human resources.  I am

8  married.  My spouse is a finance consultant for

9  Morril Sangali (ph) in Stamford.  We do not have any

10 children.

11                   I have a master's degree.  The sister of

12 one of my close friends is a lawyer.  I have never

13 been a plaintiff or defendant, so no to No. 7.  No

14 to No. 8.  No. 9, my brother is a motor vehicle

15 inspector for the state DMV, and because of my HR

16 position I do have access to job position and data

17 for the Connecticut State Police as well as the

18 UConn police.  The answer to No. 10 is no and the

19 answer to No. 11 is also no.

20                   THE COURT:  Thank you very much.

21                   Juror No. 21.

22                   PROSPECTIVE JUROR:  Good morning.

23                   THE COURT:  Good morning.

24                   PROSPECTIVE JUROR:  I'm Juror 21.  I'm

25 employed in Macy's Trumbull.  And I've been there

working for two months only.  I have two children,

35 and 29.  They both working.  And my level

education is high school.  I have two cousin, they

are lawyers.  I don't have any lawsuit going on.

No. 7 is no.  And No. 8 no.  And No. 9 is I do have

a cousin and her husband in FBI.  And No. 10, no.

And No. 11, yes.

          THE COURT:  Okay.  There is some

language issues?

          PROSPECTIVE JUROR:  Yes.

          THE COURT:  Okay.  Thank you.

          Juror No. 22.

          PROSPECTIVE JUROR:  I am Juror No. 22.

I am currently employed.  I work for York & Chapel,

which is a digital marketing agency.  I have been

there four years and I'm an account manager.  I'm

not married.  I have no children.  I have a

bachelor's degree, and then 6 through 11 are all

nos.

          THE COURT:  All right.  Thank you very

much.

          Juror No. 23.

          THE COURT:  Good morning.

          PROSPECTIVE JUROR:  Good morning.  I'm

Juror No. 23.  I'm currently self-employed as a

computer consultant.  I have been doing that for about 25 years or more.  And my wife is currently unemployed.  She was working in the catering industry.  We have no children.  I have a bachelor's degree.  The answer to Nos. 6 and 7 are no.  Answer to Nos. 8 through 11 are no.

                    THE COURT:  All right.  Thank you, sir.

                    Juror No. 24.

                    THE COURT:  Good morning.

                    PROSPECTIVE JUROR:  Good morning.  I'm Juror No. 24.  I'm currently employed by Jordan's Furniture, sleep tech for five years.  I'm currently married.  My wife is a pharmacist for Wal-Mart.  I have two children, 10 and 24 years old.  My son is a security guard.  Highest level, I have a bachelor's degree.  No. 6 and No. 7 are no.  No. 8 is yes, state court.  I was an alternate juror for a case that did go to verdict, and it was for the plaintiff.  No. 9, 10, and 11 are no.

                    THE COURT:  All right.  And the state court case, that was civil?

                    PROSPECTIVE JUROR:  That was criminal.

                    THE COURT:  It was criminal.

                    PROSPECTIVE JUROR:  Yep.

                    THE COURT:  So they found the defendant

guilty?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Thank you.

All right.  And Juror No. 25.  Good morning.

PROSPECTIVE JUROR:  Hi.  I'm Juror 25. I run a household.  I'm a full-time homemaker.  I have worked a few part-time jobs.  The last one was at Home Depot for eight years.  I left because of COVID about a year ago.  I worked in the garden department.  I'm married.  My husband is retired from the State of Connecticut, Department of Transportation.  He's on disability also for Lyme disease.

And when I get nervous I have trouble reading this.

THE COURT:  Take your time.

PROSPECTIVE JUROR:  I have two children. I homeschooled them through high school.  My daughter is a speech pathologist.  She graduated from grad school last year.  She works for the Waterbury school system through a private company, and my son works for Home Depot.  And, let's see.  I have some college education and my education through homeschooling for 18 years.  I don't know anyone who

1   works with the court system or lawyer.  No. 7 is no.
2   8, no.  9, no.  10, no.  And 11 is no.
3           THE COURT:  All right.  Thank you very
4   much.
5           PROSPECTIVE JUROR:  Thank you.
6           THE COURT:  All right.  As I said, now
7   I'm going to ask you another series of questions.
8   Before I ask them, I'm going to provide you some
9   background information on the case.  But I also want
10  to know -- as I said, when I start asking the
11  questions, all I need you to do is, anyone who has
12  some response, just sort of raise their hand and
13  we'll follow up later with them.
14          So in this case the United States of
15  America, also the government, has charged Mr.
16  Anthony Whyte with counts of conspiracy to
17  distribute and to possess with intent to distribute
18  cocaine, heroin and fentanyl.  There are also counts
19  to distribute and distribution of heroin, a count of
20  possession with intent to distribute, and there is a
21  count regarding firearms and another one involving
22  conspiracy to launder money.
23          The government also has charged Ms. Amy
24  Sarcia with one count of conspiracy to distribute
25  and/or to possess with intent to distribute cocaine

and/or heroin.  And it has also charged Ms. Sarcia

with one count of conspiracy to launder money.

I'm now going to introduce you by name

generally to the attorneys, parties, and witnesses

to the case.

Do any of you know the prosecutors in

this case?  That's assistant U.S. attorneys Natasha

Freismuth and Angela Krull?  I will ask you to

stand.  Does anyone know any of them?  I will ask

you to raise your hand.  Thank you.

Do any of you know or know anyone who

knows anyone working at the United States Attorney's

Office for the District Court, whether the person is

located in Hartford, New Haven, or Bridgeport?  All

right.

The acting U.S. attorney for the

District of Connecticut is Leonard C. Boyle.  Does

anyone know or know anyone who knows Acting U.S.

Attorney Boyle?  All right.

Does anyone know or know anyone who

knows any of the following individuals who are

associated with the Bridgeport branch of the United

States Attorney's Office:  Harold H. Chen; Lauren

Clark; Elena Coronado; Patrick Doherty; Rahul Kale,

K-A-L-E; Jennifer Laraia, L-A-R-A-I-A; and Karen

Peck?  Anyone know any of those names?  All right.

Thank you.

All right.  One of the defendants in

this cases, as I mentioned, is Anthony Whyte.

Mr. Whyte, would you please stand, sir.

Does anyone know Mr. Whyte?  All right.

Thank you, Mr. Whyte.  You may sit down.

Mr. Whyte is represented by defense

counsel, Jonathan Einhorn.  Mr. Einhorn is standing.

Does anyone know Mr. Einhorn or anyone associated

with his law office, the Jonathan J. Einhorn Law

Offices?  All right.  Thank you.

Thank you, Mr. Einhorn.

As I mentioned, also on trial is Amy

Sarcia.

Ms. Sarcia, would you please stand.

Is anyone familiar with Ms. Sarcia?

Thank you, Ms. Sarcia.

Ms. Sarcia is represented by defense

counsel, Richard Brown.  Does anyone know Mr. Brown

or any members of his law firm, Brown, Panderis &

Scott, LLP?

Thank you, Mr. Brown.  You may be

seated.

Mr. Brown, I forgot the person who is

```
 1   with you.
 2            MR. LOHMAN:  Lars Lohman, Your Honor.
 3            THE COURT:  Lars -- what's the last
 4   name?
 5            MR. LOHMAN:  Lohman, L-O-H-M-A-N.
 6            THE COURT:  All right.  Does anyone know
 7   Mr. Lohman?  All right.  Thank you very much.
 8            Now, other than what I just told you a
 9   moment ago about this case, does know anything about
10   this case or is familiar with this case at all,
11   whether from a news account or any other source?
12            Does anyone know anyone else in the jury
13   pool here today?  Anyone met you before in some
14   other circumstance?  Okay.  Thank you.
15            I'm going to read a list of witnesses
16   who may testify in this case.  If anyone knows or
17   knows anyone who knows any of the following people,
18   please raise your hand:  Leigh, L-E-I-G-H,
19   Bonkowski, who is a Waterford Police Department
20   detective.  All right.  Peter Borysevicz,
21   B-O-R-Y-S-E-V-I-C-Z.  He was with the DEA.  Kerry
22   Browning, who is with the Stonington Police
23   Department.  All right.  Steven Bryant, B-R-Y-A-N-T.
24   David Carney, who is with the FBI.  Jimmy
25   Chamberland, Connecticut state trooper.  All right.
```

Nathan Charron, C-H-A-R-R-O-N; Chris Getz; Keith

Graham; Christopher High, H-I-G-H; matt Kowalczyk,

that's K-O-W-A-L-C-Z-Y-K, with the DEA; Justin

Lawrie, who I think is with the New London Police

Department; Doris Lopez; David Mieled; M-I-E-L-E-D;

Jeffrey Poulin, that's P-O-U-L-I-N; William Pratt,

P-R-A-T-T; Jason Robinson; Jordan Salas, S-A-L-A-S;

Keith Warzecha, W-A-R-Z-E-C-H-A; Matthew Weber;

James Wines, W-I-N-E-S; Marco Zandri; Mike Zella;

and Kathy Haggan, H-A-G-G-A-N.  Any of those names

mean anything to anyone here?

          Okay, I will just note it down.  Which

name?

          PROSPECTIVE JUROR:  Your Honor, I know a

Jason Robinson.  I don't know whether it's --

          THE COURT:  This is a Jason Robinson who

is a Connecticut state trooper?

          PROSPECTIVE JUROR:  No.

          THE COURT:  Okay, different Jason

Robinson.  Thank you.

          All right.  Does anyone know or know

anyone who knows the following individuals who also

may be involved in some of the criminal

investigations here:  Holly Butler; Kemar Cameron;

Victor Encarnacion; Antoine Forbes, F-O-R-B-E-S;

Ramel General; Geoffrey Gordon; Juan Hernandez;

Ronald Ketter, K-E-T-T-E-R; Bryon McClellan,

M-C-C-L-E-L-L-A-N; Princetafari Vidal, V-I-D-A-L;

and Robert Winston.  Okay.

This case will involve testimony from

the drug enforcement agency, the DEA, the Department

of Homeland Security, the Federal Bureau of

Investigation, the Department of Justice's Organized

Crime Drug Enforcement Task Force, the Bureau of

Alcohol, Tobacco, Firearms & Explosives, the

Connecticut State Police, the Waterford Police

Department, New London Police Department, Stonington

Police Department, and the University of Connecticut

Police Department.  Does anyone have any views about

any of these specific agency or about law

enforcement generally, whether federal, state, or

local, that might affect your ability to be fair and

impartial in hearing and deciding the case?  Just

raise your hand.  Anyone?

What's your juror number?

PROSPECTIVE JUROR:  20.

THE COURT:  20.  Anyone else?  What's

your juror number?

PROSPECTIVE JUROR:  Juror No. 16.

THE COURT:  Anyone else?  All right.

1              Would any of you tend to give any

2    greater weight or credibility, no matter how slight,

3    to the testimony of a law enforcement officer or

4    other government witness merely because they are

5    employees of or are testifying on behalf of the

6    government?  Anyone?

7              All right.  Some of the witnesses you

8    will hear from are individuals who are cooperating

9    with the government with the hope and expectation of

10   receiving a more favorable sentence in federal

11   criminal cases against them.  Do any of you have any

12   strong feelings about cooperating witnesses that

13   would prevent you from rendering a fair and

14   impartial verdict?  Anyone?

15             The government also may use tape

16   recorded conversations of phone calls and meetings

17   as evidence.  Does anyone have any views about the

18   use of tape recorded conversations as evidence that

19   might affect your ability to be fair and impartial

20   in hearing and deciding this case?  Anyone?

21             I have asked this before, and I think

22   you all have answered it, so you don't have to

23   answer this again, but I just want to just make

24   sure, does anyone have any relatives, friends,

25   members of family connected with law enforcement, a

state police agency, federal law enforcement or any
other agency affiliated with law enforcement that
you have not mentioned before?  If you have
mentioned it already, you do not need to mention it
again.  All right.

Have you or any member of your family or
someone close you to ever had experience with the
United States government in any way that might
affect your ability to be fair and impartial in
hearing and deciding this case?  All right.

A person charged with a crime is
presumed to be innocent and the government is
required to prove its case beyond a reasonable
doubt.  In this case Mr. Whyte and Ms. Sarcia are
charged with a crime, so they are presumed to be
innocent and the government is required to prove its
case beyond a reasonable doubt.  Does anyone have
any views or any experiences that would affect your
ability to apply this legal standard fairly and
impartially to Mr. Whyte and Ms. Sarcia?  Okay.

Every individual who is charged with a
crime has a right to remain silent.  That means the
person on trial, in this case Mr. Whyte and Ms.
Sarcia, does not have to testify on his or her own
behalf or even present a defense, and if you sit as

a juror and they decide not to testify, you are not

to draw any inference of guilt because one or both

of them decided not to testify.  Does anyone have

any views that would affect your ability to follow

this instruction?

This case involves allegations of

possession of cocaine, heroin and fentanyl.  Does

anyone have any views, and "by any views" I mean any

views, regarding illegal narcotics that would affect

your ability to judge the evidence fairly and

impartially and to render a verdict based solely on

the evidence and the law as I will instruct you?

What's your juror number?

PROSPECTIVE JUROR:  No. 7.

THE COURT:  10?

PROSPECTIVE JUROR:  7.

THE COURT:  And you are Juror No. 1.

All right.  Anyone else?

You are 16, right?  And you are?

PROSPECTIVE JUROR:  14.

THE COURT:  14 and 16.  And juror

number?

PROSPECTIVE JUROR:  9.

THE COURT:  All right.  Anyone else?

PROSPECTIVE JUROR:  19.

```
 1                    THE COURT:  19.  And Juror No. 3?  Is it

 2      3?

 3                    PROSPECTIVE JUROR:  3.

 4                    THE COURT:  Okay.  Anyone else?  Okay.

 5      Have you or a family member or someone close to you

 6      ever been a victim or accused of a crime, any crime,

 7      involving a crime involving allegations of illegal

 8      drug distribution or promoting and facilitating

 9      illegal drug distribution?  Anyone?  3?  Okay.

10      Anyone else?

11                    What's your number?

12                    PROSPECTIVE JUROR:  13.

13                    THE COURT:  And your number, ma'am?

14                    PROSPECTIVE JUROR:  10.

15                    THE COURT:  10.  Anyone else?

16                    I'm sorry, did you have your hand up,

17      sir?

18                    PROSPECTIVE JUROR:  Can you repeat it?

19                    THE COURT:  Sure.  Have you or a family

20      member or someone close to you ever been a victim of

21      a crime or accused of a crime, crime involving

22      allegations of illegal drug distribution or

23      promoting and facilitating illegal drug

24      distribution?  Okay.  Thank you.

25                    All right.  Next question.  Have you or
```

a family member or anyone close to you had an issue
with drug addiction such that it might affect your
ability to hear and decide this case fairly and
impartially?  1?  You are 10?  You are 14?  You are
16?

          Your number?

          PROSPECTIVE JUROR:  22.

          THE COURT:  Anyone else?  You are?

          PROSPECTIVE JUROR:  19.

          THE COURT:  Okay.  Thank you.  All
right.  This case involves charges of possession of
firearms in furtherance of a drug trafficking crime.
Have you or a family member or someone close to you
ever been a victim of or accused of a crime, any
crime, involving allegations of possessing or
utilizing a firearm or ammunition.  3?

          You are No. 25?

          PROSPECTIVE JUROR:  Yes.

          THE COURT:  What's your number?

          PROSPECTIVE JUROR:  24.

          THE COURT:  24.  14?  Okay.

          All right.  Do you or anyone close to
you have philosophical or other objections to
federal regulation of firearms or any government
limitation on possession of firearms either

personally or as a result of an affiliation with a
group or organization that might affect your ability
to hear and decide this case fairly and impartially?
You are number?

PROSPECTIVE JUROR:  4.

THE COURT:  You are?

PROSPECTIVE JUROR:  15.

THE COURT:  15.  All right.

Have you, either personally or through a
family member, had any experiences with or views on
possession of a firearm that might affect -- any
experiences with firearms, possession of firearms or
use of firearms that might affect your ability to
hear and decide the case fairly and impartially?
Okay.

This case involves also charges of money
laundering.  Have you or a family member or anyone
close to you ever been a victim of or accused of any
crime involving allegations of money laundering or
tax fraud?

It is anticipated that you may hear
evidence and testimony connected to a restaurant 2
Wives pizza in New London.  Does anyone have any
connections with this business such that it could
affect your ability to be fair and impartial in

hearing and deciding this case?  All right.

Other than what has already been discussed, does anyone have any views about the criminal justice system in the United States that would prevent him or her from being fair and impartial in hearing and deciding this case?  3? Okay.

All right.  Does anyone have a problem with the proposition that the government is required to prove Mr. Whyte and Ms. Sarcia guilty beyond a reasonable doubt and if the government fails to do so you must find them not guilty?  Does anyone have any problem with that proposition?  All right.

Likewise, does anyone have a problem with the proposition that if the government proves its case beyond a reasonable doubt you must find the defendants guilty?  All right.

Does anyone have any moral, philosophical, ethical, religious, or any other beliefs which might affect their ability to hear and decide this case fairly and impartially?  And by that I mean render a verdict based on the evidence and applying the relevant legal standard to the evidence of proof beyond a reasonable doubt?  3.

And what is your number?  10?

1      PROSPECTIVE JUROR:  7.

2      THE COURT:  7, okay.  All right.

3      Is there anyone who if they disagreed

4  with the law or the jury instructions as the Court

5  provides them or thought the law should be

6  interpreted differently would not be able to be fair

7  and impartial in hearing and deciding this case?

8  All right.

9      If selected as a juror, does anyone have

10  any problem following my instruction that you are

11  not to discuss this case with anyone, read anything

12  about this case or any of the subject matter

13  involving it and not engage in any social media

14  activities regarding this case such as posting on

15  Facebook, Twitter, Instagram, Snapchat, TikTok or

16  any other such media outlet until their service as a

17  juror has concluded?

18      Finally, aside from anything you have

19  been asked or you've raised your hand to already, is

20  there any other reason why you could not serve on

21  this jury?  Anything you have not raised already?

22  Your number?  I'm sorry?

23      PROSPECTIVE JUROR:  21.

24      THE COURT:  And you are 16.  You're 22?

25      PROSPECTIVE JUROR:  20 and 22.

1             THE COURT:  20 and 22?

2             PROSPECTIVE JUROR:  Yes.

3             THE COURT:  On this side.  You are 1.

4    You're number --

5             PROSPECTIVE JUROR:  No. 9.

6             THE COURT:  You are 3.  I'm sorry

7    you're --

8             PROSPECTIVE JUROR:  13.

9             THE COURT:  13.

10            All right.  Okay.  What I'm going to do

11   now is, Ms. Perez is going to take you all into

12   another room and then we'll bring folks back one by

13   one if we need to follow up with you.  Thanks so

14   much.

15            (Prospective jurors exited the

16   courtroom.)

17            THE COURT:  Everyone can be seated.

18   Give me just one moment.

19            Okay.  Based on what people raised their

20   hands to, I have the following jurors I'm going to

21   bring back.  Just after I read that list, you let me

22   know if there is anyone else -- anyone you thought I

23   missed that raised their hand and anyone else you

24   think you want to bring back.  So based on -- and

25   then why.  Based on the raising of the hands to the

questions to the supplemental voir dire questions,
the jurors I'm going to bring back are 1, 3, 7, 9,
10, 13, 14, 16, 19, 20, 21, and 22.  Hang on one
second.

Because of -- actually, in addition to
that, because of questions they raised in answers
they gave in the general voir dire, I also might
bring back 8 and 12.  8 said he might not be a
resident of New York -- I mean he might not be a
resident of Connecticut.  I don't know what that
means, but I need to drill down on that.  And No. 12
said I guess they had been a defendant in a criminal
case.  I think I just want to drill down on that a
little bit more.  Other than those -- I added two,
so I should read them all in order then.  1, 3, 7,
8, 9, 10, 12, 13, 14, 16, 19, 20, 21, 22.

I will note that I don't have a problem
not bringing back 19.  Given the language issues,
I'm inclined probably to strike her.  So unless
someone else wants to follow up or have some
question, I may not bring back 19.  I may just
strike 19.  Let me just take up that issue now.
Anyone have an issue with 19?

MS. FREISMUTH:  No, your Honor.

THE COURT:  Mr. Einhorn?

1          MR. EINHORN:  No, your Honor.

2          THE COURT:  Mr. Brown?

3          MR. BROWN:  No, your Honor.

4          MR. EINHORN:  Wasn't 21 also --

5          THE COURT:  21 was also another one.

6     She was a likely.  I mean, I could -- any thoughts

7     on 21?  There was also a language issue.

8          MS. FREISMUTH:  She also expressed some

9     language issues, Your Honor.

10          THE COURT:  Yeah, we can bring her back.

11     19 seemed a lot clearer.  To be frank, 19 seemed

12     clearer than 21.  21 raised their hand on some other

13     things, so we are going to bring back 21 in any

14     event.

15          Mr. Brown, I'm sorry, you are standing.

16          MR. BROWN:  Yes, your Honor, only

17     because I don't know if the Court intentionally

18     decided not to bring them back, but I thought, 4,

19     24, and 25 also raised their hand.

20          THE COURT:  I'm sorry, I think you are

21     right.  Hang on a second.  Exactly.  I'm sorry, I

22     should deal with that.

23          MS. FREISMUTH:  Yes, I think they did,

24     too, as well, Your Honor.

25          THE COURT:  Hang on.  Yeah, I do have

1    4 -- I'm sorry, right, 4, 15 and 25.

2              MR. BROWN:  Yes, your Honor.  And I

3    thought 24 also.

4              THE COURT:  And 24, yes.  24 did have an

5    answer to one question as well.  Okay.  Thank you.

6    You are right.  I'm looking at my list now.  Okay.

7              Anything else I missed?

8              MS. FREISMUTH:  We do apologize, Your

9    Honor, but there are some things we noticed in the

10   supplemental questionnaire in terms of the people

11   that were listed.  There are several that are

12   missing.

13             THE COURT:  Who is missing?

14             MS. FREISMUTH:  For one, we think we

15   should probably introduce Sergeant Zelinski.

16             THE COURT:  He's not on the list.

17             MS. FREISMUTH:  He's not on the list.

18   He's not testifying.  He's sitting at counsel table.

19             THE COURT:  I'm not going to bring

20   everyone back for that.  We'll just figure that out.

21   Who does he work for?

22             MS. FREISMUTH:  With the New London PD.

23   We do have Mike Zella from the Connecticut State

24   Police.

25             THE COURT:  That was mentioned.

1            MS. FREISMUTH:  And Stephanie Johnson,

2       Dilma Silva, Orlayn Marquez.

3            THE COURT:  I'm sorry, did I not have

4       those lists?

5            MS. FREISMUTH:  You do not, and I do

6       apologize, Your Honor, but --

7            THE COURT:  So we are going to bring

8       everyone back because of those four or five names?

9            MS. FREISMUTH:  Do you want me to finish

10      the --

11           THE COURT:  Let me do this.  Let me

12      figure it out a piece at a time.  I mean, the

13      reality is I guess I named -- I mean, we named all

14      of the various agencies, whether people knew anyone

15      from any of these places, and no one said anything.

16      At this point -- okay.  All right.  Were there any

17      other numbers I needed to bring back?

18           MR. EINHORN:  I was trying to follow

19      along.

20           THE COURT:  Sure.  I will read the new

21      list again.  It's fine.  I'm not blaming you,

22      because I did add names because Mr. Brown did catch

23      me in missing a couple of names, which I appreciate.

24      The numbers are 1, 3, 4, 7, 8, 9, 10, 12, 13, 14,

25      15, 16, 19, 20, 21, 22, 24, and 25.

1          MR. EINHORN:  I would ask you, Your

2    Honor please, to add No. 11 so we could question

3    him.  He's the one who mentioned he was formerly a

4    lawyer at, I think, Skadden Arps, and is currently

5    in the Army National Guard.  And he also indicates

6    that he's worked with the FBI on occasion.  That's

7    No. 11.

8          THE COURT:  I know, but what I'm asking

9    is -- I asked them all of the more case-specific

10   questions.  He didn't raise his hand to anything.

11         MR. EINHORN:  No, he didn't.

12         THE COURT:  I'm sorry?

13         MR. EINHORN:  He didn't.  If you are

14   going at some point maybe later --

15         THE COURT:  All right.  Let's think

16   about it.

17         Anyone else have anyone else they also

18   want to add?

19         MS. FREISMUTH:  No, your Honor.  Thank

20   you.

21         THE COURT:  Mr. Brown, anyone else?

22         MR. BROWN:  No, your Honor.

23         THE COURT:  Okay.  All right, Jazz.

24         (Prospective juror entered the

25   courtroom.)

1          THE COURT:  Good morning, again.  You

2     are Juror No. 1, correct?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  All right.  I just wanted to

5     just follow up with you on a couple of things.  You

6     had raised your hand regarding the issue about --

7     question about -- views about allegations about

8     possession of illegal drugs.  What were you thinking

9     about?

10         PROSPECTIVE JUROR:  I have two cousins

11    who are victims of drug abuse.

12         THE COURT:  Drug abuse.

13         PROSPECTIVE JUROR:  Abuse, yes.  And one

14    of my co-worker's son passed away due to overdose.

15    So I have strong views about availability and

16    distribution of drugs.  I don't know why they're out

17    on the streets.

18         THE COURT:  And, I mean, at the end of

19    the day the question is -- one has views, it's

20    important to know, and I appreciate you letting us

21    know and following up with that.  I guess the issue

22    is, at the end of the day you are going to hear

23    information about the allegations in this case, not

24    anyone else's case, and you are going to be asked to

25    then apply -- fairly and impartially review that

1   evidence and then apply the law.  Do you believe you

2   can be able to listen to that evidence and focus on

3   this case, not something else, and then follow the

4   law as I would instruct you?

5              PROSPECTIVE JUROR:  I will try my best,

6   yes.

7              THE COURT:  All right.  And we just need

8   -- you will try your best.  Like I said, you are

9   going to hear -- because at the end of the day what

10  we're concerned about is making sure Mr. Whyte and

11  Ms. Sarcia have a fair trial.

12             PROSPECTIVE JUROR:  Fair trial, sure.

13             THE COURT:  Like I said, people may have

14  experiences, but the issue is, you are going to hear

15  evidence here that will have nothing to do with

16  whatever issues happened there.  You are going to

17  hear that evidence, and then after you hear all of

18  the evidence I will instruct you on the law that you

19  are to follow and apply to the evidence.  I just

20  need to know whether you are willing to do your best

21  to sort of fairly and impartially apply the law.

