UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:19CR64 (VAB) |
| VS. | |
| ANTHONY WHYTE, et al | AUGUST 15, 2023 |

**DEFENDANT AMY SARCIA'S
AMENDED SENTENCING
MEMORANDUM**

The defendant, Amy Sarcia, amends the original Sentencing Memorandum only to include comments about sentencing options.

Ms. Sarcia was arrested on or about February 21, 2019 along with Anthony Whyte and numerous others concerning a conspiracy to Distribute and Possession with Intent to Distribute Cocaine and Heroin in violation of 21 U.S.C. Section 846(a)(1) and 841(a)(1) and 841(b)(1)(C). Additionally, Ms. Sarcia was charged with Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C., Sections 1956(h) and 1956(a)(1)(A)(i); Counts 1 and 13 of the Indictment.  After a jury trial, Ms. Sarcia was convicted on both counts in late September 2021.  At all times she had been released on a $100,000 non-surety bond without incident.

After the trial Ms. Sarcia moved for an acquittal under Rule 29.  In September of 2022 this Court granted it in part and denied the same in part.  The issue evolved around the weight of the illicit drugs that could be attributed to Ms. Sarcia to bring her within the ambit of a mandatory minimum sentence, given the dearth of evidence.  In the instant matter, giving the Government every reasonable inference as it relates to the conduct of Ms. Sarcia, it was concluded that the evidence as to quantity of illicit drugs was vast as to Mr. Whyte's conduct along with many co-defendants; however, the same was not proven as to Ms. Sarcia.

In the ruling on her Motion for Reconsideration (Doc. 1998), the Court noted, for example, after searches of Ms. Sarcia's home and office at Two Wives Restaurant, the Court found <u>no</u> evidence to suggest Ms. Sarcia touched, much less, possessed or distributed <u>any</u> of the drugs seized by the Government.  The Court pointed out that even the Government's own witness, Stephanie Johnson testified that Ms. Sarcia was only involved with very small quantities of cocaine, far below the 500 grams of cocaine alleged.  (See p5 of Doc. 1998).  The Government tried to tie Ms. Sarcia in to drug activity by claiming that she was somehow tied to the infamous safe found in the back space in apartment #10,  at the time of the search by law enforcement.   However, after dusting the safe and contents for prints, while some were found, none were found that proved my client was involved. In fact, there was no evidence presented as to when the safe was actually moved into the space, much less when any drugs (or guns) were placed in the safe; nothing.  Additionally, when searching her home and office, no large quantities of monies were found; additionally, no drug records were found in her office. No federal or local agent ever had a hand to hand drug deal with her.  Nothing.

In sum, any drugs involving Ms. Sarcia were modest in nature and would normally be deferred for a state prosecution, like other actors, such as Ms. Johnson, an admitted drug person.

Concerning the money laundering count, the essential claim was that weekly for 16 months Ms. Sarcia paid Mr. White $500 weekly purportedly for promoting business for her restaurant, Two Wives.  Ms. Sarcia would actually be giving that $500 to Mr. Whyte even though he was not really employed there.  It was not clear how Ms. Sarcia actually got the $500 to give to him since at times she had to chase Whyte  for the rent money; it was a ruse to get money to Mr. Whyte.  The total amount paid over the period

of time in question, 16 months, was $28,252.[1] Given the volume of Mr. Whyte's drug trade with thousands upon thousands of drug money flowing through his pockets, to the extent it is accurate for almost a year and a half, the amount is modest. It is interesting to note there was no credible evidence of a motive established as to why Ms. Sarcia, who in over 50 years had no criminal record, would engage in such activity with Mr. Whyte. One could speculate as to a motive, but that is not evidence. However, at the end of the day Ms. Sarcia is now ending up with two felonies, which might be a badge of honor for some but for Ms. Sarcia, these events have brought nothing but shame and embarrassment to her. Her New London community was a close one and after the verdict was published in her community, she ended up having to close her business due to the lack of business. Additionally, people she considered friends stopped dropping by and stopped calling. It has been, as she puts it, a very rough road, with the additional fear of prison hanging over her head on a daily basis since February 2019. The Court can be assured that Ms. Sarcia rues the day she allowed Mr. Whyte to move into the apartment complex and into her life. She feels used by Mr. Whyte, but more so she continues to be angry at herself for allowing herself to have anything to do with him. It is to be noted that she worked very hard to make her business successful; in the end, she failed. She certainly regrets anything she did that may have helped Mr. Whyte in any way to cause harm to the community she supported and spent a lifetime working in.

Ms. Sarcia left her head chef position at Water Street Cafe shortly before her trial began in September 2021. She had picked up a bartending job in the summer of 2021 as her trial had been delayed. After the trial, she did not work for close to a month as her mental health was poor.