22             PROSPECTIVE JUROR:  Fairly, yes.

23             THE COURT:  All right.  I think you also

24  raised your hand -- hang on a second.

25             PROSPECTIVE JUROR:  The last question.

```
1              THE COURT:  Yeah, it was the last
2    question, right.
3              PROSPECTIVE JUROR:  Yeah.
4              THE COURT:  It was the last question.
5    What were you thinking of?
6              PROSPECTIVE JUROR:  I have an 8-year-old
7    who doesn't have after school right now, and I have
8    aging in-laws living with me who are almost 80 years
9    old.  So I work from home plus take care of them,
10   but -- if I have to serve, I can come, but it just
11   puts strain on the family.
12             THE COURT:  If it's a strain on you --
13   you could, but it does put a strain on you.
14             PROSPECTIVE JUROR:  Yes.
15             THE COURT:  So are you the -- I mean,
16   because we would go from 9:00 to 4:00 in terms of
17   the trial time, so is it during that time --
18             PROSPECTIVE JUROR:  So it's -- my
19   daughter finishes school at 3:00.  So it's -- I live
20   in Stamford, so it takes me a half an hour.  So I
21   can get home.  It's not that I cannot do it.  It's
22   not life altering, but it just puts strain on the
23   family.
24             THE COURT:  All right.  Okay.
25             PROSPECTIVE JUROR:  Because I have to
```

ask a friend to pick up my daughter and bring her
home to my in-laws.

            THE COURT:  All right.  Thank you very
much.  I think that was all I had in terms of
questions.

            Counsel, do you have any follow-up
questions?  Ms. Freismuth?

            MS. FREISMUTH:  No, Your Honor.  Thank
you.

            THE COURT:  Mr. Einhorn, do you have any
follow up?

            MR. EINHORN:  Yes, your Honor.

            THE COURT:  Go ahead.

            MR. EINHORN:  Good morning.

            PROSPECTIVE JUROR:  Good morning.

            MR. EINHORN:  So it sounds like in your
family you've had some pretty horrendous experiences
with drugs.  You will hear evidence in this case
about drugs, people talking about drugs, drug sales.
So it is going to be pretty much a major factor as
you sit here as a juror.  Do you think you can put
aside all of your experiences, the family
experiences, the overdose and so forth, and sit
impartially in judging my client?

            PROSPECTIVE JUROR:  That's what I was

telling the Judge.

MR. EINHORN:  Yeah.

PROSPECTIVE JUROR:  With his guidance on following the law, I think I will be able to do it, but I cannot ignore my past experiences.  I don't know how to put it.  I do have that experience in my family.

MR. EINHORN:  Sure.

PROSPECTIVE JUROR:  Drug abuse is a problem, but, as the Judge said, like based on the evidence just on this case, I should be able to follow the law based on the evidence.

MR. EINHORN:  Okay.  Let me just ask you one last thing.  Do you have any feelings about people who sell drugs?

PROSPECTIVE JUROR:  Feelings?  I have an opinion.

MR. EINHORN:  What's that?

PROSPECTIVE JUROR:  It's more as to why they're doing that.  There are extenuating circumstances that people will want to -- will end up selling drugs, but I feel it's more nobody is born as a drug dealer.  It's more circumstances that probably made them drug dealers.

MR. EINHORN:  Okay.  Thank you very

```
1   much.

2                Thank you, your Honor.

3                THE COURT:  Mr. Brown, do you have any

4   follow up?

5                MR. BROWN:  No, Your Honor.

6                THE COURT:  All right.  Thank you very

7   much, ma'am.  I appreciate it.

8                PROSPECTIVE JUROR:  I just -- thank you.

9   I just wait in the other room?

10               THE COURT:  Ms. Perez will take you

11  back.

12               PROSPECTIVE JUROR:  Oh, okay.  Thank

13  you.

14               (Prospective juror exited the

15  courtroom.)

16               (Prospective juror entered the

17  courtroom.)

18               THE COURT:  Good morning again, sir.

19  How are you?

20               PROSPECTIVE JUROR:  Good morning, Your

21  Honor.

22               THE COURT:  You are Juror No. 3, correct?

23               PROSPECTIVE JUROR:  Yes, sir.

24               THE COURT:  All right.  So there were a

25  few questions you had raised your hand to that I
```

just wanted to follow up with you on.  One of them

involved -- regarded issues involving allegations of

illegal narcotics use and whether that could affect

your ability.  What were you thinking of, sir?

PROSPECTIVE JUROR:  Well, just to be

completely transparent, I have been around a lot of

individuals who have been involved in that kind of

lifestyle.  So I grew up in the projects of

Stamford, Connecticut, so I know -- I have a lot of

friends and family who that has affected personally.

Yes, sir.

THE COURT:  All right.  And -- yeah, I

think you also answered about someone close to you.

That's what you were also referring to?

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  And there was a question

about any views of the criminal justice system.

What were you thinking of there, sir?

PROSPECTIVE JUROR:  All right.  So from

my perspective, Your Honor, I feel like the criminal

justice system has been disproportionately biased

against people of color though a lot of times across

the board a lot of the criminality and drug use is

the same.  So that's just my viewpoint.

THE COURT:  Okay.  And, similarly, the

1  question about any moral, philosophical, ethical,

2  religious, or other beliefs, is it the same thing or

3  something additional?

4          PROSPECTIVE JUROR:  I mean, in addition

5  I would say -- it's just for me personally.

6          THE COURT:  Yeah.

7          PROSPECTIVE JUROR:  So I feel like who

8  am I to dictate or determine someone's future.  I

9  feel like I would rather not be involved.

10          THE COURT:  Understood.

11          PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  And then the last question

13  was anything else -- any other reason why you

14  couldn't serve as a juror.  What were you thinking

15  of there?

16          PROSPECTIVE JUROR:  Well, just first

17  with the COVID reason, you guys explained that as

18  well, but I do have an 18-month-old at home, and

19  obviously she's a vulnerable population.  I'm also

20  -- because I'm the C2E of my employment, I run the

21  operations.  So a prolonged time away from there

22  might be detrimental to the business I help run.

23          THE COURT:  All right.  So now -- and

24  just sort of following up on this question about

25  judging and having known or been in contact with

individuals who may have been involved with drug

issues, if you ended up serving as a juror in this

case, the issue really that I'm really concerned

about is would you be able to hear evidence -- you

will hear evidence that will be presented, and will

you be able to judge that evidence and then follow

any instructions on the law that I would give you?

If you ended up having to serve, would you be able

to do that?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  And then just so

I'm clear on the nature of it, it's basically a

prolonged absence.  Is it both in the home -- and to

be clear, we would be having trial time really

between sort of 9:00 and 4:00, but what you are

concerned about is being away from work?  There no

one who backs you up?

PROSPECTIVE JUROR:  Well, I have a --

well, my supervisor, but she's on vacation for a

while, so -- I believe two weeks a month, if I'm not

mistaken.  So basically right now it's just me

because I run the daily operations.

THE COURT:  I see.  So right now with

your supervisor away there is no one who sort of

backs you up --

1              PROSPECTIVE JUROR:  Exactly.

2              THE COURT:  -- is the issue.

3              PROSPECTIVE JUROR:  Exactly, your Honor.

4              THE COURT:  Thank you very much.

5              Any follow-up questions from the United

6    States, Ms. Freismuth?

7              MS. FREISMUTH:  No, Your Honor.  Thank

8    you.

9              THE COURT:  All right.  Mr. Einhorn, any

10   follow up?

11             MR. EINHORN:  No, Your Honor.  Thank

12   you.

13             THE COURT:  Mr. Brown, any follow up?

14             MR. BROWN:  No, your Honor.

15             THE COURT:  All right.  Thank you so

16   much.  We really appreciate your time, sir.

17             (Prospective juror exited the

18   courtroom.)

19             (Prospective juror entered the

20   courtroom.)

21             THE COURT:  Good morning again, sir.

22   How are you?

23             PROSPECTIVE JUROR:  Good morning.

24             THE COURT:  You are Juror No. 4,

25   correct?

1          PROSPECTIVE JUROR:  Yep.

2          THE COURT:  And I think you had raised

3    your hand to the question I asked about anyone --

4    you or anyone close to you have philosophical or

5    other objections to federal regulation of firearms

6    or government limitations of firearms and so forth.

7    What were you thinking about?

8          PROSPECTIVE JUROR:  I just don't believe

9    that the federal government has the prerogative to

10   regulate firearms, the possession, manufacture, or

11   ownership.

12         THE COURT:  All right.  And I understand

13   the belief.  The reality is, people are allowed to

14   believe whatever they want to believe.  I guess the

15   question would be, if you end up having to serve as

16   a juror, would you be able to look at the evidence

17   impartially and follow the law as I would instruct

18   you?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  All right.  Any follow up,

21   Ms. Freismuth?

22         MS. FREISMUTH:  No.  Thank you, your

23   Honor.

24         THE COURT:  Mr. Einhorn?

25         MR. EINHORN:  No, Your Honor.  Thank

1   you.

2              THE COURT:  Mr. Brown?

3              MR. BROWN:  No, Your Honor.

4              THE COURT:  All right.  Thank you very

5   much, sir.  I appreciate your time.

6              (Prospective juror exited the

7   courtroom.)

8              (Prospective juror entered the

9   courtroom.)

10             THE COURT:  Good morning, again.

11             PROSPECTIVE JUROR:  Good morning, Your

12  Honor.

13             THE COURT:  Just refresh my

14  recollection.  You are juror number?

15             PROSPECTIVE JUROR:  Juror No. 7.

16             THE COURT:  All right.  Hang on one

17  second.  Oh, you had raised your hand to the

18  question about whether someone had any moral,

19  philosophical, ethical, religious, or other belief

20  that might affect your ability to hear the case

21  fairly and impartially.  What were you thinking of,

22  ma'am.

23             PROSPECTIVE JUROR:  So I come from a

24  very traditional Catholic family.  I have very

25  strong Catholic beliefs, and because drug abuse has

been an issue in my family and it has affected our
personal family experience, to me it would be
difficult to be impartial in a case like this
because of the personal experience that we've had
with that.

THE COURT:  I don't want to get too
meddling about it.  The personal experience, was it
someone close to you having some issue with drug
abuse?

PROSPECTIVE JUROR:  I have two young
adult cousins who are fighting drug abuse, and have
been so for many years, which has been the cause of
a lot of suffering for my family.  And I also come
from a country that was pretty badly affected by
drug trafficking.  I'm originally from Colombia.  So
growing up was tough for me seeing the effects of
that trade, and, you know, to me, it's just a
difficult thing to process.

THE COURT:  Okay.  And so with those
difficult feelings, if you ended up sitting as a
juror in this case and you had to hear evidence and
then apply the law as I will instruct you, you feel
that you would have difficulty being impartial
looking at this evidence?

PROSPECTIVE JUROR:  Perhaps.  Again,

because I think that just the intention is there.
If the person was in the possession of drugs and
firearms, that in itself leads to wrongdoing.  So I
think it would be difficult for me to separate the
two.

THE COURT:  Well -- I'm sorry, I should
have been clearer in asking the question.  What
would happen obviously in connection with the trial
is the government would present evidence and Mr.
Whyte and Ms. Sarcia would raise their concerns
about the evidence and raise any evidence they
believe would be favorable to Mr. Whyte and Ms.
Sarcia, and you ultimately would have to figure out
what evidence to accept and reject, and then you
would also then -- you'd be given instructions on
the law.  So, in essence, I would instruct you how
you are supposed to view the evidence and how you
are supposed to apply it to the law.  So I guess I'm
asking you, would you be able to do that?

PROSPECTIVE JUROR:  I would try, yes,
but, like I said, just being absolutely honest --

THE COURT:  I understand.

PROSPECTIVE JUROR:  -- about my
experiences in this whole arena.

THE COURT:  Yes.

1      PROSPECTIVE JUROR:  I think that I just

2  wanted to just let you know.

3      THE COURT:  I appreciate it.  And,

4  again, to be clear, it's okay to have whatever

5  feelings you have and views.  What I'm just trying

6  to figure out is, ultimately what I'm charged with

7  is making sure Mr. Whyte and Ms. Sarcia receive a

8  fair trial.

9      PROSPECTIVE JUROR:  Which I believe.

10  I'm sorry to interrupt.  They are entitled to that,

11  as you know.

12      THE COURT:  Yeah.  And all we need from

13  you is not to not have any views, but to basically

14  when you are -- if you sat as a juror, what

15  basically will happen in the trial is evidence will

16  be presented, and then -- I'm going to ask you to

17  keep an open mind until all of the evidence is

18  presented, and I'm going to ask you to keep an open

19  mind until I instruct you on the law, the lawyers

20  give closing arguments, and then I want you to hold

21  those views until you get there in the jury room and

22  deliberate with other folks.  So you will then be

23  there with 11 other folks and have to figure out how

24  you all view the evidence and then what you all --

25  what your understanding is of how you should apply

1    the law.

2              And I understand there are personal

3    experiences, but I guess what I'm asking you is, if

4    you hear all of that evidence can you weigh that and

5    then apply the law?

6              PROSPECTIVE JUROR:  Yeah.

7    Intellectually, obviously.  Yes.

8              THE COURT:  I understand.  Like I said,

9    we don't ask people not to have feelings.  We want

10   -- just want them to be able to put them in

11   perspective and understand what they are supposed to

12   do in court.

13             Ms. Freismuth, did you have any

14   follow-up questions.

15             MS. FREISMUTH:  Yes, Your Honor.  I

16   believe she answered the question to 32.  It may be

17   the same.  I'm not sure.

18             THE COURT:  That's what I was following

19   up on.  32 was about the religious beliefs and so

20   forth.  Any follow up other than that?

21             MS. FREISMUTH:  No, Your Honor.

22             THE COURT:  Mr. Einhorn?

23             MR. EINHORN:  Yes, your Honor.

24             THE COURT:  Go ahead.

25             MR. EINHORN:  Good morning, (name

1   redacted.)

2              PROSPECTIVE JUROR:  Good morning.

3              MR. EINHORN:  You said it would be

4    difficult to be impartial in this particular case.

5    And that's because there's allegations of drugs,

6    drug sales involved?

7              PROSPECTIVE JUROR:  Correct.  Yes.

8              MR. EINHORN:  And you would agree with

9    of course the Judge and all of us that our clients

10   deserve a fair trial with impartial jurors, right?

11   You agree with that?

12             PROSPECTIVE JUROR:  Correct.

13             MR. EINHORN:  If you were sitting in my

14   client's seat right now charged with a drug crime,

15   would you want yourself to be a juror in that case?

16             PROSPECTIVE JUROR:  Based on my beliefs,

17   probably not.  Based on my religious beliefs.

18             MR. EINHORN:  Probably no?

19             PROSPECTIVE JUROR:  Yeah.

20             MR. EINHORN:  Thank you very much.

21             THE COURT:  Mr. Brown, do you have any

22   follow up?

23             MR. BROWN:  Yes, your Honor.

24             THE COURT:  Go ahead.

25             MR. BROWN:  Good morning.

1          PROSPECTIVE JUROR:  Good morning.

2          MR. BROWN:  Notwithstanding your

3  beliefs, if you heard all of the evidence in this

4  particular case and you felt after listening to the

5  Judge's instructions that notwithstanding your

6  strong feeling of drugs, drug abuse, drug selling,

7  all of that stuff, which I think probably most

8  people have, the question is whether or not you

9  could put aside your personal beliefs and follow the

10 Court's instructions, or do you feel that it's

11 difficult for you at this time to be able to commit

12 to putting aside your personal beliefs, particularly

13 if they happen to run counter to the Court's

14 instruction given your faith?

15         PROSPECTIVE JUROR:  So based on the

16 Judge's explanation, I am able and capable of

17 following instructions, but I think this is sort of

18 all encompassing.  I think that there is a certain

19 intellectual piece to this whole process, and I

20 would be willing to follow those instructions, but I

21 think that my experiences and my own biases and my

22 own beliefs would also come into play as -- you

23 know, I have never served on a jury, but I think

24 they deliberate, they express their experiences,

25 they -- so I would follow whatever instruction I

would be given, but I think that every decision is going to be based on all of those experiences combined.

So it's difficult to say I will put my feelings aside because you can't completely do that. I don't think you can completely put your beliefs and your feelings and your experiences aside.

MR. BROWN:  And, again, as relates to my client, as counsel had just asked you, do you feel if you were in this seat would you want somebody like yourself in this particular case -- not in other types of cases -- sitting as a juror in this matter?

PROSPECTIVE JUROR:  Well, I surely hope I wouldn't have to sit there, but I think -- yeah, again, I probably would not.

MR. BROWN:  Okay.  Thank you.

THE COURT:  All right.  Thank you so much, ma'am.  I really appreciate your time.

PROSPECTIVE JUROR:  Thank you so much. Have a good day.

(Prospective juror exited the courtroom.)

MR. EINHORN:  Does Your Honor want the cause challenges now or do you want --

1          THE COURT:  No.  I think once we see

2     everyone, then we'll take things up.

3          MS. FREISMUTH:  Your Honor, just one

4     issue.  The government takes objection to asking the

5     jurors to put themselves in --

6          THE COURT:  Yeah.  Quite frankly, I let

7     them ask it.  I'm disregarding it.  I'm not sure --

8     that's not the standard.  That's not -- I'm not

9     going to uphold a -- whether they want them sitting

10    as a juror because I don't think that's the standard

11    at all.  You raise a good point.

12          (Prospective juror entered the

13    courtroom.)

14          THE COURT:  Good morning again, sir.

15    How are you?

16          PROSPECTIVE JUROR:  Good morning.

17          THE COURT:  You are Juror No. 8.

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  I just wanted to make sure,

20    you mentioned about whether or not you were a

21    resident of Connecticut.  I guess we have your

22    information of you living in Westport.  Do you not

23    live in Westport?

24          PROSPECTIVE JUROR:  That's like my

25    childhood home.  My full-time residence is in New

York City.  I just have a Connecticut driver's
license.

THE COURT:  You have a Connecticut
driver's license?

MR. BROWN:  I do.

THE COURT:  And it has the address in
Westport the court has?

PROSPECTIVE JUROR:  Yeah, but I have,
like, a lease in New York City.  I pay taxes there.

THE COURT:  Unfortunately, because of
the driver's license, you are a legal resident of
New York -- I mean a legal resident of Connecticut.

Any other follow-up questions anyone
has?

MS. FREISMUTH:  No, Your Honor.  Thank
you.

THE COURT:  MR. Einhorn?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  No.  Thank you, your Honor.

THE COURT:  Thank you, sir.

(Prospective juror exited the
courtroom.)

(Prospective juror entered the
courtroom.)

1          THE COURT:  Good morning again, sir.

2   How are you?

3          PROSPECTIVE JUROR:  Good.

4          THE COURT:  Good.  All right.  You had

5   raised your hand to the question about views

6   regarding sort of illegal narcotics that could

7   affect your ability to be a fair juror.  What were

8   you thinking of, sir?

9          PROSPECTIVE JUROR:  I work for EMS.

10  I've been doing it for 28 years and I have seen the

11  effects of drugs and how they work on people and

12  what they do, and I'm against it big time.  Always

13  trying to save somebody.

14          THE COURT:  I'm sorry, you are against

15  what?

16          PROSPECTIVE JUROR:  I'm against it

17  because I'm always trying to save somebody with the

18  drugs and there is nothing I can do.

19          THE COURT:  So you have concerns about

20  that.

21          PROSPECTIVE JUROR:  I do.

22          THE COURT:  You mentioned that -- is

23  there any other reason why you couldn't serve as a

24  juror.  What you were thinking of?

25          PROSPECTIVE JUROR:  Financial problems.

I'm the only working person in my family right now.

My wife is on disability, and I don't get paid on my

part-time job unless I show up.

          THE COURT:  So you don't get paid unless

you show up.

          PROSPECTIVE JUROR:  Right.

          THE COURT:  Any follow up, Ms.

Freismuth?

          MS. FREISMUTH:  No, Your Honor.

          THE COURT:  Mr. Einhorn?

          MR. EINHORN:  No, Your Honor.

          THE COURT:  Mr. Brown?

          MR. BROWN:  No, Your Honor.

          THE COURT:  Thank you very much, sir.  I

appreciate it.

          (Prospective juror exited the

courtroom.)

          (Prospective juror entered the

courtroom.)

          THE COURT:  Good morning, again.  You

are Juror No. 10.

          PROSPECTIVE JUROR:  Yes.

          THE COURT:  How are you?  All right.

You had raised your hand to at least one question

involving someone close to you may have had an issue

1    with drug addiction that might affect you.  What
2    were you thinking of?
3             PROSPECTIVE JUROR:  My mother had a drug
4    addiction, my stepfather.  And there was another
5    question before that, too, right?
6             THE COURT:  Yes, it was about anyone
7    close to you -- you or anyone close to you been
8    accused of or -- a victim of or accused of a crime
9    involving allegations of illegal drug distribution.
10            PROSPECTIVE JUROR:  Yes.  My kids'
11   father, who I have been with for 20 years, he used
12   to sell drugs.  He was arrested for it.  He went to
13   jail for it.  So --
14            THE COURT:  Okay.  All right.  And so
15   those particular personal experiences -- again,
16   people have experiences that they have and the views
17   that they have, but if you end up having to sit as a
18   juror, would you be able to hear the evidence in
19   this case and focus on the evidence here impartially
20   and apply the law as I would instruct you?
21            PROSPECTIVE JUROR:  I would still have
22   my opinions, but I mean --
23            THE COURT:  Yeah, just to be clear,
24   people are allowed to have opinions.  The real
25   question is at the end of the day what we're charged

with here is making sure Mr. Whyte and Ms. Sarcia
have a fair trial.  So you are going to hear
evidence that is supposed to relate to them and then
-- the case here is going to relate to them and I'm
going to instruct you on the law to apply how you
are going to deal with the evidence and everything
relating to them.  That's all I am asking.  Can you
do that and focus on that and do that honestly and
fairly?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  It was just
those two questions, correct?

PROSPECTIVE JUROR:  That was it.

THE COURT:  All right.  Any follow up,
Ms. Freismuth?

MS. FREISMUTH:  No, Your Honor.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.  Thank
you.

THE COURT:  Mr. Brown?

MR. BROWN:  No, Your Honor.  Thank you.

THE COURT:  Thank you so much, ma'am.

(Prospective juror exited the
courtroom.)

(Prospective juror entered the

1    courtroom.)

2              THE COURT:  Good morning again, sir.

3    You are Juror No. 11, correct?

4              PROSPECTIVE JUROR:  Yes, Your Honor.

5              THE COURT:  Okay.  I think we just

6    wanted to ask some follow up.  I think -- Mr.

7    Einhorn, did you have follow-up questions?

8              MR. EINHORN:  Yes, Your Honor.  May I?

9              THE COURT:  Yes.

10             MR. EINHORN:  Good morning, (name

11   redacted.)  Did I pronounce it, right?

12             PROSPECTIVE JUROR:  You did.

13             THE COURT:  Mr. Einhorn, just his juror

14   number.  We just do juror numbers.

15             MR. EINHORN:  Yes, of course.

16             THE COURT:  Strike that reference to the

17   name.

18             MR. EINHORN:  Sorry.  Good morning.  You

19   told us you were a lawyer previously.  Can you tell

20   us what sort of law you practiced?

21             PROSPECTIVE JUROR:  It was corporate

22   litigation.

23             MR. EINHORN:  Just corporate litigation.

24   No criminal law, right?

25             PROSPECTIVE JUROR:  I did do a criminal

defense investigation with Boeing, but it was mostly

pre -- kind of document review.

MR. EINHORN: Okay. And you also told

us that you're with the -- you are a lieutenant

colonel, actually, in the Army National Guard?

PROSPECTIVE JUROR: That's right.

MR. EINHORN: In that regard, do you

have any feelings about sitting as a juror on a case

being prosecuted by the government? Do you feel one

way or another as a member of the national guard

about that?

PROSPECTIVE JUROR: No.

MR. EINHORN: And the last thing is, you

indicated that you had some contacts with the FBI, I

think, and there will be at least one witness from

the FBI who will testify in this case.

PROSPECTIVE JUROR: Right.

MR. EINHORN: Do you feel you could be

impartial listening to this witness and any evidence

that's proffered by the FBI?

PROSPECTIVE JUROR: Sure. I didn't hear

his name in there. He's the commander of the joint

force.

MR. EINHORN: James Wines is the person.

PROSPECTIVE JUROR: Not the same person.

1                MR. EINHORN:  All right.  Is there any

2     reason then why you couldn't sit as a fair and

3     impartial juror in this case?

4                PROSPECTIVE JUROR:  No.

5                MR. EINHORN:  Thank you very much.

6                Thank you.

7                THE COURT:  Does anyone else have any

8     follow up?  Mr. Brown?

9                MR. BROWN:  No, Your Honor.

10               THE COURT:  Ms. Freismuth?

11               MS. FREISMUTH:  No, Your Honor.

12               THE COURT:  So you feel you could be

13    fair and impartial in hearing this case if you were

14    chosen as a juror, sir?

15               PROSPECTIVE JUROR:  I do, Your Honor.

16               THE COURT:  Thank you so much.  I

17    appreciate your time.

18               (Prospective juror exited the

19    courtroom.)

20               (Prospective juror entered the

21    courtroom.)

22               THE COURT:  Good morning.  What's your

23    juror number?

24               PROSPECTIVE JUROR:  Juror 12.

25               THE COURT:  Juror 12.  I think on one of

1  the questions you said that you had been a defendant

2  in a criminal matter.  Is that correct, sir?

3              PROSPECTIVE JUROR:  Correct.

4              THE COURT:  What was the nature of the

5  matter?

6              PROSPECTIVE JUROR:  It was a -- being

7  charged with a DUI.

8              THE COURT:  How long ago was that?

9              PROSPECTIVE JUROR:  Three years ago.

10             THE COURT:  Three years ago.  Okay.  And

11 to your knowledge you are not aware of anything --

12 to your knowledge you are eligible to serve as a

13 juror despite that conviction, correct?

14             PROSPECTIVE JUROR:  Correct.

15             THE COURT:  All right.  Anyone else have

16 any follow-up questions for Juror No. 12?