---

[1] This assumes 100% of the money was part of the scheme and nothing was paid to Mr. Whyte for periodically promoting events at the restaurant.

In November of 2021, she began building a coffeeshop, which her son owns, called Lucille's in Ledyard. This included everything from plumbing and painting to kitchen design, menu planning and management strategies. Once the coffees hop was open, she took on the responsibility of managing its social media and baking specialty pastries for the shop.  She continues to work these positions today.

Her son and his father also owned a small BBQ restaurant and bar (The Hop Yard in Groton) which she helped manage and worked as a bartender. She did this from August 2022 until last week at which time she began assisting in the sale and closing of the business. She will end this position next week once everything is wrapped up.

As she continued employment with MEG Property Services, she also took on other responsibilities to earn more money. She took on the responsibility of working with tenants who were adversely affected by covid and assisting them in applying for funds from United CT that paid back rent and utility bills. Once she acquired knowledge of how to use this program, she assisted other individuals and families that were not her tenants in applying for funds. (To be clear, these funds were paid directly to landlords and utility companies.)

She also worked renovating and painting apartments for MEG Properties. After honing these skills working for MEG, she worked multiple painting jobs for other friends and associates at their homes and rental properties. She picked up multiple gardening and landscaping jobs this summer as well.

She regularly works as a private chef and caterer including a wedding she is catering in August for 100 people.

Most of these jobs are for friends, family and business associates who know of her difficult situation and want to help.

She continues to work with underserved individuals in New London providing small jobs and assistance in finding housing. She volunteers for Toys for Tots every holiday season collecting toys and gifts for children. She and her husband buy and donate gifts, as well. She does volunteer work at the Garde Arts Center in New London and help unload food donations on Thursdays for a food bank at the Elks Club called Whalers Helping Whalers.

This summer she also volunteered for Safe Futures in New London which assists families struggling with domestic violence. She raised money and collected supplies for Camp Hope. She and her husband purchased and donated sleeping bags, sunscreen and bug spray for the camp.  Finally, she spent many hours from October 2022 until June 2022 assisting a disabled veteran named Sam Zimmerman. He lived with his mother in Mystic, and she passed away last October.  She worked with him to clean out and sell her house, probate her estate and find new housing for him.

The question is what indeed is an appropriate sentence for Ms. Sarcia that meets the goals found in 18 U.S.C., Section 3553(a) but only imposes a sentence that is sufficient but is not greater than necessary.  For the reasons that follow, it is respectfully submitted that a sentence to both home confinement for some period of time along with community service, would be just.  First, she will be suffering the stigma of being a convicted felon with all of its negative consequences.  She is ashamed, embarrassed and humiliated over her conduct.

Under the guideline provisions, it is noted in paragraph 132 et seq of the presentence report that Ms. Sarcia falls within the range of 15 to 20 months. It is respectfully submitted that this Court impose a sentence outside of the advisory guideline system. Ms. Sarcia's track record establishes that at age 54 she is a hard worker who works several jobs to support herself and her family. She has

**demonstrated that even after being arrested in February 2019, (over four years ago), she has continued to work multiple jobs to earn an honest living. She has donated countless hours to helping people less fortunate than herself to build a better quality of life. This, as mentioned, included tenants in the building she manages suffering from COVID related issues, or finding housing or helping out yearly in the Toys for Tots program, or working at food banks. The lack of any evidence that she has been anything but a law abiding citizen strongly support that the goals found in 18 U.S.C § 3553(a) can be met in a much more productive way and constructive way than pulling her out of her positive place in society and locking her up. In the fall of 2019, after her arrest, she recognized her drug abuse issues and, as verified by P.O. Gomes, successfully completed an outpatient substance abuse program. (See paragraph 150 PSR.)**

**In sum, she has done what society wants all convicted individuals to do; stay out of further troubles, deal with any substance abuse issues, and work hard to support one's self and contribute to society. Ms. Sarcia has accomplished all of these important deeds. The guideline-suggested period of incarceration is not needed to protect society, in this case. Society, as well as Ms. Sarcia, can best benefit by Ms. Sarcia continuing helping society by her continued non-profit work efforts.**

                                          **RESPECTFULLY SUBMITTED,**
                                          **DEFENDANT, AMY SARCIA**

                                          **By  /s/CT00009**
                                          **Richard R. Brown, Esq.**
                                          **Brown Paindiris & Scott, LLP**
                                          **100 Pearl Street, 10th Floor**
                                          **Hartford, CT 06103**
                                          **Tel  860.522.3343**
                                          **Fax 860.522.2490**
                                          **Fed. Bar Ct00009**

**CERTIFICATION**

I hereby certify that on this 15th day of August, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all Parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicted on the Notice of Electronic Filing.

   /s/CT00009
Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 10th Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar Ct00009