17             MS. FREISMUTH:  A quick question, Your

18 Honor.

19             Just for clarification, I wasn't sure,

20 were you convicted in the case?

21             PROSPECTIVE JUROR:  I came out with a

22 DWAI.  Yeah, so it was like -- it wasn't what I was

23 being charged with.  They settled it with something

24 else.

25             MS. FREISMUTH:  So a lesser charge than

1    the one you went to trial for?

2              PROSPECTIVE JUROR:  Correct.

3              MS. FREISMUTH:  Was that reached as a

4    verdict or was it a plea that happened during the

5    trial?

6              PROSPECTIVE JUROR:  It wasn't a trial.

7    It was going to go to trial.  It was in the

8    courthouse in Harrison.

9              MS. FREISMUTH:  It was three years ago

10   you think, about?

11             PROSPECTIVE JUROR:  Yeah.

12             MS. FREISMUTH:  In Connecticut?

13             PROSPECTIVE JUROR:  No, this was in New

14   York.  I'm a resident of Connecticut, though.  It

15   happened in New York.

16             THE COURT:  Mr. Einhorn, any follow up?

17             MR. EINHORN:  No, Your Honor.

18             THE COURT:  Mr. Brown?

19             MR. BROWN:  Yes, Your Honor.

20             THE COURT:  Go ahead.

21             MR. BROWN:  Sir, just a couple of

22   questions here.  In that particular case you made

23   the decision -- were you represented by an attorney?

24             PROSPECTIVE JUROR:  Correct.

25             MR. BROWN:  And after discussions with

the attorney you decided to plead guilty, is that

correct, to a lesser charge?

PROSPECTIVE JUROR:  Correct.

MR. BROWN:  Now, in this case it's

pretty obvious, because we're ready to go as soon as

we pick a jury, that these defendants have decided

to exercise their constitutional right to have a

jury trial.  You understand that?

PROSPECTIVE JUROR:  Correct.

MR. BROWN:  And I'm just wondering, do

you think in the back of your mind, well, gee, I

don't know why they would do that, they should just

plead like I did, and that might play a role in any

way in your decision-making process if you were

selected on this panel?

PROSPECTIVE JUROR:  No, I think every

situation is different.  In my case I chose my best

option.  So I don't see it affecting my judgment

regarding --

MR. BROWN:  Well, if the Court were to

instruct you in general that you are to put aside

any personal contacts or events you may have had

with the court system and restrict your

decision-making process to what you hear in this

courtroom along with what the Court instructs you as

to the law, do you feel you could do that?

PROSPECTIVE JUROR: Correct. It was --
regarding my situation, that was my responsibility,
nothing against the criminal justice system. So
yes. To answer your question, yes.

MR. BROWN: All right. Thank you.

THE COURT: So you can be fair and
impartial if you are called to hear this case,
correct, sir?

PROSPECTIVE JUROR: Correct.

THE COURT: All right. Thank you very
much.

(Prospective juror exited the
courtroom.)

(Prospective juror entered the
courtroom.)

THE COURT: Good morning, again. How
are you, sir?

PROSPECTIVE JUROR: Good. How are you
doing?

THE COURT: Good. So you are Juror No.
13, correct?

PROSPECTIVE JUROR: Correct.

THE COURT: I think you raised your hand
to one of the question involving whether you or

someone close to you had been either a victim of or

accused of a crime involving allegations of illegal

distribution.  What were you thinking of?

PROSPECTIVE JUROR:  I'm a high school

coach, and one of my ex-players was charged with

possession with intent to sell recently.

THE COURT:  Okay.  And would that

experience affect your ability if you had to sit as

a juror on this case to be fair and impartial?

PROSPECTIVE JUROR:  I would say no.  I

only wanted to make sure that was on there, that I

do know someone who was recently --

THE COURT:  I'm not saying you were

suggesting that.

PROSPECTIVE JUROR:  Yep.

THE COURT:  I appreciate that.  And then

the answer to the last question about any other

reason you might not be able to serve, what were you

thinking of?

PROSPECTIVE JUROR:  Yeah, I'm an

elementary school teacher and we are now starting

our second week of school, and my concern is that I

have a lot of special needs children in my classroom

who obviously are dealing with wearing a mask in

school, and because it's elementary school, all of

my students are unvaccinated.  There is a good
chance that they may get quarantined, and that would
mean that there is going to have to be someone who
is going to be a substitute and has to teach in
person and virtually simultaneously, and I just
don't know if they are going to be able to handle
the needs of those kids if they had to do that since
I did it all last the year.  I guess I'm concerned
the longer the case goes the harder it's going to be
for me to help those children.  So I just wanted to
be sure I put that in there, that I am concerned my
students will be impacted by this.

        THE COURT:  Understood.  What grade do
you teach, sir?

        PROSPECTIVE JUROR:  Fifth grade.

        THE COURT:  So you guys have started
already, correct?

        PROSPECTIVE JUROR:  We started last
week, yes.

        THE COURT:  Thank you for that.

        Any follow up from the United States?

        MS. FREISMUTH:  No, Your Honor.  Thank
you.

        THE COURT:  Mr. Einhorn, any follow up?

        MR. EINHORN:  Yes, Your Honor.

1           Just quickly, sir, you mentioned you

2      also had some close friends who were police

3      officers?

4           PROSPECTIVE JUROR:  Yes.

5           MR. EINHORN:  Can you tell us what

6      departments they serve in.

7           PROSPECTIVE JUROR:  They work in the

8      Stamford, Norwalk, and New York police departments.

9           MR. EINHORN:  And you said you are close

10     to them.  Would your friendship impair your ability

11     to sit impartially on this case having heard the

12     nature of the charges?

13          PROSPECTIVE JUROR:  No.

14          MR. EINHORN:  You can put all that aside

15     , the friendships and stories they may have told you

16     and so forth and listen to the evidence fairly and

17     impartially?

18          PROSPECTIVE JUROR:  Yes.

19          MR. EINHORN:  Thank you, your Honor.

20          THE COURT:  Mr. Brown, did you have

21     anything?

22          MR. BROWN:  No, Your Honor.

23          THE COURT:  Thank you very much, sir.  I

24     appreciate it.

25          PROSPECTIVE JUROR:  Thank you.

1          (Prospective juror exited the

2    courtroom.)

3          (Prospective juror entered the

4    courtroom.)

5          THE COURT:  All right.  Good morning,

6    again, sir.  How are you?

7          PROSPECTIVE JUROR:  I'm well, Your

8    Honor.  Thank you.

9          THE COURT:  You are Juror No. 14,

10   correct?

11         PROSPECTIVE JUROR:  I am Juror No. 14.

12         THE COURT:  You had raised your hand --

13   there was one question involving views about

14   allegations of drug -- illegal narcotics.  I think

15   there was another one about maybe someone close to

16   you with a drug addiction.  What were you thinking

17   about?  They may not be the same thing, but what

18   were you thinking about?

19         PROSPECTIVE JUROR:  A business associate

20   who worked across the hall from us for a couple of

21   decades, his son was addicted to drugs, both cocaine

22   and fentanyl, I believe.  He committed suicide in --

23   I forget the year.  Two years after that his father

24   committed suicide following the loss of his son.

25   Excuse me.

                    THE COURT:  That's all right.  Take your
time, sir.

                    PROSPECTIVE JUROR:  My wife's cousin was
shot by a man during a drug deal.  That man was
later convicted for that as well as the underlying
crimes of drug possession, sale, and transfer.
Fentanyl and cocaine were both involved in that as
well.

                    I have had two friends that have
committed suicide from their drug abuse, and I
investigated numerous crimes in my time in law
enforcement on drug charges.  I just don't feel I
have a very open mind to it.

                    THE COURT:  Okay.  So you think given
these experiences -- my sympathies for the
experiences you have seen people go through and you
have had to sort of be close to.  So you think those
experiences would affect your ability to be fair and
impartial in this case?

                    PROSPECTIVE JUROR:  Definitely.

                    THE COURT:  All right.  Thank you very
much, sir.

                    PROSPECTIVE JUROR:  Thank you, Your
Honor.

                    (Prospective juror exited the

courtroom.)

THE COURT:  Although I don't think -- I
don't think I have any choice than to excuse him for
cause.  I don't think anyone has any objection, I
assume.  I didn't think it made sense to have any
further follow up.  Did anyone have any concerns?
Ms. Freismuth?

MS. FREISMUTH:  No, Your Honor.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  Well stated, Your Honor.

(Prospective juror entered the
courtroom.)

THE COURT:  Good morning, again.

PROSPECTIVE JUROR:  Good morning.

THE COURT:  You are juror number?

PROSPECTIVE JUROR:  16.

THE COURT:  16.  All right.  And you had
raised your hand about issues of -- views about
possession of illegal narcotics.  That was one of
the questions you raised your hand to?

PROSPECTIVE JUROR:  Yeah, everything is
going to lead into that.

THE COURT:  Sure.

1    PROSPECTIVE JUROR:  I heard the word

2    "heroin," and it just the makes the hair on the back

3    of my neck stand up.  Right now we have a nephew

4    that -- who sold heroin, and he's currently addicted

5    to it, and we're watching his life spiral completely

6    out of control.  The heartache is just unbearable.

7    We have family members that are addicted, we have

8    friends that are addicted, and a daughter -- my

9    daughter's classmate was just found dead of a heroin

10   overdose.  So I have definite opinions about that

11   and the people that peddle that stuff.

12   THE COURT:  In your view, based on those

13   experiences, you don't feel you can sit in this case

14   and hear it fairly, correct?

15   PROSPECTIVE JUROR:  It's why I raised my

16   hand.

17   THE COURT:  Understood.

18   PROSPECTIVE JUROR:  Absolutely, Your

19   Honor.

20   THE COURT:  All right.  And I think you

21   also mentioned -- was there any other reason you

22   could not serve?  Was there something else you were

23   thinking of or was it just that?

24   PROSPECTIVE JUROR:  Other than that,

25   those are my leanings, but just that I run a

1    business and -- I own and operate it, and when I

2    stop, it stops.

3              THE COURT:  Understood.

4              PROSPECTIVE JUROR:  So I include that as

5    well.

6              THE COURT:  All right.  Thank you very

7    much, sir.

8              PROSPECTIVE JUROR:  Thank you.

9              THE COURT:  Jazz, before you leave.

10             (Prospective juror exited the

11   courtroom.)

12             THE COURT:  15.  That was 16.  And I am

13   going to excuse him as well.  He seems similarly

14   situated to 14.

15             THE CLERK:  15 is in the restroom.

16             THE COURT:  All right.  Bring in another

17   one.  We'll make sure we come back to it.  Thank

18   you.

19             (Prospective juror entered the

20   courtroom.)

21             THE COURT:  Good afternoon, sir.

22             PROSPECTIVE JUROR:  Good morning.

23             THE COURT:  You are juror number --

24             PROSPECTIVE JUROR:  Sorry, I said good

25   morning, sir.

1          THE COURT:  It is still morning.

2          PROSPECTIVE JUROR:  I'm sorry, the

3    question?

4          THE COURT:  You are juror number?

5          PROSPECTIVE JUROR:  15.

6          THE COURT:  15.  Yes, great.  You are

7    Juror No. 15.  You had raised your hand to the

8    question regarding any views -- you or someone close

9    to you about firearms.  What were you thinking

10   about?

11         PROSPECTIVE JUROR:  I was just in the

12   process of getting my license for firearms, so --

13         THE COURT:  Okay.  And in that process

14   pursuing -- I guess you are in the process of

15   getting a firearm?

16         PROSPECTIVE JUROR:  I just believe in

17   the right to bear arms, and strongly.

18         THE COURT:  All right.  And would you be

19   able to -- again, people can have whatever views

20   they have.  The question is, if you sat as a juror

21   can you hear the evidence here and follow the law as

22   I instruct you?

23         PROSPECTIVE JUROR:  Of course.

24         THE COURT:  Any follow up, Ms.

25   Freismuth?

1          MS. FREISMUTH:  No, Your Honor.

2          THE COURT:  Mr. Einhorn?

3          MR. EINHORN:  No, Your Honor.

4          THE COURT:  Mr. Brown?

5          PROSPECTIVE JUROR:  No, Your Honor.

6          MS. FREISMUTH:  I'm sorry, I did have

7    one question.

8          THE COURT:  Go ahead.

9          MS. FREISMUTH:  There was a note we had

10   about being involved in an involuntary manslaughter

11   case.

12         PROSPECTIVE JUROR:  Yes.  My sister was

13   killed in a car accident, a motor vehicle accident,

14   and obviously we were involved in the civil case for

15   that.

16         MS. FREISMUTH:  Thank you.

17         THE COURT:  All right.  Any follow up

18   based on that?

19         MR. EINHORN:  No, Your Honor.

20         THE COURT:  Mr. Brown?

21         MR. BROWN:  No, Your Honor.

22         THE COURT:  Thank you, sir.

23         (Prospective juror exited the

24   courtroom.)

25         (Prospective juror entered the

1    courtroom.)

2              THE COURT:  What juror number are you,

3    ma'am?

4              PROSPECTIVE JUROR:  19.

5              THE COURT:  You are 19.  Okay.

6    Actually, I'm sorry, I don't have any questions for

7    you.  Thank you so much.  Thank you.  My apologies.

8              (Prospective juror exited the

9    courtroom.)

10             THE COURT:  I forgot.  19 -- I think we

11   all agree 19 had the language issues and should be

12   struck.

13             MS. FREISMUTH:  Yes, Your Honor.

14             MR. EINHORN:  Yes.

15             (Prospective juror entered the

16   courtroom.)

17             THE COURT:  Good morning, again.  You

18   are Juror No. 20, correct?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  All right.  You raised your

21   hand to the question about views about law

22   enforcement.  What were you thinking of?

23             PROSPECTIVE JUROR:  Just the fact that,

24   as I stated, I'm in human resources and I have the

25   position as well as pay data for both the state

police as well as the UConn Police Department.

THE COURT:  And having access to that
data, would that affect your ability to hear
evidence in this case and be fair and impartial?

PROSPECTIVE JUROR:  Probably not, no.  I
just wanted to make it known.

THE COURT:  No, I appreciate it.

PROSPECTIVE JUROR:  Just in case --
sometimes with the job records there is questions
about promotions or demotions or things like that.
I just thought I would share that.

THE COURT:  Any of the names -- any of
the names of specific people, no one rang a bell for
you, correct?

PROSPECTIVE JUROR:  No.

THE COURT:  Actually, Ms. Freismuth, you
said there were maybe a couple of additional names.
Would you read those names off.

MS. FREISMUTH:  There is one from the
Connecticut State Police, Your Honor.  It's Mike
Zella.

PROSPECTIVE JUROR:  Not that I'm
familiar with, no.

THE COURT:  All right.  And then I think
you said -- I think it was the last question about

1  was there any other reason why you might not be able

2  to serve.  What were you thinking of?

3          PROSPECTIVE JUROR:  Just the fact I have

4  a vacation scheduled in October out of state.  So in

5  case the trial went beyond September to October, I'm

6  going to be out of the state.

7          THE COURT:  Starting October when?

8          PROSPECTIVE JUROR:  10th to the 14th.

9          THE COURT:  Any follow up, Ms.

10 Freismuth?

11         MS. FREISMUTH:  No, Your Honor.

12         THE COURT:  Mr. Einhorn?

13         MR. EINHORN:  No, Your Honor.

14         THE COURT:  Mr. Brown?

15         MR. BROWN:  No, Your Honor.

16         THE COURT:  Thank you so much.  I

17 appreciate it.

18         (Prospective juror exited the

19 courtroom.)

20         THE COURT:  Ms. Perez, just one moment.

21 I don't think I need 21.  I will let 21 go.  I think

22 she also expressed language issues.  She wasn't as

23 clear as 19, as challenging, but I don't think it's

24 a fruitful road to go down.  You can bring the next

25 one.  I think is --

1          THE CLERK:  I have 22.

2          THE COURT:  22.

3          (Prospective juror entered the

4  courtroom.)

5          THE COURT:  Good morning, again.  You

6  are Juror No. 22, correct?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  All right.  So you had

9  raised your hand.  Hang on a second -- I think there

10  was one question about whether you or someone close

11  to you had some issue with drug addiction.  What

12  were you thinking of?

13          PROSPECTIVE JUROR:  A close family

14  member of mine has been struggling with drug

15  addiction and he just relapsed.

16          THE COURT:  And just relapsed?

17          PROSPECTIVE JUROR:  Yeah, my cousin.

18          THE COURT:  And would the experience

19  with your cousin affect your ability to hear fairly

20  and impartially evidence here regarding potential

21  drug distribution and then follow the law as I would

22  instruct you?

23          PROSPECTIVE JUROR:  I don't think so.  I

24  just thought I should mention it.

25          THE COURT:  No, I appreciate you

mentioning it.  The last thing you raised your hand

to is the issue when I asked is there any other

reason you might not be able serve.  What were you

thinking of?

PROSPECTIVE JUROR:  I feel silly

mentioning this.  I'm jumping ahead, but I am

pursuing a new job opportunity.  I am in the process

of interviewing with this company and I have my

second interview tomorrow.  I'm just concerned about

any implications that may happen if I do get

selected, missing days starting this new job.  So --

THE COURT:  So you've got a job

interview tomorrow.  If you get selected you may

have to start before the end of this month?

PROSPECTIVE JUROR:  Yeah, I probably

would.

THE COURT:  All right.  Thank you.

Any follow up, Ms. Freismuth?

MS. FREISMUTH:  No, Your Honor.  Thank

you.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  No, Your Honor.

THE COURT:  All right.  Thank you so

```
1   much, ma'am.

2               (Prospective juror exited the

3   courtroom.)

4               MR. BROWN:  Your Honor, maybe I should

5   have spoken up.  I'm just thinking, because of the

6   difficulty in getting jurors, maybe the best

7   solution with her would be, since we're not starting

8   tomorrow --

9               THE COURT:  Maybe let her go to her

10  interview and if she has something let her out that

11  way?  It may be a thought.  It's a good point.  I'm

12  not sure.  Yeah.

13              MR. BROWN:  But, I'm sorry, because I

14  should have asked her.

15              THE COURT:  That's fine.

16              MR. BROWN:  I should have asked her that

17  question.

18              THE COURT:  That's fine.

19              (Prospective juror entered the

20  courtroom.)

21              THE COURT:  Good morning, sir.

22              PROSPECTIVE JUROR:  Good morning.

23              THE COURT:  You are Juror No. 24,

24  correct?

25              PROSPECTIVE JUROR:  Yes.
```

```
1              THE COURT:  Hang on one second.  I'm
2     getting my trusty notes.  I think you raised your
3     hand to the question about someone being accused of
4     a crime involving allegations of possessing a
5     firearm or ammunition.  Is there something you were
6     thinking of in particular?
7              PROSPECTIVE JUROR:  Yeah, my son about
8     eight years ago was involved in a situation of that
9     matter.  So I was in there.  You know, I went to
10    every court case he was in.  So it was a robbery
11    where he ended up having a gun.  So that was
12    something that -- you know, close to me and family
13    being involved with on behalf of my son being
14    present.
15             THE COURT:  As a result of that
16    experience, do you believe you would be able to hear
17    the evidence in this case fairly and apply the law
18    as I would instruct you?
19             PROSPECTIVE JUROR:  Yeah.
20             THE COURT:  All right.  I think that was
21    the only question I had for you.
22             Ms. Freismuth, did you have any follow
23    up?
24             MS. FREISMUTH:  Would you mind telling
25    us the result of your son's case?  Was he convicted?
```

1          PROSPECTIVE JUROR:  Yes, he was

2    convicted.  So he ended up -- at the time of the

3    case he was 17, so it was a youth matter.  So it

4    ended up being a sealed.  When the trial ended up

5    happening he was 18, so they tried prosecuting him

6    as an adult, but it didn't happen as such.

7          MS. FREISMUTH:  Given that description,

8    it sounds like it was a state court case; is that

9    correct?

10          PROSPECTIVE JUROR:  Yes.

11          MS. FREISMUTH:  Thank you.

12          THE COURT:  Okay.  Any further

13    questions, Mr. Einhorn?

14          MR. EINHORN:  No, Your Honor.

15          THE COURT:  Mr. Brown?

16          MR. BROWN:  Yes, Your Honor.

17          THE COURT:  Go ahead, sir.

18          MR. BROWN:  Sir, obviously that was a

19    difficult experience for you, but the real question

20    is, however you felt about that case, if you were

21    selected for this particular jury panel there is

22    going to come a time where you would have --

23    obviously have to deliberate.  Do you feel that

24    whatever experience you had on this other occasion,

25    which I'm sure was a difficult time for you, whether

1    or not you could put that aside and decide this case

2    solely on the merits, that is, what you heard in

3    this courtroom or didn't hear in this courtroom

4    along with, for example, the Judge's instructions?

5    Do you feel you could do that or do you feel you

6    might have some difficulty?

7              PROSPECTIVE JUROR:  I feel like I could

8    do that because I don't believe either of the two

9    people who here listed here, present here, are

10   related to me.  So I think that in my resolve, you

11   know, I raised my son to be not like that person,

12   and I have no way of knowing both people here

13   present.

14              So, you know, I think that where it is

15   more so -- it was difficult for me in that time, as

16   you are looking at your child in front of a judge,

17   you know, from a parent's perspective you never want

18   to see that case unless it's like, you know,

19   something that's not criminal matters and stuff.  So

20   with that case I think it became difficult for me to

21   see my son in that light.  But it's like you are

22   going to live and you are going to learn the error

23   of your ways in that regard.  So I think it was just

24   more so of just being hard on myself as a father of

25   seeing that picture and just drawing it out in that

1    regard.

2              MR. BROWN:  And do you have any issue

3    with the fact that in this case both defendants have

4    pled not guilty and, as the Court indicated, the

5    government's job is to see whether or not there is

6    sufficient evidence that would justify a guilty

7    verdict?  Do you have any problems with that concept

8    given the situation involving your son?

9              PROSPECTIVE JUROR:  No, I don't feel so.

10             MR. BROWN:  Thank you, sir.

11             THE COURT:  All right.  Thank you very

12   much, sir.

13             (Prospective juror exited the

14   courtroom.)

15             (Prospective juror entered the

16   courtroom.)

17             THE COURT:  Good morning, again.  How

18   are you?

19             PROSPECTIVE JUROR:  I have stage fright.

20             THE COURT:  Don't.

21             PROSPECTIVE JUROR:  I'm not used to

22   this.

23             THE COURT:  Don't have stage fright.

24   You are Juror No. 25?

25             PROSPECTIVE JUROR:  Yes.

1    THE COURT:  And you had raised your hand

2    to the question I had asked about if anyone close to

3    you or family member, so forth, has been the victim

4    or accused of a crime involving allegations of

5    possessing a firearm or ammunition.  What were you

6    thinking of?

7    PROSPECTIVE JUROR:  My husband's nephew

8    was convicted of a crime.  He was in a car with a

9    bunch of people, and they got pulled over.  His

10   friend had a gun, and there was marijuana in the

11   car, and his friend asked him to hold onto the gun,

12   and he was convicted of that crime and he did time

13   for it.

14   THE COURT:  Okay.  And based on that

15   experience, and obviously this is an entirely

16   different case, would you be able to hear the

17   evidence in this case fairly and impartially and

18   then only render a verdict based on the law and the

19   evidence as I will instruct you?

20   PROSPECTIVE JUROR:  I think probably,

21   yes.

22   THE COURT:  When you say "probably, yes"

23   what's your hesitation?

24   PROSPECTIVE JUROR:  I'm not sure.

25   THE COURT:  You are not sure?  Just like

I said --

PROSPECTIVE JUROR:  Well --

THE COURT:  Go ahead, talk.

PROSPECTIVE JUROR:  I don't know.  It was just -- like, it was really -- I formed an opinion about that because, like, I didn't feel that it was fair that -- you know, what happened, and it was just really heartbreaking.  It really was.

THE COURT:  Okay.  And the thing about it is everyone is going to have the experiences they have and people may have views and views based on experiences.

PROSPECTIVE JUROR:  Yeah.

THE COURT:  All we need to do is just make sure for purposes of Mr. Whyte and Ms. Sarcia that they have jurors who, despite whatever experience they have or views they have, they can look at the evidence, decide the case based on the evidence that's here, and then render a verdict based on the evidence that's there and the law. That is all we're asking.  Can you do that?

PROSPECTIVE JUROR:  Yeah, I guess.

THE COURT:  Okay.  All right.

And any follow up, Ms. Freismuth?

MS. FREISMUTH:  Just briefly, Your

1    Honor.

2              The conviction that you were describing

3    with -- your husband's nephew, I believe?

4              PROSPECTIVE JUROR:  Yes.

5              MS. FREISMUTH:  Do you know whether it

6    was following a trial or by plea?

7              PROSPECTIVE JUROR:  I'm sorry, what?

8              MS. FREISMUTH:  Do you know if the

9    nephew went to trial and was convicted or if he

10   settled outside court?

11             PROSPECTIVE JUROR:  I'm not sure.  This

12   happened a few years back, and my sister-in-law,

13   that was his -- that's her son, she was saying that

14   he went to jail because it was an automatic thing

15   about gun possession and drugs at the time.

16             MS. FREISMUTH:  Right.

17             PROSPECTIVE JUROR:  I'm not sure.  I

18   just know that he went to jail for it.

19             MS. FREISMUTH:  All right.  And we

20   noticed when you came into court that you waved to

21   someone on this side of the courtroom.  Do you

22   recall doing that?

23             PROSPECTIVE JUROR:  What?

24             MS. FREISMUTH:  We saw you wave, like a

25   slight movement of your hand.  Do you recall doing

1    that?

2              PROSPECTIVE JUROR:  I don't understand

3    what you said.

4              THE COURT:  I think she is saying did

5    you wave at anyone in the courtroom at any time when

6    you came in?

7              PROSPECTIVE JUROR:  No.

8              MS. FREISMUTH:  All right.  Thank you.

9              THE COURT:  All right.  Mr. Einhorn, any

10   follow up?

11             MR. EINHORN:  No, Your Honor.  Thank

12   you.

13             THE COURT:  Mr. Brown, any follow up?

14             MR. BROWN:  No, Your Honor.

15             THE COURT:  Thank you so much, ma'am.

16             PROSPECTIVE JUROR:  Okay.

17             (Prospective juror exited the

18   courtroom.)

19             THE COURT:  All right.  Let me deal with

20   this issue first, which is how many names did you

21   have -- I guess I need to know how many names did

22   you have, Ms. Freismuth, that we didn't read to the

23   jury?

24             MS. FREISMUTH:  Too many, your Honor.

25             THE COURT:  Too many?

1          MS. FREISMUTH:  I believe the crucial

2     part is there are three cooperators who are expected

3     to testify.

4          THE COURT:  Understood.  That I

5     understand.

6          MS. FREISMUTH:  There is one Michael

7     Zella and the three cooperators.

8          THE COURT:  Mike Zella, I already

9     mentioned Mike Zella.

10         MS. FREISMUTH:  Yes.  The three

11    cooperators, plus one, two, three -- four additional

12    names who may come up just in the calls, Your Honor.

13    They're not expected to be substantively discussed

14    that much.

15         THE COURT:  Like I said, I have asked

16    them questions.  Let's deal with the law enforcement

17    issue, because I asked them questions in terms of

18    law enforcement.

19         Let me ask this.  Mr. Einhorn, Mr.

20    Brown, I can bring the whole panel back and run the

21    law enforcement names.  Does anyone feel a need to

22    do that?  Mr. Einhorn?

23         MR. EINHORN:  No, Your Honor.  I don't

24    think so.

25         THE COURT:  Mr. Brown?

1          MR. BROWN:  No, Your Honor.

2          THE COURT:  Okay.  All right.  So why

3    don't we do that.  I think the cooperators are the

4    cooperators.  I think that's what it is.

5          Let's talk about -- let's now go to

6    these issues of cause.  This is where I'm at.  There

7    is one I'm on the fence on, but the others, this is

8    where I'm at in terms of who I am willing to strike

9    for cause.  Juror No. 3, Juror No. 9, Juror No. 13,

10   Juror No. 14, Juror No. 16, Juror No. 19, and Juror

11   No. 21.

12         22 I may leave in there, and 25 I don't

13   know, I'm not sure what to do with her, honestly.

14   25 is the one -- 22 and 25 I'm on the fence on.

15         But other than 22 and 25, are there any

16   other numbers people wanted to argue about that they

17   should be struck for cause?

18         Let's start for the government.  Ms.

19   Freismuth?

20         MS. FREISMUTH:  Just 22 and 25.

21         THE COURT:  Okay, that's fine.

22         Mr. Einhorn?

23         MR. EINHORN:  No. 7, Your Honor.

24         THE COURT:  Okay.  Yeah, like I said, I

25   think she's answered the question fair enough that

I'm going to keep 7.  Anyone else, Mr. Einhorn?

MR. EINHORN:  No, Your Honor, just 7.
Thank you.

THE COURT:  Mr. Brown?

MR. BROWN:  Can I have a second, Your
Honor?

THE COURT:  Yeah, take your time.

MR. BROWN:  The only other possible one
that the Court might want to consider is No. 18,
only because No. 18 - I have no strong feelings.  I
just want to bring it to the Court's attention that
she has an 18-month-old child.

THE COURT:  I mean, she didn't ask -- I
understood that, but she didn't answer any
questions.  You know, she didn't raise her hand to
any supplemental jury questions.  If you want me to
bring 18 up and follow up, that's fine.

MR. BROWN:  No, I'm just bringing it to
the Court's attention.

THE COURT:  I understand.  Unless
someone raises that for me I'm not going to presume
it's an issue.

MR. BROWN:  Her ability to focus on the
case.

THE COURT:  I think the reality is

1   people have children and they're able to --

2   honestly, sometimes it's a relief.

3          MR. BROWN:  I guess sometimes it's an

4   escape, Your Honor.  Let the old man do it, Your

5   Honor.

6          THE COURT:  Ms. Freismuth, anything you

7   had?

8          MS. FREISMUTH:  No, just the two I

9   mentioned.

10         THE COURT:  22 and 25.  25 I will take

11  out.  22 I'm on the fence.  Here's where we are

12  based on what my count is.  You all should correct

13  me if I'm wrong.  If I -- with 25 out, depending on

14  what I do with 22, we're either at 16 or 17 usable

15  jurors out of 25, which actually is not a bad

16  number.  I mean 22 is such a close call.  The

17  problem I have -- the problem with 22 is this.  She

18  never may know when -- the problem I have with 22 --

19  let me do this.  I will strike 22.  I guess the

20  question is, do I leave 22 in there?

21         Mr. Brown, Mr. Einhorn, do you have any

22  strong views about 22?  This is the one who has the

23  job interview tomorrow.

24         MR. BROWN:  Yes.  And, again, it might

25  be worth just bringing her back because, truthfully,

the only question really is will she know tomorrow.

THE COURT:  If she gets the job.

MR. BROWN:  Then she could call the clerk and let her know one way or the other.  If she says no, I won't know for a week or so, then you should, with all due respect, excuse her.

THE COURT:  Let's do this.  I think that's a good point.

Ms. Perez, let's bring 22 back.

(Prospective juror entered the courtroom.)

THE COURT:  Hi.  You are Juror No. 22, correct?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Sorry, I brought you back. I just wanted to be clear.  So you have a job interview tomorrow?

PROSPECTIVE JUROR:  Yeah, my second one for this company.

THE COURT:  Second one.  And do you have any idea when you might know when you get the job or not?

PROSPECTIVE JUROR:  I'm not positive.  I would have to put in my two weeks at my current job, but I'm not positive.  I don't know.

1          THE COURT:  I've got it.  So your

2    current job, which you still have to give two weeks

3    notice for, that job, even if they said yes to that

4    job, you couldn't start until you finished the two

5    weeks notice for your current job.

6          PROSPECTIVE JUROR:  I am just concerned

7    about missing so many days if I would start with the

8    company, but --

9          THE COURT:  But you don't know whether

10   or not they are going to let you know tomorrow or at

11   some other point?

12         PROSPECTIVE JUROR:  Yeah, I do not know

13   that.

14         THE COURT:  All right.  Anyone else have

15   any follow up?

16         MS. FREISMUTH:  Just for clarification,

17   generally what kind of job is it you are applying

18   for?

19         PROSPECTIVE JUROR:  Account manager

20   marketing position at a nonprofit in New Canaan.

21   It's called Grace Farms.

22         THE COURT:  Mr. Einhorn?

23         MR. EINHORN:  No, Your Honor.  Thank

24   you.

25         THE COURT:  Mr. Brown?

1          MR. BROWN:  No, Your Honor.  Thank you.

2          THE COURT:  All right.  Thank you so

3     much.

4          (Prospective juror exited the

5     courtroom.)

6          THE COURT:  I'm not entirely sure if I'm

7     any smarter other than the fact that it's one of

8     those things it could be something, it could be

9     nothing.  I think I'm going to roll the dice and

10    leave her in for now.  I will leave her in for now.

11    The reality is, if she knows something by Friday we

12    will know something and deal with it then.

13          Anyone else want to put any concerns

14    they have on that on the record?

15          MS. FREISMUTH:  No.  Just in terms of

16    math, it looks like three weeks.  It looks like an

17    additional week starting her job.

18          THE COURT:  Here's the thing.  The

19    challenge I have is when she actually -- I mean her

20    case -- actually, you know, the notion of excusing

21    her weakened given the two-week thing because, in

22    essence, she would have to know this Friday, she'd

23    have to give notice this Friday, and then have two

24    weeks.  She'd have to give the other job -- she

25    wouldn't be starting the other job until the

following week, which would bring us into the third

week.

So, in essence, we're going to be in the

same place. We might be in the same place. In

essence, she would have to know by this Friday

whether or not she needed to give notice to her

other job for me to be concerned about it, given the

two-week notice issue.

So I guess at this point I'm not going

to raise it. At this point I'm not sure there is a

sufficient basis to say there is cause to excuse

her. There might be cause and, you know, you all

can consider that in doing peremptories. You may

make that decision, but I'm not going to strike her

for cause right now.

MR. EINHORN: Can Your Honor read your

list again?

THE COURT: Yep, I will read the list of

who I have left. So with 22, it should be 17. And

Ms. Perez always corrects me when I'm wrong, which

is why I want her here. Juror No. 1, Juror No. 2,

Juror No. 4, Juror No. 5, Juror No. 6, Juror No. 7,

Juror No. 8, Juror No. 10, Juror No. 11, Juror No.

12, Juror No. 15, Juror No. 17, Juror No. 18, Juror

No. 20, Juror No. 22, Juror No. 23, and Juror No.

24.  That should be 17 names.

MR. EINHORN:  17.

THE COURT:  All right.  Okay.

Ms. Perez, the next group is going to be ready -- when is the next group ready?

THE CLERK:  I'm not sure.  There are some people just continuing to walk in.

THE COURT:  Okay.  So I think what we can tell is we're not going to start before Friday. So you can tell Ms. Conte we can let this group go and we'll let them know.  I think we don't have to tell them now.  We'll let them know if they have to appear Friday morning, but those are the numbers.

THE CLERK:  Your Honor, just to be clear, Ms. Conte should not be providing those people that have been stricken now?

THE COURT:  She can if she wants to do it now.  That's up to her.  I mean I don't have a strong -- the reality is I don't have a strong view. It's just one of those things where some people, you let them know now you get all kinds of stuff. Sometimes it's better to get them out of here and then just -- and basically say she'll contact them and let them know if they have to appear, or however she does it.

1          MS. FREISMUTH:  I was going to say, last

2     time there was confusion where someone thought they

3     weren't supposed to come back.

4          THE COURT:  Yeah, I recall that trial.

5     I don't think there actually was confusion.  My

6     understanding is a clear message was left.  I think

7     that that prospective juror wanted to interpret that

8     as confusion.

9          Yes, Mr. Einhorn?

10          MR. EINHORN:  I'm just thinking it

11     through.  The only thing about this process that

12     bothers me a little is that -- so we are going to be

13     selecting packets of potential jurors, but we'll

14     never see them all together in a group for the

15     final --

16          THE COURT:  No.  As I said at the

17     pretrial conference, if you all wish -- what's going

18     to happen is, what we're doing is now eliminating

19     potential jurors for cause.  All of the jurors who

20     have not been eliminated for cause will come back

21     Friday morning, and Friday morning the intention is

22     for you all to exercise your peremptory challenges.

23          MR. EINHORN:  So we will see them again?

24          THE COURT:  You will see them again.  In

25     essence, if you wish to bring them in once we have

them, all the jurors that have not been stricken for

cause, you wish me to bring them in so you see them

again, although you've had the chance to see them

individually and you know their numbers and so

forth, but if you want to see them again, we can do

that.  So, in essence, we're not doing peremptories

now.  We're waiting until all of the jurors are

eliminated for cause, we have a group in which you

exercise your peremptory challenges from, which will

be the clearer numbers, and we can go from there.

MR. EINHORN:  That's fine.  Thank you,

Your Honor.

THE COURT:  All right. Let me do this.

Why don't we just take a quick break to at least a

quarter to, find out where we are.  It may be we may

break.  I don't know, maybe it's wise to actually

break.  Why don't we break until quarter to and then

we'll know more.

MS. FREISMUTH:  Your Honor, just one

question.  Is it all right if I confer with perhaps

your law clerk about the oversights on our part in

the supplemental voir dire?

THE COURT:  Yeah, you want to add names?

Go ahead and add names.

All right.  Sorry, I have -- I just got

1    word from Ms. Perez that she talked to Ms. Conte,

2    the jury person.  I think what makes sense -- they

3    won't be ready for an hour.  So let's break now and

4    why don't we take the lunch period and we'll be back

5    at 12:30.  You all can figure out lunch and stuff

6    during this time period and we'll come back at 12:30

7    and be ready to go with the next group.

8                   All right.  Thank you all.

9                   (Recess.)

10                  THE COURT:  Please be seated.  All

11   right.  Do counsel have anything to raise?

12                  Ms. Freismuth, are you ready to go?

13                  MS. FREISMUTH:  Yes, Your Honor.  Thank

14   you.

15                  THE COURT:  Mr. Einhorn, are you ready

16   to go?

17                  MR. EINHORN:  Yes, Your Honor.

18                  THE COURT:  Mr. Brown?

19                  MR. BROWN:  Yes, Your Honor.

20                  THE COURT:  I do have one question.  In

21   looking over the joint trial memorandum and

22   comparing that with the second superseding

23   indictment, and I think as certainly all counsel

24   know, I don't in any jury charge refer to the

25   indictment as the indictment, but it appeared to us

that Count Four wasn't referenced.  Am I missing

something?

            MS. FREISMUTH:  Yes, Your Honor.  We are

intending not to pursue that charge.  It's one of

the controlled buys.

            THE COURT:  Okay.

            MS. FREISMUTH:  We're going to pursue

Count One, Two, and Three.

            THE COURT:  But Count Four is not being

pursued.  And defense counsel knows that?

            MR. EINHORN:  Yes.

            THE COURT:  Okay.

            MS. FREISMUTH:  The other thing that's

not raised in the joint trial memorandum, it's come

to our awareness we need to have a separate

proceeding on forfeiture if we don't obtain a

waiver.

            THE COURT:  Yes.  What you may do, we

might have supplemental jury charges related to the

forfeiture issue.

            MR. EINHORN:  Well --

            MS. FREISMUTH:  We'll discuss it.

            MR. EINHORN:  My experience is we'll

talk about bifurcating the forfeiture depending on

the verdict and see if we can deal with it

1 separately rather than give it to the jury.

2        THE COURT: Yes. To be clear, what I

3 meant by that was that the -- because, as I

4 indicated at the final pretrial conference, it's my

5 intention to give you all a draft of where I am both

6 with the verdict form and the post-trial jury

7 instructions before we start, and my hope is to get

8 you something tomorrow, I just wanted to clear that

9 up.

10        But I think procedurally what I was

11 thinking about is we would -- given the forfeiture

12 issues, we would have the verdict form not make

13 reference to the forfeiture, and if the jury comes

14 back with verdicts that would suggest we need to

15 reach forfeiture, the jury then has to go back with

16 a new forfeiture verdict form to address those

17 issues.

18        MR. EINHORN: My sense would be if that

19 happens we'll talk about doing the forfeiture

20 directly to the Court or by in some other manner.

21        THE COURT: Okay. That's fine. That's

22 fine. I see what you are saying. You are raising

23 something different.

24        MR. EINHORN: Yes.

25        THE COURT: Okay. Anyone else have

1  anything further?  Mr. Brown?

2         MR. BROWN:  No, Your Honor.

3         THE COURT:  Okay.

4         MR. BROWN:  Your Honor, if I may?

5         THE COURT:  You may.

6         MR. BROWN:  I'm not sure if we figured

7  out yet how many prospective jurors we actually

8  need.  We did a pretty good job this morning, I

9  thought.

10         THE COURT:  Yes.

11         MR. BROWN:  But does the Court have any

12  sense when we hit our target, which hopefully will

13  be by the end of the day tomorrow, any idea as

14  to when --

15         THE COURT:  You raise a good point.  So

16  we have --

17         MR. BROWN:  I always like to think so,

18  Your Honor.

19         THE COURT:  Say what?

20         MR. BROWN:  I always like to think so.

21         THE COURT:  You raise a good point

22  because I'm internally -- some of these things I'm

23  externally saying, but I'm certainly internally

24  thinking.  So we have 17 jurors now.  Now, because

25  I'm intending to have four alternate jurors at a

minimum, we need to have 36 jurors for you all to

exercise your peremptory challenges.

Now, you all have asked for -- Mr.

Einhorn and Mr. Brown, you have asked for your -- to

be able to have an additional peremptory challenge,

which I'm still taking under consideration, which if

that was the case, that would then bring us up to

needing at least 38 jurors in order for people to

exercise their peremptory challenge. All of that is

to say I am keeping all of that in mind in seeing

how things flow.

So we are at 17 now. We're going to

bring another group in now. We'll see how that

group -- you know, yes. The short answer is yes. I

was hoping to have a larger group coming in this

afternoon than we had this morning so maybe could we

get closer to that number so maybe we wouldn't even

have to have an afternoon session tomorrow. I think

we're going to take it step by step. I'm not at

this point -- given the numbers we got from the

morning, I'm not necessarily worried about us not

hitting the target, but we will be smarter --

hopefully we will be smarter in two hours. I will

be smarter in two hours than I am now. Whether it's

smart enough to help everyone is a different story,

but that's my intention.

All right.  Thank you, Mr. Brown.  But does that answer your question, Mr. Brown?

MR. BROWN:  It does because now we're in the ballpark.  It's either 38 or 40.

THE COURT:  Yeah, I think that's right.

Okay.  Ms. Perez.

(Prospective jurors entered the courtroom.)

THE COURT:  Thank you, Ms. Conte.

All right.  Everyone please be seated.

Ladies and gentlemen of the jury, welcome again to the United States District Court for the District of Connecticut.  We're here to pick a trial in a criminal case.  I do want to note at the outset, I do thank you all for being here.  Trial by jury is a hallmark of the American system of government.  I think is quite extraordinary that we ask folks, you all, to come from your lives and help decide, you know, incredibly important matters.

Along those lines, I do want to note in addition, I appreciate you all being here.  Obviously we are still in the midst of issues regarding COVID-19, and the Court has taken a number of precautions to make sure that you are safe while

you all are here.  As you can tell, everyone here is masked.  If you ended up serving as a juror, that would continue throughout the course of the trial. Jurors would not sit in the normal jury box.  We would be -- and there would be fewer of you.  You would be spread out in that -- where you are there in the gallery with one exception, that because you're going through the trial, we actually have seat cushions to make sure that you will be comfortable during the course of the trial while masked and distanced.

You know, no one in the courtroom here would get within 6 feet of you, and they would still be masked.  The lone exception to that would be someone who is testifying in the witness box, which would not be here but would be there in the jury box, and they still will be a distance from you, but rather than masked, so you would be able to see any facial expressions, they would have a face shield that would also be then providing a layer of protection regarding them.

And also, to let you know, we have conducted several trials in the last several months and the district works very closely with an infectious disease expert who helps us -- advises us

about how to deal with certain things. And, I mean,
we even actually have up here an electronic monitor
that monitors to make sure we're getting sufficient
airflow in here as well.

So we do both appreciate you being here,
but also are certainly concerned about public health
and safety as we try to pick a jury for this trial.

Now, what I want to -- now I will tell
you a little bit more about what the process is
going to be like now this afternoon, but first,
before we do that, I'm going to have my courtroom
deputy, Jazmin Perez, swear you all in. So I would
ask you all to please stand.

(Oath administered)

THE COURT: All right. Please be
seated. All right. So what's going to happen is
for today this jury selection process will happen in
two different phases. First, I think you all have
been provided a general voir dire questionnaire. So
each of you one by one in order of your juror number
will come up to the microphone there and provide
your answers to those 11 questions.

Once we've gone through all of you with
those, the general voir dire questionnaire and those
11 questions, there will be some additional

information I'm going to provide you about this case

specifically.  I'm going to give you names of

attorneys, parties, witnesses, and so forth, and

then work through a various number of other

questions that I will ask you all as a group.

Anyone who has a response to any question that I

raise, at that point you would just simply raise

your hand.  You don't have to talk, just raise your

hand, we'll take note of your juror number, and then

once we have gone through all of those questions,

we'll follow up with you all individually to the

extent necessary.

All right.  With that, we can begin our

process now with Juror No. 26.  Would you come up to

the microphone.

Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  All right.  So starting with

question No. 1, your juror number?

PROSPECTIVE JUROR:  26.

THE COURT:  So the second question is,

are you currently employed?

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  What do you do, sir?

PROSPECTIVE JUROR:  I am a utility

worker for a local water utility.

THE COURT:  All right.  And are you --
how long have you been in that position?

PROSPECTIVE JUROR:  Roughly 14 years.

THE COURT:  And are you currently
married?

PROSPECTIVE JUROR:  I am.

THE COURT:  Does your spouse currently
work?

PROSPECTIVE JUROR:  She does.

THE COURT:  What does she do?

PROSPECTIVE JUROR:  Accounting.

THE COURT:  All right.  And do you have
any children who are of employment age?

PROSPECTIVE JUROR:  I do not, no.

THE COURT:  What's your highest level of
education?

PROSPECTIVE JUROR:  High school.

THE COURT:  And have you or anyone close
to you worked as a lawyer, judge, court officer, or
attended law school?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Who is that?

PROSPECTIVE JUROR:  My grandfather.

THE COURT:  All right.  And have you or

anyone close to you ever been a plaintiff,

defendant, or a witness in a civil or criminal

lawsuit?

          PROSPECTIVE JUROR:  No, sir.

          THE COURT:  Have you ever served as a

juror before?

          PROSPECTIVE JUROR:  No, sir.

          THE COURT:  All right.  Do you know

anyone in the following -- hang on a second -- any

of the following agencies:  The Drug Enforcement

Agency, the Department of Homeland Security, the

FBI, Department of Justice's Organized Crime Drug

Enforcement Task Force, the Bureau of Alcohol,

Tobacco, Firearms & Explosives, the Connecticut

State Police, Waterford Police, New London Police,

Stonington Police, University of Connecticut Police,

or any other federal, state, or local law

enforcement?

          PROSPECTIVE JUROR:  An uncle was a local

officer.

          THE COURT:  Okay.  What department?

          PROSPECTIVE JUROR:  Shelton.

          THE COURT:  Shelton.  Okay.  And No. 10,

is there any legal reason why you couldn't serve as

a juror that you are aware of?

1          PROSPECTIVE JUROR:  No, sir.

2          THE COURT:  Do you have any language

3  issues that would preclude you from being able to

4  follow testimony?

5          PROSPECTIVE JUROR:  No, sir.

6          THE COURT:  All right.  Thank you very

7  much.

8          Juror No. 27.  And you can -- you are

9  welcome to read the questions off yourself if you

10  want, or I can ask you if you want.  Either way,

11  it's fine.

12          All right.  So, sir, you are Juror No.

13  27, correct?

14          PROSPECTIVE JUROR:  Yes, sir.

15          THE COURT:  Are you currently employed?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  What do you do, sir?

18          PROSPECTIVE JUROR:  I work for Charter

19  Communications.  I do technology policy work.

20          THE COURT:  And how long have you been

21  doing that?

22          PROSPECTIVE JUROR:  Well, I have been

23  with the company almost 40 years, sir.

24          THE COURT:  And are you currently

25  married?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Does your spouse currently

3     work?

4          PROSPECTIVE JUROR:  No, she doesn't.

5          THE COURT:  Had she worked previously in

6     the last few years?

7          PROSPECTIVE JUROR:  Well, no, she's a

8     homemaker.

9          THE COURT:  Do you have any children of

10    employment age?

11         PROSPECTIVE JUROR:  Three.

12         THE COURT:  What do they do?

13         PROSPECTIVE JUROR:  One is an

14    accountant, one is a salesman, and the other one

15    just started school again.  She's a student.

16         THE COURT:  Nice.  And what is your

17    highest level of education, sir?

18         PROSPECTIVE JUROR:  I have a master's

19    degree.

20         THE COURT:  And have you or anyone close

21    to you ever worked as a lawyer, judge, court

22    officer, or attended law school?

23         PROSPECTIVE JUROR:  My father was a

24    lawyer.

25         THE COURT:  You got away from it.  Good

1  for you.

2          PROSPECTIVE JUROR:  I did, yes.

3          THE COURT:  And have you or anyone close

4  to you ever been a plaintiff, defendant, or witness

5  in a civil or criminal lawsuit?

6          PROSPECTIVE JUROR:  No, sir.

7          THE COURT:  Have you ever served as a

8  juror in a civil or criminal case?

9          PROSPECTIVE JUROR:  I have not.

10          THE COURT:  Are you or any relative or

11  anyone close to you ever been employed by the DEA,

12  Department of Homeland Security, FBI, the Department

13  of Justice Organized Crime Drug Enforcement Task

14  Force, Alcohol, Tobacco, Firearms & Explosives,

15  Connecticut State Police, New London Police,

16  University of Connecticut Police, or any state or

17  local law enforcement agency?

18          PROSPECTIVE JUROR:  No, sir.

19          THE COURT:  Is there any legal reason

20  why you could not serve as a jury, sir?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Do you have any language

23  issues that would preclude you from following

24  testimony or otherwise serving as a juror?

25          PROSPECTIVE JUROR:  No, I don't.

THE COURT:  All right.  Thank you very much.

Juror 28.  Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  All right.  So you are 28.

PROSPECTIVE JUROR:  Yes.

THE COURT:  Are you currently employed, sir?

PROSPECTIVE JUROR:  Yes.

THE COURT:  What do you do?

PROSPECTIVE JUROR:  I'm a radiologic technologist.

THE COURT:  How long have you done that?

PROSPECTIVE JUROR:  About three years.

THE COURT:  And are you currently married?

PROSPECTIVE JUROR:  No.

THE COURT:  And do you have any children of employment age?

PROSPECTIVE JUROR:  No.

THE COURT:  What's your highest level of education?

PROSPECTIVE JUROR:  Bachelor's.

THE COURT:  And do you know anyone -- or you or anyone close to you ever worked as a lawyer

1    or judge or court officer or attended law school?

2                PROSPECTIVE JUROR:  No, sir.

3                THE COURT:  Have you ever been a

4    plaintiff, defendant, witness in a criminal or civil

5    lawsuit?

6                PROSPECTIVE JUROR:  No, sir.

7                THE COURT:  Have you ever served as a

8    juror?

9                PROSPECTIVE JUROR:  No.

10               THE COURT:  You or anyone close to you

11   ever been employed by the DEA, the Department of

12   Homeland security, FBI Organized Crime Drug

13   Enforcement Task Force, with the Justice Department,

14   the Bureau of Alcohol, Tobacco, Firearms, and

15   Explosives, the Connecticut State Police, Waterford

16   Police, New London Police, Stonington Police,

17   University of Connecticut, or any other federal,

18   state or local law enforcement agency?

19               PROSPECTIVE JUROR:  No, sir.

20               THE COURT:  Is there any legal reason

21   why you cannot serve as a juror?

22               PROSPECTIVE JUROR:  The only reason I

23   have is I am scheduled to be married on the 1st of

24   October.  Other than that, nothing.

25               THE COURT:  Great.  That's wonderful

news.  I don't know if it legally precludes you from being a juror, but I understand.

             And do you have any language issues that would make it hard for you to follow testimony or otherwise serve as a juror?

             PROSPECTIVE JUROR:  No, sir.

             THE COURT:  All right.  Thanks so much. That's the first week of October?

             PROSPECTIVE JUROR:  Yes.

             THE COURT:  All right.  Thank you.

             Juror 29.  Good afternoon, sir.

             PROSPECTIVE JUROR:  Good afternoon.

             THE COURT:  All right.  And are you currently employed, sir?

             PROSPECTIVE JUROR:  Yes.

             THE COURT:  What do you do?

             PROSPECTIVE JUROR:  I run the product development for a company called Forester Research.

             THE COURT:  All right.  And how long have you done that?

             PROSPECTIVE JUROR:  15 years.

             THE COURT:  And are you married?

             PROSPECTIVE JUROR:  Yes.

             THE COURT:  Does your spouse work?

             PROSPECTIVE JUROR:  No.

```
1              THE COURT:  Do you have any children of

2   employment age?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What do they do?

5              PROSPECTIVE JUROR:  One is a

6   veterinarian technician and the other is in fashion

7   merchandising.

8              THE COURT:  Okay.  And your highest

9   level of education, sir?

10             PROSPECTIVE JUROR:  Master's.

11             THE COURT:  And have you or anyone close

12  to you ever served as a lawyer, judge, court

13  officer, or attended law school?

14             PROSPECTIVE JUROR:  My uncle is an

15  attorney.

16             THE COURT:  And have you or anyone close

17  to you ever been a plaintiff, defendant, witness in

18  a civil or criminal lawsuit?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  What kind?

21             PROSPECTIVE JUROR:  My father was a

22  plaintiff in a civil lawsuit.  I was a witness in a

23  criminal lawsuit.

24             THE COURT:  Okay.  Have you ever sat as

25  a juror in a criminal or civil case?
```

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  What kind?

3           PROSPECTIVE JUROR:  I was -- it was a

4    civil case.  It was in the 1980s.

5           THE COURT:  All right.  Do you remember

6    if the jury reached a verdict?

7           PROSPECTIVE JUROR:  I was an alternate,

8    so I was excused before the verdict was reached.

9           THE COURT:  Okay.  And have you or

10   anyone close to you ever been employed by --

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  None of those agencies?

13          PROSPECTIVE JUROR:  No.  I will save you

14   the time.

15          THE COURT:  I was getting good at

16   reading them.

17          PROSPECTIVE JUROR:  There's a lot of

18   other people.

19          THE COURT:  I know.  Is there any legal

20   reason why you could not serve as a juror?

21          PROSPECTIVE JUROR:  There is not a legal

22   reason.  I do have a couple of hardships.

23          THE COURT:  We can deal -- we can deal

24   with that.  I will take note of that and we can deal

25   with it a little later.  And do you have any

1     language issues?

2            PROSPECTIVE JUROR:  No.

3            THE COURT:  All right.  Thank you.

4            Juror No. 30.  Good afternoon.

5            PROSPECTIVE JUROR:  Good afternoon.

6            THE COURT:  All right.  So you are juror

7     30.  So are you currently employed?

8            PROSPECTIVE JUROR:  Yes, I am.

9            THE COURT:  What do you do?

10           PROSPECTIVE JUROR:  I work in membership

11    for a marketing trade organization called the ANA.

12           THE COURT:  How long have you done that?

13           PROSPECTIVE JUROR:  I worked at the

14    company for eight years.

15           THE COURT:  And are you currently

16    married?

17           PROSPECTIVE JUROR:  I am not.

18           THE COURT:  Do you have any children of

19    employment age?

20           PROSPECTIVE JUROR:  Yes, I do.  Two of

21    my children are of employment age.

22           THE COURT:  What do they do?

23           PROSPECTIVE JUROR:  One is taking time

24    away from college and the other one is in college.

25           THE COURT:  All right.  And what is your

1    highest level of education.

2              PROSPECTIVE JUROR:  College degree.

3              THE COURT:  Have you or anyone close to

4    you been a lawyer, judge, court officer, or attended

5    law school?

6              PROSPECTIVE JUROR:  My mother worked in

7    the legal profession, but none described there.

8              THE COURT:  Okay.  And have you or

9    anyone close to you been a plaintiff, defendant, or

10   witness in civil or criminal lawsuit?

11             PROSPECTIVE JUROR:  I participated in a

12   divorce proceeding, if that counts.

13             THE COURT:  Sure.  And have you ever

14   served as a juror in a civil or criminal case?

15             PROSPECTIVE JUROR:  I have not.

16             THE COURT:  And any of those agencies I

17   have referenced before?

18             PROSPECTIVE JUROR:  No, sir.

19             THE COURT:  And any legal reason why you

20   could not serve as a juror?

21             PROSPECTIVE JUROR:  No legal reason.

22             THE COURT:  Okay.  Any language issues

23   that prevent you from following testimony or serving

24   as a juror?

25             PROSPECTIVE JUROR:  No, sir.

1          THE COURT:  All right.  Thank you very
2     much.
3          PROSPECTIVE JUROR:  You are welcome.
4          THE COURT:  Juror 31.
5          PROSPECTIVE JUROR:  Good afternoon.
6          THE COURT:  Good afternoon, sir.
7          PROSPECTIVE JUROR:  Juror 31.
8          THE COURT:  Yep.
9          PROSPECTIVE JUROR:  I'm employed in the
10    commodities trading industry.  I'm a supplier of
11    both natural gas and electricity to utilities in the
12    U.S. I am not married.  I do not have any children.
13    Highest level of education would be bachelor's.
14          I have a few close friends who are
15    lawyers themselves.  I've not been party to a civil
16    or criminal suit.  I have not sat on a jury before.
17    I don't know anyone from those agencies.  There's no
18    legal reason I couldn't serve as a juror, and no
19    language issues.
20          THE COURT:  All right.  Thank you so
21    much, sir.
22          Juror 32.
23          THE COURT:  Good afternoon.
24          PROSPECTIVE JUROR:  Good afternoon.
25    Juror No. 32.  Yes, I'm employed.  I work at

JPMorgan Securities.  I have been there 16 years.
I'm a municipal bond trader.  I am married.  My wife
is unemployed.  She's a homemaker.  No children of
employment age.  Highest level of education is
bachelor's degree.

Closest friend from college is a lawyer
in Boston.  Never been a plaintiff, defendant, or
witness in a civil or criminal lawsuit.  Have never
sat as a juror in a civil or criminal case before.
No relation to anybody in any of the mentioned
agencies.  And No. 9, no legal reason why I cannot
serve, and no language issues.

THE COURT:  Thank you.  Thank you very
much.

Juror 33.  Good afternoon.

PROSPECTIVE JUROR:  You could ask me the
questions.

THE COURT:  Okay.  I will ask you.  All
right.  Are you currently employed, sir?

PROSPECTIVE JUROR:  Yes.

THE COURT:  What do you do?

PROSPECTIVE JUROR:  Work for Acme
Supermarket, department manager.

THE COURT:  And how long have you been
there?

```
1              PROSPECTIVE JUROR:  32 years.

2              THE COURT:  Are you currently married?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What does your spouse do?

5              PROSPECTIVE JUROR:  She's a veterinary

6    technician.

7              THE COURT:  Do you have any children of

8    employment age?

9              PROSPECTIVE JUROR:  No.

10             THE COURT:  What's your highest level of

11   education?

12             PROSPECTIVE JUROR:  High school.

13             THE COURT:  And have you or anyone close

14   to you ever served as a lawyer, judge, court

15   officer, or attended law school?

16             PROSPECTIVE JUROR:  No.

17             THE COURT:  Have you or anyone close to

18   you ever been a plaintiff, defendant, or witness in

19   a civil or criminal lawsuit?

20             PROSPECTIVE JUROR:  I'm currently

21   involved in a motor vehicle lawsuit.  I don't know

22   if that --

23             THE COURT:  That's fine.

24             PROSPECTIVE JUROR:  Where I was injured.

25             THE COURT:  All right.  You were a
```

plaintiff or a defendant?

PROSPECTIVE JUROR:  Plaintiff.

THE COURT:  Have you -- have you ever sat as a juror in a criminal or civil case before?

PROSPECTIVE JUROR:  Yes, federal in New York.

THE COURT:  Was that criminal or civil? Do you remember?

PROSPECTIVE JUROR:  Criminal.

THE COURT:  Do you remember what was the outcome?

PROSPECTIVE JUROR:  Yeah, there was an outcome.

THE COURT:  Was it conviction or acquittal?

PROSPECTIVE JUROR:  Conviction.  Guilty.

THE COURT:  Do you remember what kind of case it was?

PROSPECTIVE JUROR:  It was a federal gun charge.

THE COURT:  Federal gun charge?

PROSPECTIVE JUROR:  About 20 years ago.

THE COURT:  All right.  Thank you.  Do you know anyone or related to anyone in any of those agencies I have been naming, the DEA, Department of

1  Homeland Security, FBI?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  No?  Okay.  And any legal

4  reason why you could not serve as a juror?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  And any language issues that

7  would make it hard for you to follow testimony in

8  court or otherwise serve as a juror?

9              THE DEFENDANT:  Nope.

10             THE COURT:  All right.  Thank you very

11 much.

12             Juror 34.

13             THE COURT:  Good afternoon.

14             PROSPECTIVE JUROR:  Good afternoon.

15             THE COURT:  All right.  And are you

16 currently employed?

17             PROSPECTIVE JUROR:  I am.

18             THE COURT:  Yes.  What do you do?

19             PROSPECTIVE JUROR:  I'm a religious ed

20 director.

21             THE COURT:  A what director?

22             PROSPECTIVE JUROR:  Religious ed

23 director.

24             THE COURT:  How long have you done that?

25             PROSPECTIVE JUROR:  10 years.

```
1              THE COURT:  Are you currently married?

2              PROSPECTIVE JUROR:  I am.

3              THE COURT:  Does your spouse currently

4    work?

5              PROSPECTIVE JUROR:  He's a lawyer.

6              THE COURT:  Sorry about that.

7              PROSPECTIVE JUROR:  Really I'm single.

8              THE COURT:  Fair enough.  Do you have

9    any children of employment age?

10             PROSPECTIVE JUROR:  I do, two.

11             THE COURT:  What do they do.

12             PROSPECTIVE JUROR:  One is a machinist

13   and one just started in a human resource position.

14             THE COURT:  And your highest level of

15   education?

16             PROSPECTIVE JUROR:  I have a bachelor's.

17             THE COURT:  And I guess your husband,

18   who attended law school, but other than your

19   husband, anyone else close to you?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  You or anyone close to you

22   ever been a plaintiff, defendant, or a witness in a

23   civil or criminal lawsuit?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Have you ever sat as a juror
```

1  before, civil or criminal?

2            PROSPECTIVE JUROR:  No.

3            THE COURT:  Do you have anyone close to

4  you who has been employed by any of those agencies I

5  have named, law enforcement agency?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  And is there any legal

8  reason why you could not serve as a juror?

9            PROSPECTIVE JUROR:  There is no legal

10  reason.

11            THE COURT:  All right.  Any language

12  issues that would make it hard for you to follow

13  testimony?

14            PROSPECTIVE JUROR:  No.

15            THE COURT:  Thank you.

16            Juror 35.  Good afternoon.

17            PROSPECTIVE JUROR:  Good afternoon,

18  Judge.

19            THE COURT:  Are you currently employed,

20  sir?

21            PROSPECTIVE JUROR:  Yes, I am.

22            THE COURT:  What do you do?

23            PROSPECTIVE JUROR:  I'm in sales.

24            THE COURT:  How long have you been in

25  that?

```
1                   PROSPECTIVE JUROR:  10 years.
2                   THE COURT:  And are you currently
3       married?
4                   PROSPECTIVE JUROR:  Yes.
5                   THE COURT:  Does your spouse currently
6       work?
7                   PROSPECTIVE JUROR:  No.
8                   THE COURT:  Did she work previously,
9       within the last few years?
10                  PROSPECTIVE JUROR:  No, she's on
11      disability.
12                  THE COURT:  Sorry about that.  Do you
13      have any children of employment age?
14                  PROSPECTIVE JUROR:  I have two.  My son
15      is employed at Costco, and my daughter, she's a
16      homemaker.
17                  THE COURT:  And your highest level of
18      education?
19                  PROSPECTIVE JUROR:  I have a bachelor's
20      degree in criminal justice.
21                  THE COURT:  And you or anyone close to
22      you ever been a lawyer, judge, court officer, or
23      attended law school?
24                  PROSPECTIVE JUROR:  Yeah, I have several
25      friends, good friends that are attorneys.
```

1          THE COURT:  And have you or anyone close

2   to you ever been a plaintiff, defendant, or witness

3   in a criminal or civil lawsuit?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Have you ever sat as a juror

6   before?

7          PROSPECTIVE JUROR:  No.

8          THE COURT:  You or anyone close to you

9   ever been employed by any of the following agencies:

10  DEA, Homeland Security, FBI, any law enforcement

11  agency?

12         PROSPECTIVE JUROR:  Yes, my uncle was

13  with the Connecticut State Police.

14         THE COURT:  Is he still with them, or

15  used to be?

16         PROSPECTIVE JUROR:  No, he's deceased.

17         THE COURT:  Okay.  Sorry about that.

18  And any legal reason why you could not serve as a

19  juror, sir?

20         THE DEFENDANT:  No, Judge.

21         THE COURT:  Any language issues that

22  would preclude you from following testimony or

23  otherwise serving?

24         PROSPECTIVE JUROR:  No, Judge.

25         THE COURT:  All right.  Thank you, sir.

```
 1                    Juror, 36.  Good afternoon.

 2                    PROSPECTIVE JUROR:  How are you doing?

 3                    THE COURT:  Good.  Are you currently

 4    employed, sir.

 5                    PROSPECTIVE JUROR:  Yes.

 6                    THE COURT:  What do you do?

 7                    PROSPECTIVE JUROR:  I work in a bakery.

 8                    THE COURT:  I'm sorry, you work in what?

 9                    PROSPECTIVE JUROR:  A bakery.

10                    THE COURT:  Bakery.  Oh, good.  How long

11    have you worked there?

12                    PROSPECTIVE JUROR:  15 years.

13                    THE COURT:  16 years.  And are you

14    married currently?

15                    PROSPECTIVE JUROR:  Yes.

16                    THE COURT:  Does your spouse work?

17                    PROSPECTIVE JUROR:  Yes.

18                    THE COURT:  What does she do or he do?

19                    PROSPECTIVE JUROR:  Hygienist.

20                    THE COURT:  And do you have any children

21    of employment age?

22                    PROSPECTIVE JUROR:  No.

23                    THE COURT:  And what's your highest

24    level of education?

25                    PROSPECTIVE JUROR:  High school.
```

1          THE COURT:  And have you or anyone close

2    to you ever worked as a lawyer, judge, court

3    officer, or attended law school?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  You or anyone close to you

6    been a plaintiff, defendant, or witness in a civil

7    or criminal lawsuit?

8          PROSPECTIVE JUROR:  No, sir.

9          THE COURT:  Have you ever served as a

10   juror in a civil or criminal case?

11         PROSPECTIVE JUROR:  No, sir.

12         THE COURT:  You or anyone close to you

13   ever been employed by any of these law enforcement

14   agencies or any law enforcement agency to your

15   knowledge?

16         PROSPECTIVE JUROR:  No, sir.

17         THE COURT:  And is there any legal

18   reason you could not serve as a juror?

19         PROSPECTIVE JUROR:  Not legal, but my

20   wife, she's due this month.  She's pregnant.

21         THE COURT:  Congratulations.

22         PROSPECTIVE JUROR:  Thank you.

23         THE COURT:  All right.  And any language

24   issues that make it hard for you to follow testimony

25   or otherwise serve as a juror?

1          PROSPECTIVE JUROR:  I guess not, no.

2          THE COURT:  Okay.  All right.  Thank

3    you, sir.

4          Juror 37.  Good afternoon.

5          PROSPECTIVE JUROR:  Good afternoon.  I'm

6    37.  I'm currently employed.  I manage projects for

7    Regeneron Pharmaceuticals.  I'm married.  My spouse

8    is a homemaker.  I have one children -- one child,

9    but she's not of employment age.  The highest level

10   of education is college.

11         My uncle is a lawyer.  No one -- No. 7,

12   no one has been a plaintiff or defendant in a case

13   that I know of.  I have never sat in as a juror.  I

14   know no one in the mentioned agencies in question 9.

15   There's no legal reason why I couldn't serve, but I

16   would like a sidebar concerning my job.

17         THE COURT:  Sure.  We can talk about

18   that later.  Thank you.

19         PROSPECTIVE JUROR:  And I have no

20   language issues that would prevent me from serving.

21         THE COURT:  All right.  Thank you very

22   much.

23         Juror No. 38.

24         PROSPECTIVE JUROR:  Do the questions?

25         THE COURT:  Yeah, go ahead.

                    PROSPECTIVE JUROR:  Yeah, a product
developer, financial data.  I have been with the
company 14 years.  I am married.  My wife's current
job is a marketing analyst.  I do not have any
children.  I have a bachelor's degree.

                    And no, no one close to me has been a
lawyer, judge, or court officer.  Yes, someone close
to me has been a plaintiff in a civil suit relating
to a traffic collision.  I have never served as a
juror before.  I have no relative or anyone close to
me that's in DEA, DHS, FBI, OCDETF, ATF.  There is
no legal reason why I can't serve on a jury and I
have no language issues.

                    THE COURT:  All right.  Thank you so
much.

                    No. 39.

                    PROSPECTIVE JUROR:  Good afternoon.

                    THE COURT:  Good afternoon.

                    PROSPECTIVE JUROR:  I'm Juror No. 39.  I
am currently employed.  I work for a firm called
Moffatt & Nichol.  I'm a civil engineer, and I've
been there for 23 years.  I am married.  My wife is
a homemaker, doesn't work.  I have two children.
They are not of employment age.  My highest level of
education is a master's.

1          My sister is an attorney.  I haven't

2     been or know anyone that has been a plaintiff,

3     defendant, or a witness in a civil, criminal suit.

4     I have not been a juror.  I do not know anyone in

5     any of these agency.  I do not have any legal

6     reasons why I couldn't be able to serve, and I do

7     not have any language issues.

8          THE COURT:  Thank you so much.

9          Juror No. 40.

10         PROSPECTIVE JUROR:  I'm No. 40.  I am

11    currently employed.  You will have to help me

12    through some of these, but I work for Stephen

13    Gamble.  I have been with him for three years.  I'm

14    an architectural millwright working as a woodworker

15    doing restorative and conservation work.  I am

16    married.  My wife is a special needs aide for the

17    public school system.  I have one son who works with

18    one of the TPCs in Arizona.  I have a high school

19    education.

20         I don't know anyone who has been a

21    lawyer, judge, or court officer.  No. 7 gets a

22    little harder to answer.  I have been involved with

23    several different cases, both criminal and civil.

24         THE COURT:  Okay.  We can follow up

25    later.  Thank you.

PROSPECTIVE JUROR:  I have -- I got sat in the jury room one time, but I don't think we were officially the jury.  They just came into a room like this and picked 16 of us.  We sat for about three minutes and it pleaded out.  So there was no trial.

THE COURT:  We'll put that as a no.

PROSPECTIVE JUROR:  I have a cousin who was a Texas highway patrol officer and went on to -- he and his bother both worked for the CIA.  There is no reason I couldn't serve, and I only speak English.

THE COURT:  All right.  Thank you very much.

Juror 41.  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.  For 1, I am currently employed, self-employed for 15 years.  I am married.  My wife's current job is a dentist.  I have two children who -- one of them is in college and the other one is starting a new job next week as an engineer.  Some college, never graduated.  Ex-brother-in-law is a lawyer.

Let's see.  My father was in a rear-end collision about 10 years ago and passed away.  The other driver was under the influence.  I never sat

as a juror.  Do not know anyone in these agencies.

No legal reasons, and no problem with the language.

THE COURT:  Okay great.  Just quick question, sir.  I'm sorry, what was your job?

PROSPECTIVE JUROR:  Self-employed.

THE COURT:  Self-employed.  And what do you do?

PROSPECTIVE JUROR:  I manage a business.  I own a dental office with my wife and along with a real estate development.

THE COURT:  Got it.  Thank you.

All right.  Juror 42.  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.  So Juror No. 42.  Yes, I am employed.  My employer is Credit Suisse.  I have been there for two years.  I work as a quantitative financial structurer.  Yes, I'm married.  My spouse is a nurse.  I have two children, one in college, one in high school.  Neither are working.  My highest level of education is a master's degree.

I have several friends that are lawyers and one that's a judge, including my brother-in-law.  The answer to No. 7 is no.  Yes, I was a juror once.  Would you like me to expand upon that?

THE COURT:  In a civil or criminal case?

1          PROSPECTIVE JUROR:  It was criminal.

2          THE COURT:  Okay.  And did they reach a

3    verdict?

4          PROSPECTIVE JUROR:  I don't know because

5    I was an alternate.  So I never actually found out

6    the verdict.

7          THE COURT:  That's fine.  So you were an

8    alternate juror in a criminal case?

9          PROSPECTIVE JUROR:  Correct.  Right.

10   That was 20 years ago.  For No. 9, one of my closest

11   friends is in the FBI.  He's an agent.  And also I

12   have a cousin who is the chief of police for

13   Ridgefield, Connecticut.  No. 10, I don't have any

14   legal reasons, but I have a potential medical

15   reason.

16         THE COURT:  Sure.  We can deal with that

17   later.

18         PROSPECTIVE JUROR:  And No. 11, I have

19   no language barriers.

20         THE COURT:  All right.  Thank you very

21   much.

22         Juror 43.

23         PROSPECTIVE JUROR:  Hi.  I'm 43.  Juror

24   No. 43, not 43 years old.  I am currently employed.

25   I work for Berkshire Hathaway.  My husband is

employed.  He works in sales.  I work -- I've worked

at Berkshire Hathaway for five years.  I have three

children that are in school.  I have a bachelor's

degree in education.

I have three very close friends that are

lawyers.  I have not had anyone close to me as a

plaintiff or defendant.  I have never sat.  We have

very close friends that are part of other government

agencies not listed here, Secretary of Defense and

the State Department.  There is no legal reason why

I cannot serve, and I do not have any language

issues.

THE COURT:  Thank you very much.

Good afternoon.

PROSPECTIVE JUROR:  Hi, Judge.  I'm

Juror No. 44.  I'm currently employed by Omnicom

Group.  I'm an assistant treasurer there.  My wife

is currently a homemaker.  I have one child of

employment age.  She works as a creative for a

marketing firm.  My highest level of education is

master's degree.

I have some friends and I work quite a

bit with attorneys, corporate attorneys.  I have

some friends that are, I guess, criminal attorneys.

I have never been involved in a court case.  I have

1 2 3 4 5 6 7 8 9 10

never been a juror before.  I have been a member of
the United States Coast Guard.  My highest level is
commander.  I also worked for the Department of
Corrections for one year in New Jersey as an
administrator within the organization and worked
with ex-offenders there as well as people within the
institution.  There is no legal reason why I can't
serve, and I have no problems with the language.

          THE COURT:  All right.  Thank you, sir.

          Number 45.

          PROSPECTIVE JUROR:  Good afternoon.

          THE COURT:  Good afternoon.

          PROSPECTIVE JUROR:  45.  I'm currently
employed by the Norwalk public schools in IT.  I
have worked there for 15 years.  I'm not married.  I
don't have any children.  My highest level of
education is a bachelor's degree.

          No one employed in the justice system.
Never been a plaintiff, defendant or witness.  Never
served on a jury, and have no relatives or close
anybody in any of the agencies listed.  There is
legal reason why I couldn't serve, and I have no
language issues.

          THE COURT:  All right.  Thank you very
much, sir.

```
1                    And Juror 46.

2                    PROSPECTIVE JUROR:  Hi, I'm 46.

3                    THE COURT:  How are you?

4                    PROSPECTIVE JUROR:  How are you doing?

5                    THE COURT:  Good.  Are you currently

6     employed, ma'am?

7                    PROSPECTIVE JUROR:  No, retired.

8                    THE COURT:  Okay.  And what did you do

9     before you retired?

10                   PROSPECTIVE JUROR:  Cashier.

11                   THE COURT:  All right.  And are you

12    currently married?

13                   PROSPECTIVE JUROR:  Yes, I am.

14                   THE COURT:  Does your spouse currently

15    work?

16                   PROSPECTIVE JUROR:  He's retired.

17                   THE COURT:  What did he do before he

18    retired?

19                   PROSPECTIVE JUROR:  Office manager.

20                   THE COURT:  All right.  And any children

21    who are of employment age?

22                   PROSPECTIVE JUROR:  No.

23                   THE COURT:  And what is your highest

24    level of education?

25                   PROSPECTIVE JUROR:  High school.
```

1    THE COURT:  And have you or anyone close

2    to you ever worked as a lawyer, judge, court

3    officer, or attended law school?

4    PROSPECTIVE JUROR:  No.

5    THE COURT:  And have you or anyone close

6    to you ever been a plaintiff, defendant, or a

7    witness in a civil or criminal lawsuit?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  Have you ever served as a

10   juror in a civil or criminal case?

11   PROSPECTIVE JUROR:  Just called for jury

12   duty.

13   THE COURT:  Just called, but never

14   actually had to sit on a case?

15   PROSPECTIVE JUROR:  No.

16   THE COURT:  You or anyone close you to

17   ever been employed by the DEA, Homeland Security --

18   PROSPECTIVE JUROR:  No.

19   THE COURT:  No one in law enforcement at

20   all?

21   PROSPECTIVE JUROR:  Uh-uh.

22   THE COURT:  And is there any legal

23   reason why you could not serve as a juror?

24   PROSPECTIVE JUROR:  Not legal, but

25   medical.

1          THE COURT:  Okay.  We can take that up a

2     little later.  And do you have any language issues

3     that make it hard for you to follow testimony or

4     otherwise serve as a juror?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  All right.  Thank you so

7     much.  I think we have gone through everyone.  So we

8     can turn to the next set of questions.  Hang on one

9     second.

10          All right.  So the next series of

11    questions I'm going to ask you -- I'm going to

12    provide you some background information on the case.

13    And, remember, when I get to actually questions, I

14    just need you to raise your hand whether or not any

15    particular question you have a response to, and

16    we'll follow up with you on that.

17          So in this case the United States of

18    America, the government, has charged Mr. Anthony

19    Whyte with counts related to possession with intent

20    to distribute cocaine, heroin, and fentanyl, as well

21    as firearms, and a conspiracy to launder money

22    charge.  The government has also charged Ms. Amy

23    Sarcia with one count of conspiracy to distribute

24    and to possess with intent to distribute cocaine

25    and/or heroin, and has also charged her with one

count of conspiracy to launder money.

I'm going to introduce you by name generally to the attorneys, witnesses, and attorneys. So if any of the names I mention you know, just raise your hand.

Does anyone know here the prosecutors in this case? That's assistant U.S. attorneys Natasha Freismuth and Angel Krull? Anyone know either of them? All right. Thank you.

And sitting at the table with them is Jeremy Zelinski, who is a sergeant in the New London Police Department. Does anyone know or know anyone who knows Sergeant Zelinski? All right. Thank you, sir.

All right. Does anyone know -- does anyone here know or know anyone who knows anyone working at the United States Attorney's office for the District of Connecticut, whether the person is located in Hartford, New Haven, or Bridgeport? All right.

The acting United States attorney for the District of Connecticut is Leonard C. Boyle. Does anyone know or know anyone who knows Acting U.S. Attorney Boyle? All right.

Does anyone know or know anyone who

knows the following individuals who work in the

Bridgeport branch of the United States Attorney's

Office:  Harold Chen; Lauren Clark; Elena Coronado;

Patrick Doherty; Rahul Kale, K-A-L-E; Jennifer

Laraia, L-A-R-A-I-A; or Karen Peck?  Any of those

names ring a bell with anyone?  All right.

One of the defendants in this case is

Mr. Anthony Whyte.

Mr. Whyte, would you please stand.

Does anyone know or is familiar with Mr.

Whyte?  Thank you, Mr. Whyte.

Mr. Whyte is represented by Jonathan

Einhorn.  Does anyone know Mr. Einhorn or anyone

associated with his law firm, the Jonathan J.

Einhorn Law Offices?

Thank you, Mr. Einhorn.

The other defendant in this case is Amy

Sarcia.  Does anyone know or is familiar with Ms.

Sarcia?  Thank you, ma'am.

And she is represented by Richard Brown.

Does anyone know Mr. Brown or any members of his law

firm, Brown, Panderis & Scott LLP?

Thank you, Mr. Brown.

Now other than what I have told you a

moment ago about this case, does anyone know

1  anything about this case or is familiar with this

2  case at all, whether from a news account or any

3  other source?  All right.

4           Does anyone know anyone else here in the

5  jury pool that you knew before you came in here

6  today?  Take a quick look around just to make sure.

7  All right.  Thank you.

8           I'm going to read off a list of

9  individuals who may testify as witnesses in this

10 case.  If you know or know anyone who knows any of

11 the following people, just raise your hand:

12 Royshawn Allgood; Leigh Bonkowski with the Waterford

13 Police Department; Peter Borysevich, and I will

14 spell that out, B-O-R-Y-S-E-V-I-C-H, and he's with

15 the DEA; Kerry Browning with Stonington; Steven

16 Bryant; David Carney with the FBI; Jimmy

17 Chamberland, who is with the Connecticut State

18 Police; Nathan Charron, also with the Connecticut

19 State Police; Earlene Dudley; Chris Getz, a UConn

20 officer; Keith Graham, Connecticut State Police;

21 Jackie Hernandez; Christopher High, that's H-I-G-H;

22 Stephanie Johnson.

23           You know a Stephanie Johnson?

24           PROSPECTIVE JUROR:  A couple of names

25 back.  It could just be --

1                THE COURT:  Christopher High?  Which

2     one?

3                MR. BROWN:  Jackie Hernandez.

4                THE COURT:  All right.  We can follow up

5     with that.  You are juror number?

6                PROSPECTIVE JUROR:  37.

7                THE COURT:  37.  Okay.  We'll follow up

8     with it.  Thank you.

9                Anyone else?  Any other names ring a

10    bell?  Matt Kowalczyk, that's K-O-W-A-L-C-Z-Y-K;

11    Justin Lawrie, New London Police Department; Doris

12    Lopez; Orlayn Marquez, O-R-L-A-Y-N, Marquez; David

13    Mieled, M-I-E-L-E-D, Manchester Police Department;

14    Jeffrey Poulin, P-O-U-L-I-N; William Pratt,

15    P-R-A-T-T; Jason Robinson, Connecticut State Police

16    trooper; Emilio Rodriguez; Jordan Salas, S-A-L-A-S;

17    Dilma Silva; Keith Warzecha, W-A-R-Z-E-C-H-A;

18    Matthew Weber; James Wines, W-I-N-E-S; Marco Zandri;

19    Mike Zella, Z-E-L-L-A; and Kathy Haggan,

20    H-A-G-G-A-N.  Any of those names ring a bell to

21    anyone other than the one that raised his hand?  All

22    right.  Thank you.

23                Does anyone know or know anyone who

24    knows the following individuals who also may have

25    been involved in this case in some way:  Holly

1   Butler; Kemar Cameron; Victor Encarnacion; Antoine

2   Forbes, F-O-R-B-E-S; Ramel General, G-E-N-E-R-A-L;

3   Geoffrey Gordon; Juan Hernandez; Ronald Ketter,

4   K-E-T-T-E-R; Byron McClellan, M-C-C-L-E-L-L-A-N;

5   Princetafari Vidal, V-I-D-A-L; and Robert Winston.

6           All right.  This case will involve

7   testimony from the DEA, the Department of Homeland

8   Security, the FBI, the Department of Justice's

9   Organized Crime Drug Enforcement Task Force, the

10  Bureau of Alcohol, Tobacco, Firearms & Explosives,

11  the Connecticut State Police, Waterford police, New

12  London police, Stonington police, and University of

13  Connecticut police.  Does anyone have any views

14  about these specific agencies or about law

15  enforcement generally, whether federal, state, or

16  local, that could affect your ability to be fair and

17  impartial in hearing and deciding this case?

18  Anyone?

19          Would any of you tend to give any

20  greater weight or credibility, no matter how slight,

21  to the testimony of a law enforcement officer or

22  other government witness merely because they are

23  employees of or are testifying on behalf of the

24  government?  Anyone?

25          Some of the witnesses you will hear from

are individuals who are cooperating with the
government with the hope and expectation of
receiving a more favorable sentence in federal
criminal cases against them.  Do any of you have any
feelings one way or the other about cooperating
witnesses that would prevent you from rendering a
fair and impartial verdict?

            The government also may use tape
recorded conversations of phone calls and meetings
as evidence.  Does anyone have any views about the
use of tape recorded conversations as evidence that
would affect your ability to be fair and impartial
in hearing and deciding the case?

            PROSPECTIVE JUROR:  Can I ask a
question?

            THE COURT:  If you have a response, you
can just raise your hand and we can follow up later.
The idea is not to sort of engage in long
discussions.  But was it that question or the
previous one?

            PROSPECTIVE JUROR:  The previous one.

            THE COURT:  Your juror number is what?

            PROSPECTIVE JUROR:  42.

            THE COURT:  Okay, we'll follow up.  The
purpose of this is just to get a sense, and if

people have a response to it in any way, just raise

your hand and we can follow up in greater detail

individually without everyone being there so we can

make sure we can discuss it more fully and openly.

All right. And so this question, are

you or any -- other than what you have already told

me -- if you have already told me something you

don't have to add anything else, but I just want to

make sure whether anyone here has any friends,

relatives, family connected with law enforcement or

any state, local or federal agency that you have not

mentioned already? What's your juror number?

PROSPECTIVE JUROR: 44.

THE COURT: Okay. All right. Has

anyone or any member of their family or someone

close to them ever had any experience with the

United States government in any way that could

affect their ability to be fair and impartial in

hearing and deciding in case?

A person charged with a crime -- I'm

sorry, you had -- so the previous question? I'm

sorry, you've got to raise your hand high. Your

juror number?

PROSPECTIVE JUROR: 29.

THE COURT: Okay. Yeah, just raise your

1    hand high so I can see it.

2              A person charged with a crime is

3    presumed to be innocent and the government is

4    required to prove its case beyond a reasonable

5    doubt.  In this case Mr. Whyte and Ms. Sarcia are

6    charged with a crime, so they are presumed to be

7    innocent and the government is required to prove its

8    case beyond a reasonable doubt.  Does anyone have

9    any views or any experiences that would affect their

10   ability to apply this legal standard fairly and

11   impartially to Mr. Whyte and Ms. Sarcia?  Juror

12   number?

13             PROSPECTIVE JUROR:  31.

14             THE COURT:  31.  All right.  Anyone

15   else?

16             Every individual who is charged with a

17   crime has a right to remain silent.  That means that

18   a person on trial, in this case Mr. Whyte and Ms.

19   Sarcia, do not have to testify on his or her behalf

20   or even present a defense, and if you sit as a juror

21   and they decided not to testify, you are not to draw

22   any inference of guilt because one or both of them

23   decide not to testify.  Does anyone have any views

24   that would affect their ability to follow this

25   instruction from the Court?  Your juror number?

1          PROSPECTIVE JUROR:  43.

2          THE COURT:  All right.  Anyone else?

3          This case involves allegations of

4    possession of cocaine and heroin and fentanyl.  Does

5    anyone have any views, and by that I mean any views,

6    regarding illegal narcotics that would affect their

7    ability to judge the evidence fairly and impartially

8    and render a verdict based solely on the evidence

9    and the law as I will instruct you?  23?  Hang on.

10   Juror number?

11         PROSPECTIVE JUROR:  31.

12         THE COURT:  What's your number?

13         PROSPECTIVE JUROR:  34.

14         THE COURT:  31, 34.

15         PROSPECTIVE JUROR:  32.

16         THE COURT:  Your juror number?

17         PROSPECTIVE JUROR:  38.

18         THE COURT:  Okay.

19         PROSPECTIVE JUROR:  41, Your Honor.

20         THE COURT:  41.  Anyone else?  Okay.

21         Have you or anyone -- family member or

22   anyone close to you ever been a victim of or accused

23   of a crime, any crime, involving allegations of

24   illegal drug distribution or promoting and

25   facilitating illegal drug distribution?  All right.

```
 1              Have you or a family member or anyone
 2    close to you had an issue with drug addiction such
 3    that it might affect your ability to hear and decide
 4    this case fairly and impartially?  Okay.  That's --
 5    hang on.  What's your juror number?
 6              PROSPECTIVE JUROR:  26.
 7              THE COURT:  26.  And you are?
 8              PROSPECTIVE JUROR:  29.
 9              THE COURT:  Okay.
10              PROSPECTIVE JUROR:  31.
11              PROSPECTIVE JUROR:  32.
12              THE COURT:  I'm sorry, you are 35?
13              PROSPECTIVE JUROR:  35.
14              THE COURT:  What are you?
15              PROSPECTIVE JUROR:  I'm 34.
16              THE COURT:  And back there?
17              PROSPECTIVE JUROR:  37.
18              THE COURT:  37.  All right.
19              You are 30 -- what number?
20              PROSPECTIVE JUROR:  39.
21              THE COURT:  And you are?
22              PROSPECTIVE JUROR:  38.
23              THE COURT:  Anyone else?  Okay.
24              This case also involves possession of
25    firearms in furtherance of a drug trafficking crime.
```

1    Have you, your family member or anyone close to you
2    ever been a victim of or accused of a crime, any
3    crime, involving allegations of possessing or
4    utilizing a firearm and/or ammunition?
5              Do you or anyone close you to have any
6    philosophical or other objections to federal
7    regulation of firearms or any government limitations
8    upon possession of firearms either personally, as a
9    result of an affiliation with a group or
10   organization, that might affect your ability to hear
11   and decide this case fairly and impartially?  You
12   are?
13             PROSPECTIVE JUROR:  37.
14             THE COURT:  You are?
15             PROSPECTIVE JUROR:  43.
16             THE COURT:  Anyone else?  Okay.  All
17   right.
18             Have you, anyone, either personally or
19   through a family member or someone close to them,
20   had any experience with or views on the possession
21   or use of firearms that might affect your ability to
22   hear and decide the case fairly and impartially?
23   All right.
24             This case also involves charges of money
25   laundering.  Have you, a family member, or anyone

close to you ever been a victim of or accused of a
crime involving allegations of money laundering or
tax fraud?

It is anticipated you will hear evidence
and testimony connected to 2 Wives pizza in New
London.  Does anyone have any -- know about or have
any connection with this business such that it could
affect your ability to be fair and impartial in
deciding this case?  All right.

Other than what has already been
discussed, does anyone have any views about the
criminal justice system in the United States that
might affect their ability to be fair and impartial
in deciding this case other than what you have
already told me or raised your hand to?  All right.

Does anyone have a problem with the
proposition that the government is required by law
to prove Mr. Whyte and Ms. Sarcia guilty beyond a
reasonable doubt and if the government fails to do
so you must find them not guilty?

Likewise, does anyone have a problem
with the proposition that if the government proves
its case beyond a reasonable doubt you must find the
defendants guilty?

Does anyone have any moral,

philosophical, ethical, religious, or any other
beliefs which might affect their ability to hear and
decide the case fairly and impartially, and by that
I mean render a verdict based on the evidence and
applying the relevant legal standard to the evidence
which is proof beyond a reasonable doubt?

Is there anyone who if they disagreed
with the law or the jury instructions as the Court
provides them, meaning me, or thought the law should
be interpreted differently would not be able to be
fair and impartial in hearing and deciding this
case?

If selected as a juror does anyone have
any problems following my instructions that they are
not to discuss this case with anyone, read anything
about this case or any of the subject matter or
people involved in it, or engage in any social media
activities regarding the case, such as posting on
Facebook, Twitter, Instagram, Snapchat, TikTok or
any such media outlet until their service as a juror
has concluded?

All right. Aside from everything that's
already been asked and discussed, does anyone know
of any other reason why he or she could not serve
other than what you told me before?  Is there

anything new we have missed?  You are?

PROSPECTIVE JUROR:  44.

THE COURT:  You are?

PROSPECTIVE JUROR:  34.

THE COURT:  All right.  Anyone else?
You are?

PROSPECTIVE JUROR:  46.

THE COURT:  46.  Okay.  All right.  You
are?

PROSPECTIVE JUROR:  38.

THE COURT:  Anyone else?

PROSPECTIVE JUROR:  41, Your Honor.

THE COURT:  All right.

PROSPECTIVE JUROR:  37.

PROSPECTIVE JUROR:  42.

THE COURT:  Anyone else?  All right.
Thank you very much.

What I'm going to do now is, Ms. Perez,
my courtroom deputy is going to take you to another
jury room, another courtroom, and we'll bring people
back in.  Those we want to follow up with we'll
bring back one by one.

Thank you very much.

(Prospective jurors exited the
courtroom.)

1          THE COURT:  Everyone can be seated.

2          All right.  I'm trying to double check

3   my numbers, make sure I have it right.  This is who

4   I have based on questions -- either issues that came

5   up either in the general or the specific to bring

6   back.  28, 29, 31, 32, 34, 35, 36, 37, 38, 39, 41,

7   42, 43, 44, and 46.  Is there anyone I missed that

8   you thought I should bring back?  I will start with

9   the United States.

10          MS. FREISMUTH:  Your Honor, we would

11  also like to bring back No. 40.  He mentioned his

12  involvement in several cases, but didn't go into

13  specifics.

14          THE COURT:  Okay.

15          MS. FREISMUTH:  And I have 26 down as

16  raising her hand in response to question --

17          MR. EINHORN:  I do, too.

18          THE COURT:  I'm sorry.  26 what?

19          MS. FREISMUTH:  I had 26 down as raising

20  her hand in response to question 23.

21          MR. EINHORN:  I did, too.

22          THE COURT:  Okay.

23          MS. FREISMUTH:  Nothing further.  Thank

24  you.

25          Mr. Einhorn, anything further other than

26 and 40?

MR. EINHORN:  No, Your Honor.  Thank you.

THE COURT:  Mr. Brown?

MR. BROWN:  No, Your Honor.

THE COURT:  All right.  Jazz, do those as well as 26 and 40.  Bring them back.

MS. KRULL:  Your Honor, may I raise one issue?

THE COURT:  Hang on, Ms. Perez.

MS. KRULL:  With respect to mask wearing among the venire.

THE COURT:  I'm sorry, what?

MS. KRULL:  With respect to mask wearing, I've notice that some of them have their mask down below their noses which might make other people on the jury uncomfortable.

THE COURT:  When they come in, we'll deal with it.  If they don't end up on the jury, I'm not going to spend a lot of time on it.

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon.  You are Juror No. 26, correct?

PROSPECTIVE JUROR:  That's correct.

THE COURT: I believe you had raised your hand to the question which asked about whether you or a family member or someone close to you had an issue with drug addiction that might affect your ability to hear and decide the case impartially. Was there something you were thinking of, sir?

PROSPECTIVE JUROR: Yeah, my sister is a recovering addict, heroin addict. I recently lost a cousin due to a fentanyl overdose. That was about it.

THE COURT: Okay. Obviously the case here will involve specific evidence regarding -- well, I guess, would any of those things affect your ability to hear the evidence here fairly and impartially and follow the law as I will instruct you?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: You think it would?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Because of the recency and closeness of the particular individuals involved?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: All right. Any follow up? From the United States?

MR. EINHORN: No, Your Honor.

1          MR. BROWN:  No, Your Honor.

2          MS. FREISMUTH:  No, Your Honor.

3          THE COURT:  All right.  Thank you, sir.

4          (Prospective juror exited the

5    courtroom.)

6          (Prospective juror entered the

7    courtroom.)

8          THE COURT:  Good afternoon.  You are

9    Juror No. 28, correct?

10         PROSPECTIVE JUROR:  Correct.

11         THE COURT:  Yes?

12         PROSPECTIVE JUROR:  Yes, Juror 28.

13         THE COURT:  I don't think you raised

14   your hand to the supplemental questions, but you

15   said there was some kind of hardship.  Is that what

16   you mentioned?

17         PROSPECTIVE JUROR:  No, the only thing

18   -- it's a nonlegal matter, personal matter.  I'm

19   scheduled to be married.

20         THE COURT:  This is the marriage, yes.

21   I knew there was some reason.  And you are scheduled

22   to get married in October.  What's the date?

23         PROSPECTIVE JUROR:  October 1st.

24         THE COURT:  October 1st.  Okay.  All

25   right.  So there is a lot of planning and stuff

```
1    leading up to it?
2              PROSPECTIVE JUROR:  Well, I need to get
3    a license prior to that week, so --
4              THE COURT:  Okay.  All right.  Anyone
5    else have any follow-up questions?
6              MS. FREISMUTH:  Just briefly, Your
7    Honor.
8              THE COURT:  Yes.
9              MS. FREISMUTH:  Is the wedding local or
10   are you travelling for it?
11             PROSPECTIVE JUROR:  It's local.
12             MS. FREISMUTH:  Thank you.
13             THE COURT:  Mr. Einhorn?
14             MR. EINHORN:  Can we do it here?
15             PROSPECTIVE JUROR:  Sure.
16             THE COURT:  Mr. Brown?
17             MR. BROWN:  No, Your Honor.
18             THE COURT:  All right.  Thank you, sir.
19             PROSPECTIVE JUROR:  Thank you.
20             (Prospective juror exited the
21   courtroom.)
22             (Prospective juror entered the
23   courtroom.)
24             THE COURT:  Good afternoon.  You are
25   Juror No. 29; is that correct?
```

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  I think you had mentioned in

3  the general voir dire questions that you may have

4  some hardship.  What was it you were referring to,

5  sir?

6          PROSPECTIVE JUROR:  Actually, I have

7  two.  One I'm a little embarrassed about because I

8  wasn't paying close enough attention to the trial,

9  but I am Jewish and Yom Kipper is next week on the

10  16th.

11          THE COURT:  There is nothing to be

12  embarrassed about one's faith.

13          PROSPECTIVE JUROR:  I'm embarrassed

14  because I didn't list that when I got the e-juror.

15          THE COURT:  Yeah, I can let you know

16  that we actually are going to take that day off from

17  evidence.

18          PROSPECTIVE JUROR:  Okay.  All right.

19          THE COURT:  Yes.

20          PROSPECTIVE JUROR:  My other hardship is

21  my wife has M.S. and she's disabled and I'm her

22  primary caregiver.

23          THE COURT:  So you are generally home

24  there?

25          PROSPECTIVE JUROR:  Yeah, generally I am

home.  I work from home.  I have a flexible work
schedule to accommodate appointments.  With M.S. she
doesn't know how she's going to feel until she gets
up in the morning.  I also have to administer
medication to her.

THE COURT:  So while you are here you
have someone dealing with her today presumably?

PROSPECTIVE JUROR:  Actually, I dropped
her off at her 94-year-old mother's, who we also
have to take care of.

THE COURT:  Understood.

Any follow up, Ms. Freismuth?

MS. FREISMUTH:  No, Your Honor.  Thank
you.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  No, Your Honor.

THE COURT:  Thank you so much, sir.  I
appreciate it.

PROSPECTIVE JUROR:  Thank you, everyone.

(Prospective juror exited the
courtroom.)

(Prospective juror entered the
courtroom.)

1          THE COURT:  Good afternoon.  You are

2    Juror 31?

3          PROSPECTIVE JUROR:  Yes, Judge.

4          THE COURT:  All right.  I think there

5    were a couple of questions you had raised your hand

6    to.  I just want to follow up with them.  One of

7    them is I guess the question about someone being

8    presumed innocent and the government required to

9    prove its case beyond a reasonable doubt.  I think

10   you had raised your hand to that question.  What

11   were you thinking of?  I think -- just make sure

12   your mask is covering your nose.  Go ahead.

13         PROSPECTIVE JUROR:  I think it probably

14   more pertains to the following two that I raised my

15   hand for.  I lost a best friend to a fentanyl

16   overdose five years ago, and I also serve to help

17   with a nonprofit group called Shadow Proof to put on

18   an event every year in his honor.  So I think that

19   probably goes to --

20         THE COURT:  So the times you raised your

21   hand --

22         PROSPECTIVE JUROR:  That was the

23   thought.

24         THE COURT:  That is the thing you were

25   thinking of.  Because this case involves allegations

of possession of drug use you think it might affect
your ability to be fair and impartial in hearing the
evidence in this case and applying the law as I
instruct it?

PROSPECTIVE JUROR:  Yes, Judge.

THE COURT:  Any follow up, Ms.
Freismuth?

MS. FREISMUTH:  No, Your Honor.  Thank
you.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  No, Your Honor.

THE COURT:  Thank you so much, sir.  I
appreciate it.

(Prospective juror exited the
courtroom.)

(Prospective juror entered the
courtroom.)

THE COURT:  Good afternoon.  How are
you, sir?

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  So you are Juror 32?

PROSPECTIVE JUROR:  32, yes.

THE COURT:  You had raised your hand to

the question regarding any views regarding illegal

narcotics and so forth.  What were you thinking of,

sir?

PROSPECTIVE JUROR:  Yeah, so my best

friend growing up committed suicide in February of

2012 under the influence of alcohol and drugs.

THE COURT:  And I think there was a

later question about drug addiction.  It was the

same incident you were thinking of?

PROSPECTIVE JUROR:  Yep.

THE COURT:  So in this case obviously

you will hear evidence related to the government's

case regarding -- a different case than your family

member involving allegations of distribution of

drugs.  You think that would affect your ability to

hear the evidence here fairly and impartially and

then apply the law as I would instruct you?

THE DEFENDANT:  I would do my very, very

best to be as impartial as I possibly could, but I

just wanted to make the Court aware of it.  It's

something near and dear to me.

THE COURT:  No, I understand.  And

basically that's what we ask people to do, to be

fair.  We don't -- obviously people are going to

have views and people are going to have experiences

```
1   and views because of the experiences.  We just ask,

2   because Mr. Whyte and Ms. Sarcia are entitled to a

3   fair trial, to make sure you can come in, when you

4   evaluate the evidence you are basing it on what you

5   see here in the courtroom and follow the law as I

6   instruct it.  You can do that?

7                   PROSPECTIVE JUROR:  Absolutely.  One

8   other thing.  I don't know if this is the proper

9   time.

10                  THE COURT:  This is the time.

11                  PROSPECTIVE JUROR:  Okay.  This is more

12  of a COVID protocol question.  So I had to bring my

13  son to the ER on Saturday night -- he is two years

14  old -- with trouble breathing.  He did have several

15  tests and it all came back negative, but I just

16  wanted to alert the Court to make sure people are

17  aware, because my wife has had two negative tests

18  and she's come back positive as well.  I didn't know

19  the right forum, but I just wanted to let you know.

20                  THE COURT:  You said she's positive?

21                  PROSPECTIVE JUROR:  She had in the past.

22                  THE COURT:  She's negative now.

23                  PROSPECTIVE JUROR:  So I do have a

24  negative test for my son, but --

25                  THE COURT:  Understood.  And I
```

appreciate you letting us know.

PROSPECTIVE JUROR:  Yeah, absolutely.

THE COURT:  Any follow up, Ms. Freismuth?

MS. FREISMUTH:  Just to make sure I understand the dates correctly, it was Saturday you said you brought your son --

PROSPECTIVE JUROR:  Saturday, yes. Saturday the 4th.

MS. FREISMUTH:  Nothing further, Your Honor.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  Just briefly, if I may. I'm sorry to hear about your best friend.  How long ago was that?

PROSPECTIVE JUROR:  February of 2012.

MR. EINHORN:  When?

PROSPECTIVE JUROR:  February 2012.

MR. EINHORN:  2012.

PROSPECTIVE JUROR:  Yep.

MR. EINHORN:  Sitting here in this courtroom -- and I want to say it's primarily a drug trial.  There will be a lot of evidence about drugs, about drug sales from agents and other witnesses. Will that upset you to go through that again?

1          PROSPECTIVE JUROR:  Yeah, as you can

2     imagine it's upsetting to me, the subject matter

3     just in general because it's personal to me, but

4     like I said, I'd do my very, very best to be

5     impartial and hear everything that's presented.

6          MR. EINHORN:  I guess the $64,000

7     question is to say you won't hold it against my

8     client or Ms. Sarcia because they're charged in

9     connection with drug offenses because of your

10    terrible experience?

11         PROSPECTIVE JUROR:  No.

12         MR. EINHORN:  Okay.  Thank you, sir.

13         THE COURT:  Mr. Brown, any follow-up

14    questions?

15         MR. BROWN:  If I may, Your Honor.

16         Did I understand you that you had a

17    semester at law school?

18         PROSPECTIVE JUROR:  No, it was not me.

19    I had -- my close personal friend went -- is a

20    lawyer in Boston.

21         MR. BROWN:  I guess my note taking is

22    pretty poor.  Thank you.

23         PROSPECTIVE JUROR:  No problem.

24         THE COURT:  You are better off not going

25    to law school, trust me.

1          PROSPECTIVE JUROR:  I don't think I

2     could have gotten in.

3          THE COURT:  Thank you so much, sir.  I

4     appreciate it.

5          (Prospective juror exited the

6     courtroom.)

7          (Prospective juror entered the

8     courtroom.)

9          THE COURT:  Good afternoon, again.  How

10    are you?

11         PROSPECTIVE JUROR:  I'm good.  How are

12    you?

13         THE COURT:  Good.  And you are juror?

14         PROSPECTIVE JUROR:  34.

15         THE COURT:  All right.  I just wanted to

16    follow up.  There were a couple of questions you

17    raised your hand to.  One of them was about the

18    issue about views regarding illegal narcotics that

19    might affect your ability to hear and judge the

20    case.  What were you thinking of?

21         PROSPECTIVE JUROR:  My oldest son is a

22    recovering drug addict.  I'm sorry.

23         THE COURT:  No, take your time.

24         PROSPECTIVE JUROR:  It was a very tough

25    struggle.  It almost destroyed my family.

1          THE COURT:  All right.  So your concern

2     is that -- obviously you are worried that if you

3     heard a case involving drug issues that might affect

4     your ability to be fair and impartial in hearing the

5     case?

6          PROSPECTIVE JUROR:  I think because I

7     was so shocked at how easily he could get drugs and

8     how much he could get -- how available it was, how

9     quickly he was addicted.  I don't know if I could be

10    fair.

11         THE COURT:  Okay.  All right.  Thank you

12    so much.  I really appreciate you sharing your time.

13         Any follow up?

14         MS. FREISMUTH:  Your Honor, I believe

15    she also raised her hand for the overall question at

16    the end.

17         THE COURT:  I understand.  You can ask

18    her the question.

19         PROSPECTIVE JUROR:  Do you know what, I

20    work for a church.  I'm a staff of one.  I don't --

21    September is the worst time for me.  I'm just

22    starting the program up.

23         THE COURT:  All right.  Thank you.

24         PROSPECTIVE JUROR:  Thank you.

25         THE COURT:  I'm sorry.  Anything

further, Mr. Einhorn?  Mr. Brown?

            MR. EINHORN:  No, Your Honor.

            MR. BROWN:  No.

            THE COURT:  Thank you, ma'am.

            (Prospective juror exited the courtroom.)

            (Prospective juror entered the courtroom.)

            THE COURT:  Good afternoon, sir.

            PROSPECTIVE JUROR:  Good afternoon, Judge.

            THE COURT:  All right.  So you are Juror No. 35; is that correct?

            PROSPECTIVE JUROR:  Yes, 35.

            THE COURT:  All right.  I think you had raised your hand to the question I asked about whether someone -- you or someone close to you had had some issue with drug addiction that might affect your ability to hear the case.  Was there something you were thinking of, sir?

            PROSPECTIVE JUROR:  Yes, my son was arrested when he was 16 for marijuana.  So I just wanted to make it known to the Court.

            THE COURT:  All right.  That was -- how long ago was that?

1    PROSPECTIVE JUROR:  He's 35 today, but

2    he did community service and it was released from

3    his record.

4    THE COURT:  All right.  And would that

5    incident affect your ability to hear the evidence in

6    this case fairly and impartially in deciding -- and

7    follow the law as I would instruct you?

8    PROSPECTIVE JUROR:  It wouldn't affect

9    me.

10   THE COURT:  I think that was the only

11   question.

12   Any follow up, Ms. Freismuth?

13   MS. FREISMUTH:  No, Your Honor.  Thank

14   you.

15   THE COURT:  Mr. Einhorn?

16   MR. EINHORN:  Yes.  Thank you.  Just one

17   quick question.  You said you had your bachelor's

18   degree in criminal justice?

19   PROSPECTIVE JUROR:  Yes, sir.

20   MR. EINHORN:  Did you go into police

21   work or law?

22   PROSPECTIVE JUROR:  No, I never went

23   into it.  I went into another profession.  My dad

24   owned a chain of stores, so I went with him.  But I

25   have a lot of friends that are police officers and

1   attorneys.

2           MR. EINHORN:  Would the fact that you

3   have a lot of friends who are police officers and

4   attorneys affect your ability to sit impartially in

5   this case?

6           PROSPECTIVE JUROR:  I don't believe so,

7   sir.

8           MR. EINHORN:  You could put aside any

9   stories they tell you or any impact of them on your

10  life and give our clients fair and impartial

11  verdicts in hearing the evidence fairly and

12  impartially?

13          PROSPECTIVE JUROR:  Yes, I believe I

14  could.

15          MR. EINHORN:  Thank you.

16          THE COURT:  Mr. Brown, anything further?

17          MR. BROWN:  Nothing, Your Honor.

18          THE COURT:  Thank you so much, sir, I

19  appreciate it.

20          (Prospective juror exited the

21  courtroom.)

22          (Prospective juror entered the

23  courtroom.)

24          THE COURT:  All right.  Good afternoon

25  again, sir.  You are Juror No. 36, correct?

```
 1              PROSPECTIVE JUROR:  Yes, sir.

 2              THE COURT:  And you mentioned that your

 3    wife was pregnant.  You said she's due when, sir?

 4              PROSPECTIVE JUROR:  She's due the 14th,

 5    but if nothing happens she has a C-section scheduled

 6    for the 20 -- the 21st.  I'm sorry.

 7              THE COURT:  Of September?

 8              PROSPECTIVE JUROR:  September, yes, sir.

 9              THE COURT:  Okay.  All right.  Any

10    further questions?

11              MS. FREISMUTH:  No, Your Honor.

12              PROSPECTIVE JUROR:  No questions.

13              THE COURT:  Not from you.  I'm sorry.

14    That's okay.

15              PROSPECTIVE JUROR:  Sorry.

16              THE COURT:  You could have further

17    questions.  I'm asking the lawyers.

18              Mr. Brown?  Mr. Einhorn?

19              MR. BROWN:  I have no questions.

20              THE COURT:  Thank you very much, sir.  I

21    wish you well.

22              (Prospective juror exited the

23    courtroom.)

24              (Prospective juror entered the

25    courtroom.)
```

1          THE COURT:  Good afternoon, sir.  You

2   are Juror No. 37; is that correct?

3          PROSPECTIVE JUROR:  Correct.

4          THE COURT:  All right.  One of the

5   things you mentioned was there was some issue with

6   respect to your job.  What were you thinking of,

7   sir?

8          PROSPECTIVE JUROR:  I'm at the Court's

9   mercy.  I'm on a project, a large project that I

10  just can't see picking up after a number of weeks

11  absent.  You know, there is no legal or special -- I

12  don't want any special treatment, but just asking

13  for any courtesy you can give.

14         THE COURT:  All right.  And as I recall

15  you are manager of a project.  What kind of project,

16  if I may?

17         PROSPECTIVE JUROR:  It's a large IT

18  project for Regeneron Pharmaceuticals.  And if it

19  matters, they make COVID treatment.

20         THE COURT:  Okay.

21         PROSPECTIVE JUROR:  Any card I'm dealt,

22  yes.

23         THE COURT:  All right.  And then there

24  were a couple of other things I just wanted to

25  follow up with you.  We mentioned the name Jackie

1   Hernandez.

2            PROSPECTIVE JUROR:  I went to high

3   school with somebody of that name.

4            THE COURT:  Okay.  But have you any

5   contact with this person since high school?

6            PROSPECTIVE JUROR:  Early college, no.

7            THE COURT:  Let me ask the question

8   differently.  When is the last time you had any

9   contact or knowledge what this person is doing?

10           PROSPECTIVE JUROR:  10 years.

11           THE COURT:  So do you have any idea what

12  that person is doing now?

13           PROSPECTIVE JUROR:  No, just that she

14  lived -- her family lives close.

15           THE COURT:  Where does the family live?

16  Do you know?

17           PROSPECTIVE JUROR:  In Somers, the one

18  I'm referring to, but I imagine --

19           THE COURT:  It could be a different one.

20  In Somers?

21           PROSPECTIVE JUROR:  In Somers, New York.

22           THE COURT:  It was in New York, not in

23  Connecticut.

24           PROSPECTIVE JUROR:  Correct, right over

25  the line.

1            THE COURT:  Then hang on one second.

2   There were a couple of other questions.  I think you

3   had answered yes to the question about whether you

4   or someone close to you might have an issue with

5   drug addiction that might affect your ability --

6            PROSPECTIVE JUROR:  I just had a close

7   friend who struggled with that for some time.

8            THE COURT:  If you ended up serving as a

9   juror in the case, would you be able to listen to

10  the evidence here fairly and impartially and listen

11  to the law as I would instruct you even despite this

12  incident?

13            PROSPECTIVE JUROR:  I would think so.

14            THE COURT:  All right.  And then I think

15  there was also a question about sort of firearms.

16  Was there something you were thinking of when I

17  asked --

18            PROSPECTIVE JUROR:  Yeah, I forgot the

19  exact wording of the question, but it's -- I

20  disagree with some of the current regulation on

21  current -- you know, in the state of Connecticut

22  specifically.

23            THE COURT:  Sure.  And the reality is

24  people are entitled -- everyone is entitled to have

25  views on a range of things, but if you ended up

1    sitting on this case which involves -- there is

2    certainly a charge involving firearms under a

3    federal statute.  Would you be able to weigh the

4    evidence fairly and impartially and follow the law

5    as I would instruct you?

6              PROSPECTIVE JUROR:  I would think so,

7    yes.

8              THE COURT:  Hang on one second.  I think

9    that was the only questions I had.  Hold on.  Let me

10   see if the attorneys had anything.

11             Ms. Freismuth?

12             MS. FREISMUTH:  No.  Thank you.

13             THE COURT:  Mr. Einhorn?

14             MR. EINHORN:  No, Your Honor.

15             THE COURT:  Mr. Brown?

16             MR. BROWN:  Sir, you mentioned something

17   about sidebar.  Was the sidebar in reference to your

18   concern about your employment?

19             PROSPECTIVE JUROR:  Yes, it was.

20             MR. BROWN:  Okay, thank you.  So you've

21   explained to the Court your concerns; is that

22   correct?

23             PROSPECTIVE JUROR:  Just I have an -- I

24   can't see how this project will move forward, and

25   it's super important to the company, et cetera.

```
 1   That being said, you know, whatever can be afforded.
 2              MR. BROWN:  Thank you, sir.
 3              THE COURT:  Thank you so much.  I
 4   appreciate your time.
 5              (Prospective juror exited the
 6   courtroom.)
 7              (Prospective juror entered the
 8   courtroom.)
 9              THE COURT:  Hi.  How are you?
10              PROSPECTIVE JUROR:  Good.
11              THE COURT:  You are Juror No. 38; is
12   that right?
13              PROSPECTIVE JUROR:  Correct.
14              THE COURT:  Great.  I think you had
15   raised your hand to the question I asked about, you
16   know, views regarding illegal narcotics that might
17   affect your ability to hear the case.  Is there
18   anything you were thinking of, sir?
19              PROSPECTIVE JUROR:  Yes, specifically it
20   goes back -- sorry, I haven't been in front of this
21   many people.  To hear my voice, it's a little weird.
22   It goes back to that civil case that I mentioned.
23   My sister was in a very bad DUI accident when I was
24   about 13.  She was in the hospital for a number of
25   months.  It was very scary.  And one of the things
```

1    that came out of that was me personally making the

2    choice to abstain from drugs, alcohol, illegal

3    narcotics.  I have a very, very strong stance on it.

4    The term is actually Straight Edge.

5              I have been that way my entire life.

6    I'm approaching 40, so that's quite a long time.

7    It's to the point where I actually have the symbols

8    tattooed on my body.  So in terms of all of the

9    things that were in the video in terms of bias,

10   that's something that I feel extremely strongly

11   about.  So I just wanted to kind of raise that.

12             THE COURT:  No, I appreciate you letting

13   us know.  If you ended up having to serve as a juror

14   in this case, because obviously this case will

15   involve, you know, not anything that may have

16   happened in the past but specific alleged evidence

17   involving drug distribution and so forth, do you

18   believe you can be able to hear that evidence and

19   judge it fairly and impartially and follow the law

20   as I would instruct you?

21             PROSPECTIVE JUROR:  I would certainly

22   try if I was chosen, yes.

23             THE COURT:  Not in terms of trying.  I

24   mean, obviously Mr. Whyte and Ms. Sarcia are

25   certainly entitled to a fair trial.  I want to make

sure whatever view you have you are going to be able
to look at the evidence, weigh that fairly and apply
the law as I would instruct you.

PROSPECTIVE JUROR:  Yes.

THE COURT:  And then I think that you on
the final question of whether there is any other
reason you could not serve, was there anything you
were thinking of?

PROSPECTIVE JUROR:  Yes, I do suffer
generalized anxiety disorder a little bit.  So I
just wanted to bring that to your attention as well.

THE COURT:  Sure.  Just to make sure I
understand, if you were serving as a juror, I'm just
wondering how that would affect you.

PROSPECTIVE JUROR:  In terms of
nervousness for decision-making and the like, yes.

THE COURT:  Okay.  All right.  And I
just want to make sure I understand, because
obviously all of this stuff can provoke anxiety.
I'm just trying to figure out in the course of your
daily life, you engage with people, make decisions
on things, and this shouldn't be any different than
that.  In essence, you are going to be asked to
judge evidence based on the kind of thoughts and
considerations one does in their daily life.

Obviously there is significance on what it means,
but I will instruct you on the law on how you place
everything in context.  You believe you will be able
to follow that with your condition?

PROSPECTIVE JUROR:  Correct.  These are
things you asked, so --

THE COURT:  Okay.  I just want to make
sure.  And I appreciate you sharing, because that's
what we try to do here, to make sure we understand
all of the issues that could affect any particular
juror.

Ms. Freismuth, do you have any follow
up?

MS. FREISMUTH:  No, Your Honor.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  Yes, Your Honor.  Thank
you.

Good afternoon, sir.  You know,
obviously from what the judge has told you, that
this is primarily a drug case.

PROSPECTIVE JUROR:  Correct.

MR. EINHORN:  As you sit here you are
going to see evidence of drugs.  The government will
claim there were drug sales involving our clients.
You say that you have a very strong stance on drugs.

1          PROSPECTIVE JUROR:  Correct.

2          MR. EINHORN:  So much so that you had

3    symbols tattooed.  Could I ask you, without sounding

4    too personal, what symbols are tattooed on your

5    body?

6          PROSPECTIVE JUROR:  So the symbol of the

7    Straight Edge lifestyle is an X.  That's -- I got

8    that on my 21st birthday.

9          MR. EINHORN:  I'm sorry, give me a

10   little help on that.  I couldn't hear it.

11         PROSPECTIVE JUROR:  It's an X.  Like you

12   see the symbol SXE.  That's what it stands for.

13   It's kind of a counterculture thing.  It's been

14   around since the '80s.

15         MR. EINHORN:  Oh, really?  No, I didn't

16   realize that.  What does it mean?  If you could --

17         PROSPECTIVE JUROR:  This is going to be

18   like a lesson in music.  Yeah, it stands for the

19   term Straight Edge, which is an abstinence from

20   drugs and alcohol for your entire life.

21         MR. EINHORN:  I see.  Okay.  So the

22   Judge asked you if he gave you instructions, and he

23   will, as to what law you should follow in viewing

24   and evaluating the evidence, and I think you said

25   you would try.  Can you do that?  Can my client

expect an impartial result from you if you have such

strong feelings that you even had them tattooed on

your person?

PROSPECTIVE JUROR:  I mean, yeah, I

don't want to retract, but putting it that way, I

mean, yeah, it will be hard to remove that bias.

Yes.

MR. EINHORN:  You do have a bias then?

PROSPECTIVE JUROR:  Yes.

MR. EINHORN:  Okay.  All right.  Thank

you very much.

THE COURT:  Anything further, Mr. Brown?

MR. BROWN:  You indicated, sir, as I

understood it, that you have a hard time making

decisions; is that correct?

THE COURT:  I'm not sure that's quite

what he said, Mr. Brown.  I think what I understood

he said is he had anxiety that comes -- that could

be related to making decisions.

PROSPECTIVE JUROR:  Correct.

MR. BROWN:  I interpreted it perhaps

incorrectly, but are you capable of making decisions

in situations that are, you know, controversial or

there are two sides?  Is there difficulty, or are

you the type of person that would prefer deferring

to someone else making those decisions?

PROSPECTIVE JUROR:  Yes.  I can make strong decisions, yes.  There was -- again, during kind of the orientation, it was like if you have anything or any opinions to bring up.  Like, it's something to deal with on a daily basis, but I do manage 15 people within my company.  So I do have to make hard decisions pretty regularly.  And, you know, generalized anxiety comes and goes, but I just wanted to bring it to the attention of the Court.

MR. BROWN:  All right.  Thank you.

THE COURT:  Just to follow up, I just want to make sure I understand.  Like I said, in this case you will hear evidence and then you will have to sort of judge that evidence, and I will give you legal instructions on how to sort of deal with it and how you would make determinations about whether or not there is a violation of law or not. You could do that without referencing your views or dealing with your views?

PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  I need a "yes" or "no."

PROSPECTIVE JUROR:  Yes.  Sorry.

THE COURT:  Thank you very much, sir.

PROSPECTIVE JUROR:  Thank you.

1          (Prospective juror exited the

2     courtroom.)

3          (Prospective juror entered the

4     courtroom.)

5          THE COURT:  All right.  Good afternoon

6     again, sir.  How are you?

7          PROSPECTIVE JUROR:  Good afternoon.

8          THE COURT:  You are Juror 39; is that

9     correct?

10         PROSPECTIVE JUROR:  Correct.

11         THE COURT:  And I think -- if my notes

12    have it correctly, I think you raised your hand to

13    the question I asked about whether someone -- you or

14    someone close to you may have had an issue of drug

15    addiction that might affect your ability to hear the

16    case.  What were you thinking of, sir?

17         PROSPECTIVE JUROR:  My nephew, he just

18    recently graduated from college, and about six,

19    eight years ago he was in a different college and he

20    had an issue with alcohol and drug addiction.  He

21    was kicked out of college.  It was a pretty

22    traumatic experience at the time for the family, but

23    he still turned out okay.  He's okay now and

24    working.

25         THE COURT:  And with that experience, if

you had to serve as a juror in this case, would you
be able to hear the evidence in this case involving
allegations of drug use and fairly and impartially
apply the law as I instruct you?

PROSPECTIVE JUROR:  I believe so, yes.

THE COURT:  Any follow-up questions, Ms.
Freismuth?

MS. FREISMUTH:  No, Your Honor.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  If I may, Your Honor.

THE COURT:  Yeah, please.

MR. BROWN:  I am just trying to
understand this.  This was your nephew, was it?

PROSPECTIVE JUROR:  My nephew, yes.  My
wife's -- or my wife's side.

MR. BROWN:  Right.  And were you
involved in any way in assisting him in his
recovery?

PROSPECTIVE JUROR:  No, sir, not
directly.

MR. BROWN:  And do I understand
correctly that you are indicating that if you were
selected for this jury, that notwithstanding that

obviously difficult situation, that you could put
that incident aside and not allow it to influence
you in deciding whether or not the government has
met its burden of proof?

PROSPECTIVE JUROR:  I believe so, yes.

MR. BROWN:  And "I believe so," does
that mean yes or --

PROSPECTIVE JUROR:  Yes.

MR. BROWN:  Thank you, sir.

THE COURT:  Thank you so much, sir.

(Prospective juror exited the
courtroom.)

(Prospective juror entered the
courtroom.)

THE COURT:  Good afternoon, sir.  You
are Juror No. 40, correct, sir?

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  All right.  I think you
mentioned when we did the general questionnaire that
you had been involved with some cases, both civil
and criminal.  What were you referring to?  I just
wanted to understand.

PROSPECTIVE JUROR:  So there was a one
civil suit for an automobile accident that I was
involved in that made me -- paid me very well in the

end.  There was also an eviction suit from a former

landlord that actually ended up paying me to leave,

which worked out in my favor, too.  There was a

criminal complaint for discharge of a firearm in

Connecticut, and then an old, old one from my Texas

days for DWI.

            THE COURT:  All right.  And the --

            PROSPECTIVE JUROR:  I don't drink

anymore, for the record.

            THE COURT:  I'm sorry?

            PROSPECTIVE JUROR:  I don't drink.

            THE COURT:  The criminal complaint in

Connecticut regarding the firearm, what happened?

What was the result of that?

            PROSPECTIVE JUROR:  I had to pay a fine

for an unlawful discharge.  I don't remember exactly

all the other parts of that.  I mean, they tried --

they charged me with a couple of things, but that

was the only thing they -- actually, it was a

misdemeanor.  I took a misdemeanor complaint.

            THE COURT:  So it was a misdemeanor.

Was there a fine or something associated with it?

            PROSPECTIVE JUROR:  Yeah, it was a fine.

            THE COURT:  It was a fine.

            PROSPECTIVE JUROR:  Yes, sir.

1    THE COURT:  And the Texas DWI, how long

2  ago was that?

3    PROSPECTIVE JUROR:  25 years ago, 30.

4  30 years ago.  Longer than that.  It's been a long

5  time.  I'm trying to remember.  It's almost 40 years

6  ago now.  So it's been a long time.

7    THE COURT:  Sure.  And, you know, would

8  any of your experiences with the justice system one

9  way or another affect your ability to be fair and

10  impartial if you served as a juror in this case?

11    PROSPECTIVE JUROR:  No, sir, but it does

12  illustrate my biases pretty well.  So I know my

13  myself pretty well.

14    THE COURT:  You know yourself.  In

15  knowing yourself -- because we just need someone --

16  you know, you come to this case, even with whatever

17  happened in your life --

18    PROSPECTIVE JUROR:  It doesn't matter

19  what happened to me.  It matters what happens right

20  here.

21    THE COURT:  Yeah, so we just need to

22  know if you can fairly and impartially view this

23  evidence and apply the law as I instruct you.  Can

24  you do that, sir?

25    PROSPECTIVE JUROR:  Yes, sir.

 1          THE COURT:  Any follow up from the

 2  United States?

 3          MS. FREISMUTH:  Just briefly.  The

 4  criminal complaint you mentioned, how long ago was

 5  that, approximately?

 6          PROSPECTIVE JUROR:  Which one?  The one

 7  in Connecticut?

 8          MS. FREISMUTH:  The one in Connecticut

 9  for discharging a firearm.

10          PROSPECTIVE JUROR:  My son would have

11  been two.  He's 26.  So 24 years ago.

12          THE COURT:  Mr. Einhorn, anything?

13          MR. EINHORN:  No, Your Honor.

14          THE COURT:  Mr. Brown?

15          MR. BROWN:  No, Your Honor.

16          THE COURT:  Thank you so much, sir.  I

17  appreciate it.

18          PROSPECTIVE JUROR:  You bet.

19          (Prospective juror exited the

20  courtroom.)

21          (Prospective juror entered the

22  courtroom.)

23          THE COURT:  Good afternoon, sir.  How

24  are you?

25          PROSPECTIVE JUROR:  Hi.

                    THE COURT:  I just want to make sure I

understood.  You had I think answered yes to the

question about any views regarding issues regarding

illegal narcotics that might affect your ability to

be fair.  Was there something you were thinking of,

sir?

                    PROSPECTIVE JUROR:  As I mentioned

earlier about my father's passing, the gentleman

that had hit him from behind at highway speed while

my father was actually stuck behind traffic, he was

under the influence.  And that was very hard on us.

And he ended up going to jail, I believe.  So, yeah.

                    THE COURT:  Okay.  Thank you.  I

appreciate you sharing.  And would that incident

affect your ability -- because this case involves

issues about alleged distribution of illegal

narcotics, would that affect -- that incident affect

your ability to hear evidence here fairly and

impartially and follow the law as I would instruct

you?

                    PROSPECTIVE JUROR:  I'm not sure.  Yeah,

I do feel very emotional about it.  Just being in

the court just brought that memory back, and yeah, I

thought I would mention it.

                    THE COURT:  No, it's fine.  When you say

that brings that memory back, if you had to end up

sitting as a juror, I just wanted to make sure I

understand how that memory could impact how you

might weigh the evidence.  So you think it might

affect how you would view evidence in this case

which has nothing to do directly about your father's

case?

PROSPECTIVE JUROR:  You know,

truthfully, I don't know, sir.

THE COURT:  You don't know.  All right.

That's fair.  You also mentioned -- I guess you are

self-employed in terms of an office.  You are

managing a dental office, correct?

PROSPECTIVE JUROR:  Yes.  My wife and I

own a dental office together for the past 15 years,

and we're in the process of moving one of the

offices into a new building.  That closing was

supposed to happen last August, but due to

COVID-related issues it's supposed to happen this

month, and then it got -- all the things, that got

delayed, and there are things that I -- you know,

we're a staff of seven, and actually we're down to

five, looking for two more staff, and since I'm the

one that handles all of the business portions of the

practice, it just wouldn't happen without me being

at the office.

THE COURT: All right. And because I know you raised your hand to the question about was there any other reason you might not be able to serve, is that what you were thinking of?

PROSPECTIVE JUROR: Yes, yes, sir.

THE COURT: All right. Thank you very much.

Any follow-up questions? Any questions the United States has, Ms. Freismuth?

MS. FREISMUTH: No, Your Honor. Thank you.

THE COURT: Mr. Einhorn?

MR. EINHORN: No, Your Honor.

THE COURT: Mr. Brown?

MR. BROWN: No, Your Honor.

THE COURT: All right. Thank you so much, sir. I appreciate it.

(Prospective juror exited the courtroom)

(Prospective juror entered the courtroom.)

THE COURT: Good afternoon. How are you, sir?

PROSPECTIVE JUROR: Good. How are you?

THE COURT: Good. You are Juror No. 42,

```
 1    correct?

 2                    PROSPECTIVE JUROR:  Correct.

 3                    THE COURT:  All right.  You mentioned

 4    there was some medical issue that might affect your

 5    service.  What were you thinking of, sir?

 6                    PROSPECTIVE JUROR:  So in my family -- a

 7    member of my family is in Hospice, and so I don't

 8    know when it's going to happen, but it could be

 9    within the next one to two weeks.

10                    THE COURT:  Okay.  So you are sort of on

11    call.

12                    PROSPECTIVE JUROR:  Yeah.  So I have no

13    idea.  We thought that she was going to die last

14    week, but she's still alive, so --

15                    THE COURT:  Okay.  All right.  Hang on

16    one second.  I think that might have been the only

17    question I had for you.

18                    PROSPECTIVE JUROR:  Well, I had raised a

19    concern before.

20                    THE COURT:  Yes.  You had raised what

21    concern?

22                    PROSPECTIVE JUROR:  "Concern" is the

23    wrong word.  You had asked questions towards the end

24    and I raised my hand and I said it's something

25    previous.
```

1          THE COURT:  Okay.  Hold a second.  Yes,

2    I've got my notes.  All right.  This was about the

3    question about cooperating witnesses.

4          PROSPECTIVE JUROR:  No, I was referring

5    to law enforcement.

6          THE COURT:  What's the law enforcement

7    issue?

8          PROSPECTIVE JUROR:  My question was

9    regarding your question.  Are you asking if we have

10   any built in biases?

11         THE COURT:  I wouldn't describe it as

12   biases.  I guess there are two things.  One, we just

13   want to figure out whether or not you -- there will

14   be testimony -- if you served as a juror there would

15   be testimony from law enforcement officials.  So one

16   is the question of figuring out if you would give

17   more weight to their testimony merely because

18   they're law enforcement officials.  So that was one

19   question.

20         PROSPECTIVE JUROR:  Right.  So that's an

21   unconscious bias seeing that I have law enforcement

22   in my family.

23         THE COURT:  Okay.  So you are saying

24   because you have law enforcement in your family you

25   might be more -- tend to believe them?

1          PROSPECTIVE JUROR:  Sure, of course.

2          THE COURT:  Okay.  All right.  I think

3     that -- was there anything else?  Hang on.

4          PROSPECTIVE JUROR:  Like I mentioned

5     before, I have a close friend in the FBI.  So I'm

6     aware of more than I should know.

7          THE COURT:  When you say more than you

8     should know, whatever you know and whatever that

9     person knows, I mean -- well, let me put it this

10    way.  You are not aware of anything regarding this

11    particular case, are you?

12         PROSPECTIVE JUROR:  Of course not.

13         THE COURT:  And I wasn't trying to be

14    flip.  I am just saying this in the sense that

15    knowing information about things that go on

16    generally is different from being faced with

17    specific evidence and then having to weigh that.

18         PROSPECTIVE JUROR:  Yep.  I understand.

19         THE COURT:  And so the question really

20    for us is simply not whether you had experiences or

21    views or information, but whether or not despite all

22    of that, if you are brought in this case and you had

23    to hear information, just based on what you hear

24    here, could you look at that and weigh that for what

25    it is and then be able to render a verdict that's

based on the law as I would instruct you?  I think

that would be the question.

PROSPECTIVE JUROR:  Right.  I would hope

so, but, like I said, unconscious biases do exist.

THE COURT:  Understood.  And being able

to deal with them and recognize them helps one

figure out how to make sure they're not affecting

them in decision making.

PROSPECTIVE JUROR:  Right.

THE COURT:  Ms. Freismuth, do you have

any questions?

MS. FREISMUTH:  Just briefly.  I don't

mean to pry, but can you tell us a little more about

the nature of the relationship with the individual

in Hospice.

PROSPECTIVE JUROR:  Sure.  It's my

godmother.  It's my mother's sister.  She's in

Massachusetts also.  That's another factor.  If I --

I have already not gone to several deaths in the

family over the last 18 months.  If there was one I

was supposed to go to, this is it.

THE COURT:  Understood.  Thank you, sir.

Mr. Einhorn, any follow up?

MR. EINHORN:  No, Your Honor.

THE COURT:  Mr. Brown?

1          MR. BROWN:  No, Your Honor.

2          THE COURT:  Thank you so much.  I

3 appreciate it, sir.

4          (Prospective juror exited the

5 courtroom.)

6          (Prospective juror entered the

7 courtroom.)

8          THE COURT:  Good afternoon, again.  How

9 are you today?

10          PROSPECTIVE JUROR:  Good.  Thanks.

11          THE COURT:  So you are Juror No. 43,

12 correct?

13          PROSPECTIVE JUROR:  Yes, I am.

14          THE COURT:  I think there were a couple

15 of questions you raised your hand to, one of which

16 is I asked the question about the individual has a

17 right to remain silent and they don't have to

18 testify or even present a defense, and you raised

19 your hand to that question.  What you were thinking

20 about?

21          PROSPECTIVE JUROR:  I just think if

22 somebody is quiet, like even my kids, that they're

23 guilty of something.  Whether it's exactly what

24 they're being excused of or -- maybe they didn't

25 break the vase, but they were in the room and they

1  know who broke the vase.  So I just think that,

2  yeah, you can be silent, but usually there is

3  something underlying there.

4          THE COURT:  And despite that general

5  notion, obviously what we do in the context of our

6  private lives and make judgments is different than

7  when we are called as jurors to make judgments about

8  people's lives in the criminal context.  The legal

9  standard is they're presumed innocent.  They don't

10 have to say a word.  The government has to prove

11 their case.

12         PROSPECTIVE JUROR:  Sure.

13         THE COURT:  So would you be able to

14 weigh fairly and impartially evidence and follow

15 that instruction if you were called as juror.

16         PROSPECTIVE JUROR:  Probably not.

17         THE COURT:  Probably not?  Because of

18 your sense --

19         PROSPECTIVE JUROR:  Yeah, just my, you

20 know, chemical makeup and the way that I am, yeah.

21         THE COURT:  And then you also raised

22 your hand to the question about views about illegal

23 narcotics.  What were you thinking about?

24         PROSPECTIVE JUROR:  Two of my friends

25 had children that overdosed and had bought on the

1    street, and that just came to my mind right away.

2                    THE COURT:  I think there was also a

3    question about firearms.  Was there something you

4    were thinking about there?

5                    PROSPECTIVE JUROR:  Yeah, my dad and

6    bothers and our whole family are hunters, and we

7    just always grew up around firearms.  I think that,

8    you know -- I don't think it should be taken away

9    from everybody, but I think it should be taken away

10   from certain people.

11                   THE COURT:  So in this case there will

12   be issues about whether there was illegal use of a

13   firearm under federal regulations and so forth --

14   federal law.  If you had to serve as a juror would

15   you be able to sort of weigh fairly evidence and

16   apply the law as I would instruct you on that issue?

17                   PROSPECTIVE JUROR:  I would try to, but

18   I couldn't say for sure.

19                   THE COURT:  Okay.  All right.  Let me

20   just make sure, see if there were any other

21   questions I needed to follow up with you on.  I

22   don't have anything further.

23                   Ms. Freismuth, do you have anything

24   further?

25                   MS. FREISMUTH:  No, Your Honor.  Thank

1    you.

2                    THE COURT:  Mr. Einhorn?

3                    MR. EINHORN:  No, Your Honor.

4                    THE COURT:  Mr. Brown?

5                    MR. BROWN:  No, Your Honor.

6                    THE COURT:  Thank you so much, ma'am.  I

7    appreciate it.

8                    PROSPECTIVE JUROR:  Thank you.

9                    (Prospective juror exited the

10   courtroom.)

11                   (Prospective juror entered the

12   courtroom.)

13                   THE COURT:  Good afternoon, sir.  How

14   are you?

15                   PROSPECTIVE JUROR:  Fine, Judge.

16                   THE COURT:  Good.  I just wanted to

17   follow up because were there a couple of questions I

18   think you had the raised your hand to that I wanted

19   to follow up on.  One was about individuals

20   connected with law enforcement.  I know you had

21   mentioned you yourself had been involved in --

22   worked in corrections and other things.  Were there

23   particular things about other people in law

24   enforcement you were thinking of?

25                   PROSPECTIVE JUROR:  Well, first of all,

a year after college I worked for the Department of
Corrections in New Jersey.  I was within Bordentown
Youth Correctional Institution, which is an
institution for --

THE COURT:  Can you just get a little
closer to the microphone or just speak a little
louder.

PROSPECTIVE JUROR:  So I worked for the
New Jersey Department of Corrections one year after
college.

THE COURT:  Yep.

PROSPECTIVE JUROR:  And so I worked with
inmates.  I am familiar with them.  I understand
them, I believe.  It was one year.  I ran a program
to help them get into positions, jobs and schools
after they left the institution, and was quite
successful in doing that.  I just wanted to let you
know that.

I have a nephew on my wife's side that's
-- that was a New York City policeman sergeant.  He
recently retired.  I have an uncle who was a
sergeant in St. Louis.  I worked for the United
States Coast Guard.  I was five years active duty,
16 years in Reserves, which weren't -- it's a law
enforcement organization.

1        THE COURT:  Sure.

2        PROSPECTIVE JUROR:  It's a multitask

3   organization, basically.  And one thing I wanted to

4   tell you that might be relevant here is my wife has

5   a nephew who has been convicted twice for

6   drug-related charges, and I guess he was involved in

7   some other crimes to support his drug habit.  He

8   spent several years in prison, actually.  It's an

9   embarrassment to me.

10        THE COURT:  It's fine.

11        PROSPECTIVE JUROR:  So I didn't want to

12   bring it up over here.  So I wanted to make that

13   clear.  Also one other thing --

14        THE COURT:  No, it's fine.

15        PROSPECTIVE JUROR:  As an assistant

16   treasurer of a large corporation, I'm responsible

17   for literally millions of payments and other things,

18   other transactions, and we have a lot of financial

19   crimes now, a lot, check fraud and ACH, and

20   electronic, you know, payment fraud and such.  So

21   I'm quite -- I've got a lot of exposure there.  And

22   I've got a lot of issues with these types of people

23   that commit these crimes.

24        THE COURT:  All right.  I appreciate it.

25   I appreciate you letting us know all of that.

Indeed, that's why we provide this opportunity, to
just sort of follow up with everything.

Just in terms of the -- just starting
with the experiences relating to your wife's nephew,
would those experiences impact your ability to sort
of hear evidence in this case involving, you know,
these two individuals and fairly and impartially
weigh that evidence and apply the law as I would
instruct you?

PROSPECTIVE JUROR:  I don't believe so.

THE COURT:  You do not believe so.

PROSPECTIVE JUROR:  I don't believe so,
but I want to make that clear.  I've -- you know, I
have problems with it.  I think I understand what's
going on.  I understand addiction.  I don't think
I'm going to have a problem in this case.

THE COURT:  You will not have a problem
with this case.

PROSPECTIVE JUROR:  No.  If you had a
financial person that committed a financial crime
here, I might not be able to know -- you know, I
might have significant issues with that.

THE COURT:  Okay.  So it's less the
drugs.  To the extent there are financial crimes,
like the allegations of money laundering, that might

1   trigger things based on your current work

2   experience?

3            PROSPECTIVE JUROR:  It might.

4            THE COURT:  And just in terms of what

5   would trigger -- because obviously what you will

6   hear in this case is the government will present

7   evidence, and they'll have to meet a certain burden,

8   and I will instruct you on the law about what

9   constitutes, you know, a crime, and you'll have to

10  see if the evidence matches up with that.

11           And so in terms of your own personal

12  experience in terms of, you know, your financial

13  work, I just want to make sure I understand how that

14  work, your current work, could affect your ability

15  to fairly and impartially weigh the evidence and

16  apply the law.

17           PROSPECTIVE JUROR:  Well, when you have

18  been violated so many times -- we have millions of

19  dollars in crimes.  We have a huge number of

20  companies.  We have 1,500 companies, agencies

21  worldwide, and today in business it's extensive.

22  It's significant.  You have all kinds of, you know,

23  check fraud and electronic payment fraud and other

24  -- there is other means.  They actually hack into

25  people's computers and they change invoices and

somebody gets an invoice with wrong payment

instructions.  There is all kinds of scams out

there.  I mean, it just doesn't stop.

THE COURT:  So your concern is basically

because you have seen so much of it, that's why it

would hurt your ability to be fair and impartial?

It has been affected by that, correct?

PROSPECTIVE JUROR:  I think so.

THE COURT:  Okay.  All right.  Thank you

so much.

Any follow-up from the United States?

MS. FREISMUTH:  No, Your Honor.

THE COURT:  Mr. Einhorn?

MR. EINHORN:  No, Your Honor.  Thank

you.

THE COURT:  Mr. Brown?

MR. BROWN:  No, Your Honor.

THE COURT:  All right.  Thank you so

much, sir.  I really appreciate time.

(Prospective juror exited the

courtroom.)

(Prospective juror entered the

courtroom.)

THE COURT:  Good afternoon, again,

ma'am.

1           PROSPECTIVE JUROR:  Hi.

2           THE COURT:  You are Juror No. 46,

3  correct?

4           PROSPECTIVE JUROR:  Correct.

5           THE COURT:  I think you mentioned there

6  was some -- I know you had answered yes to the last

7  -- you raised your hand to the question about some

8  other reason why you couldn't serve on the jury.

9  What were you thinking of?

10          PROSPECTIVE JUROR:  I have to get a

11 Prolia shot Friday.

12          THE COURT:  Okay.  Other than that, was

13 there anything else you were thinking of?

14          PROSPECTIVE JUROR:  Not really.

15          THE COURT:  So what time are you

16 supposed to get that shot on Friday?

17          PROSPECTIVE JUROR:  10:00.

18          THE COURT:  10:00.  Okay.

19          PROSPECTIVE JUROR:  It's Griffin

20 Hospital Infusion Center.

21          THE COURT:  Okay.  Thank you.  I

22 appreciate you informing us.

23          Was there any follow up, Ms. Freismuth?

24          MS. FREISMUTH:  No, Your Honor.

25          THE COURT:  Mr. Einhorn?

1              MR. EINHORN:  No, Your Honor.

2              THE COURT:  Mr. Brown?

3              MR. BROWN:  If I may, Your Honor.

4              THE COURT:  Yes, please.

5              MR. BROWN:  Ma'am, I just want to ask a

6     general question, and that is, the Judge has

7     indicated that if you are selected for this jury

8     that, among other things, you are going to be given

9     instructions about the law in this area.  Do you

10    understand that?

11             PROSPECTIVE JUROR:  About the law, yes.

12    I understand the law, but I also understand I have

13    osteoporosis and I need my Prolia shot --

14             MR. BROWN:  Yes.

15             PROSPECTIVE JUROR:  -- for my pelvis.

16             MR. BROWN:  Well, the good news is you

17    won't be here tomorrow so you can get your shot if

18    it's tomorrow.

19             THE COURT:  It's Friday.

20             PROSPECTIVE JUROR:  It's Friday.

21             MR. BROWN:  But the question is,

22    assuming that's taken care of in some fashion and

23    you are on this jury and the Judge instructs you as

24    to what the law is and you disagree with the Judge

25    as to what the law should be, are you going to put

aside your personal feelings about the law and

follow the Judge or are you going to follow your own

idea about the law?  Which?

PROSPECTIVE JUROR:  I'm going to follow

the law, not my idea of what the law should be.

MR. BROWN:  Okay.  All right.  Thank you

very much.

THE COURT:  Thank you so much, ma'am.

PROSPECTIVE JUROR:  Okay.  Thank you.

(Prospective juror exited the

courtroom.)

THE COURT:  I will wait for Ms. Perez to

come back.

Hello, Ms. Perez.

All right.  Based on everything we did

in general, supplemental, and follow-up questions,

these are the jurors in this second group that I'm

prepared to eliminate for cause.  One I may be on

the fence on, but I'm pretty sure I will probably

strike that person.  So these jurors -- I will

strike these jurors for cause.  Juror No. 26, Juror

No. 28, Juror No. 29, Juror No. 31, Juror No. 34,

Juror No. 36, Juror No. 37, Juror No. 41, Juror No.

42, Juror No. 43, Juror No. 44, and more likely than

not I will strike Juror No. 46, but if someone wants

1  to convince me to keep them in, I can review that.

2          Leaving aside 46 for now -- I will

3  repeat those numbers if you would like just for

4  emphasis.  That was 26, 28 -- 26, 28, 29, 31, 34,

5  36, 37, 41, 42, 43, 44, and likely 46.

6          MS. FREISMUTH:  Your Honor, I don't mean

7  to push my luck, but with regards to No. 28, I

8  believe he said he was available up until the 1st of

9  October.  Our trial will certainly be --

10          THE COURT:  I know.  I can be convinced

11  to keep 28 in.  The problem is, he's got a wedding.

12          MS. FREISMUTH:  It is a local wedding,

13  Your Honor.

14          THE COURT:  I understand it's a local

15  wedding.  I can be convinced to keep him in.

16          Mr. Einhorn, do you have a view?

17          MR. EINHORN:  I think we ought to let

18  him go.  He's not just wandering off one day for the

19  wedding.

20          THE COURT:  He's got to get a license.

21          Mr. Brown, do you have a view?

22          MR. BROWN:  Yes, I do, Your Honor, and

23  it's to excuse him, Your Honor.  We all know a

24  wedding isn't just a wedding and there are things in

25  preparation.  I have a hard time believing he will

1    be able to focus on -- which may or may not inure to

2    my benefit, but whether or not he will be able to

3    give his undivided attention is suspect.

4              THE COURT:  That's fine.  I'm going to

5    leave 28 out.

6              Anyone else that they think should be

7    stricken or should be in?

8              MS. FREISMUTH:  Your Honor, I did have a

9    question about No. 32, whether or not there was any

10   concern about the COVID testing having been --

11             THE COURT:  Well, if something comes up,

12   we'll know.  At this point basically there is

13   nothing to suggest we should worry.  So I'm not

14   going to worry.  If we know anything by Friday, we

15   can make a different decision then, but I am

16   inclined to keep him in based on what I heard.

17             Anyone else they want to strike for

18   cause?

19             MR. EINHORN:  Yes, Your Honor.  I agree

20   on No. 32.  I think the government just said 32

21   should be stricken.  And I have one other, 38.  Your

22   Honor, I think that was crystal clear.  This is the

23   fellow who actually had the symbols tattooed on his

24   body.  It doesn't get any stronger than that.  I

25   know you rehabilitated him after I asked him

1    questions, but he was pretty clear he was biased,

2    and his bias is reflected by a permanent indenture

3    on his body.

4            THE COURT:  Just for the record, I will

5    be clear about what my -- what 38 expressed was his

6    own personal views of drugs and alcohol, that he

7    does not use, which I find to be distinctive from

8    the issue about whether or not someone should be

9    charged and/or convicted regarding drug-related

10   crimes.  I mean, based on the questions I asked him

11   and the answers that he gave, I'm sufficiently -- I

12   believe they were sufficient to say that that person

13   is fair and impartial.  If you want to use a

14   peremptory for that person, that is fine, but I

15   think there is an insufficient basis for striking

16   that person for cause.

17           MR. EINHORN:  Yes, Your Honor.  I do

18   think the fact that he admitted he was biased --

19           THE COURT:  I understand your argument.

20   I understand your argument, but I think -- based on

21   the whole colloquy is what I'm basing my decision

22   on.

23           MR. EINHORN:  Yes, Your Honor.

24           THE COURT:  Anything else, Mr. Einhorn?

25           MR. EINHORN:  No, just those two, 32 and

1  38.

2          THE COURT:  Mr. Brown?

3          MR. BROWN:  Yes, Your Honor.  I join

4  with my colleague, the enemy, in agreeing that 32

5  should definitely be excused, Your Honor.  The fact

6  that after all of this time he remembers someone

7  dying, a close friend, of overdose of drugs as well

8  as other --

9          THE COURT:  That's not 32.  Is that 32?

10         MR. BROWN:  I have 32.

11         THE COURT:  Hang on.  It might have

12  been.  Yes, there were issues, but, yeah, I don't

13  think that that would be the issue with 32.  But go

14  on.  Who else besides 32?

15         MR. BROWN:  So 32 is -- it is a drug

16  case and he has bad memories.  I think it's

17  conceivable, notwithstanding how much he even might

18  try to honestly put that aside.  And I clearly join

19  again with 38.  He stood there.  He was already

20  under oath.  He indicated he has a strong bias.  We

21  know it's strong from what counsel has indicated, to

22  go to the extent of having a tattoo.  And to suggest

23  that he's qualified as someone that is not biased

24  when he admits he's biased stretches the issue of

25  credibility in this case.

1          THE COURT:  No, I understand the

2   argument you raise, but as I said -- like I said,

3   the tattoo is related to his personal use, which in

4   this case isn't about his personal use.  This case

5   is about whether or not there are violations of

6   drugs in terms of distribution, and the issue is

7   whether he could weigh that evidence and apply the

8   law.  Based on the colloquy I had with him, I am

9   sufficiently satisfied that he can.

10          Any others besides those two?

11          MR. BROWN:  No, Your Honor.

12          THE COURT:  All right.  And 46, my

13   inclination, because of the shot -- because my hope

14   is we will be able to start Friday, my inclination

15   is to strike 46.  I don't want to run the risk of us

16   not being able to start on Friday, and that seems

17   like that's a deal breaker there with 46.

18          Yes, Ms. Freismuth?

19          MS. FREISMUTH:  We agree, Your Honor.

20   With respect to the medical issues, there also did

21   seem to be more medical issues there that weren't

22   necessarily coming forth.

23          THE COURT:  Yes.

24          MS. FREISMUTH:  We were having a hard

25   time following her.

1          THE COURT:  46 is gone.  We don't have

2     to talk about it anymore.

3          All right.  So with that -- so

4     basically, as I have it, I think -- just to make

5     sure, I think -- so basically out of that pool, we

6     have nine more jurors.

7          Is that right, Ms. Perez?

8          THE CLERK:  Yes, Your Honor.

9          THE COURT:  So that should bring us to a

10    total pool of 26.

11         MR. BROWN:  Your Honor, could the Court

12    repeat --

13         THE COURT:  The ones remaining?  The

14    jurors remaining from this second pool, and I

15    believe it's nine of them, are Juror No. 27, Juror

16    No. 30, Juror No. 32, Juror No. 33, Juror No. 35,

17    Juror No. 38, Juror No. 39, Juror No. 40, and Juror

18    No. 45.

19         Ms. Perez, am I correct?  That's eight

20    -- nine out of that pool, and we now have an

21    available pool for peremptory challenge use of 26

22    jurors based on today's work.

23         THE CLERK:  17 and 9.  Yes, 26.

24         THE COURT:  That would be 25 -- 26.

25    Yeah.  Gosh, it would be nice if I could do math.

1    17 and 9 is 26.  All right.  So we'll see what we

2    get tomorrow.  We'll keep plodding away and see how

3    we do on the numbers.

4              MR. EINHORN:  Can I make a motion, Your

5    Honor, before we adjourn for the night?

6              THE COURT:  Yes, please.

7              MR. EINHORN:  So at this point, you

8    know, we've not bifurcated, but we've cut the jury

9    selection into pieces, and it's obviously not

10   individual voir dire.  I would request an order that

11   no parties, neither the government nor the

12   defendants, be allowed tonight, or at least prior to

13   the final selection process, to investigate the

14   jurors by means of any social media, electronic

15   devices, or other investigative techniques.

16              And the reason is obvious, that it

17   allows any party to essentially get information

18   about jurors outside of their statements to us

19   today.  Obviously the government has greater

20   facility than we do to get rap sheets, to go back

21   and now obtain rap sheet information.  They could

22   even knock on doors of neighbors and their employer.

23              So it's my recollection it's customary

24   that at least at this point there should be no

25   outside investigative work and we'll select the

1 jurors on Friday just as if we selected them -- I

2 want say in a continuous fashion, but in a single,

3 uninterrupted fashion.

4 THE COURT:  Mr. Brown, do you join in

5 Mr. Einhorn's motion?

6 MR. BROWN:  Sure.  Yes, Your Honor.

7 THE COURT:  You don't have to.

8 MR. BROWN:  Well, I have no intent of

9 spending the rest of the day investigating possible

10 jurors.  So, sure, I join in.

11 THE COURT:  Ms. Freismuth, does the

12 United States have a position?

13 MS. FREISMUTH:  Yes, Your Honor.  I can

14 say we will be busy looking at the new discovery we

15 received.

16 THE COURT:  So there is no objection?

17 MS. FREISMUTH:  Correct, Your Honor.

18 THE COURT:  All right.  Fine.  That's

19 fine.  That motion will be granted.  All right.

20 Is there anything else we need to do

21 before we leave today?  From the United States, Ms.

22 Freismuth?

23 MS. FREISMUTH:  No, Your Honor.  Thank

24 you.

25 THE COURT:  Mr. Einhorn?

1          MR. EINHORN:  No, Your Honor.  Thank

2     you.

3               THE COURT:  Mr. Brown?

4          MR. BROWN:  No.  Thank you, Your Honor.

5          THE COURT:  All right.  I will see you

6     all tomorrow 8:30.  As soon as we get that jury

7     here, we'll get going and we'll see.  We'll see what

8     our numbers are.  If we get lucky, maybe we can get

9     the jury picked after the morning and you guys will

10    have the afternoon to do some additional preparation

11    for Friday morning.

12              MR. BROWN:  If I understand, we

13    definitely will be starting Friday morning?

14              THE COURT:  Yeah, because -- the short

15    answer is yes.  And the reason is that we're letting

16    jurors go here today, and unless we bring jurors

17    back tomorrow, have them hanging around -- I don't

18    like to have people waiting around.  I would rather

19    not have the jurors from today come back tomorrow

20    with the slim hope we may -- with the possibility we

21    may finish and try to start.  I think that's a

22    recipe for disaster.  I would rather us be in a

23    position to have everyone be here Friday morning.

24    Let's start it off and get it done.

25              Does anyone have any other view on that?

Ms. Freismuth?

        MS. FREISMUTH:  No, Your Honor.

        THE COURT:  Mr. Einhorn?

        MR. EINHORN:  That seems right.

        THE COURT:  All right.  Thank you all very much.  You all have a good evening.

        (Proceeding concluded 3:00 p.m.)

1

2          I certify that the foregoing is a correct

3     transcript from the record of proceedings in the

4     above-entitled matter.

5

6                              1/5/22

7                               Date

8

9                    /S/   Sharon Montini

10                       Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25